# Exhibit 1

Resideo's Complaint

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
ADEMCO INC. D/B/A RESIDEO                                   Index No.:

                                    Plaintiff,
                                                           **SUMMONS**

              -against-

TWS TECHNOLOGY LTD. and
TWS TECHNOLOGY LLC,

                                    Defendants.
-----------------------------------------------------------------X


TO THE ABOVE-NAMED DEFENDANTS:

       **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve

a copy of your answer within twenty (20) days after the service of this summons, exclusive of the

day of service, or within thirty (30) days after completion of service where service is made in any

other manner than by personal delivery within the State of New York.  In the case of your failure

to appear or answer, judgment may be taken against you by default for the relief demanded in the

Complaint.  Plaintiff designates New York County as the place of trial.  The basis of venue are

the agreements between the parties that require all disputes to be litigated in New York County.


                                    Page 1 of 2

Dated:     Garden City, New York
           June 7, 2023

                                   Yours, etc.,

                                   **PILLINGER MILLER TARALLO, LLP**

                                   _____
                                   Neil L. Sambursky, Esq.
                                   1140 Franklin Avenue, Suite 214
                                   Garden City, New York 11530
                                   nsambursky@pmtlawfirm.com
                                   (516) 408-5388
                                   PMT File No. N-RESID-00123


                                   **GREENE ESPEL PLLP**
                                   Faris A. Rashid, Reg. No. 0391508
                                   Farah N. Famouri, Reg. No. 0403295
                                   222 S. Ninth Street, Suite 2200
                                   Minneapolis, MN 55402
                                   frashid@greeneespel.com
                                   ffamouri@greeneespel.com
                                   (612) 373-8352
                                   (612) 373-8375

                                   *Attorneys for Ademco Inc. d/b/a Resideo*


To:     TWS TECHNOLOGY LTD.
        *Defendant*
        Guangzhou, China

        TWS TECHNOLOGY LLC.
        *Defendant*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

ADEMCO INC. D/B/A RESIDEO

       Plaintiff,

   -against-

TWS TECHNOLOGY LTD. and
TWS TECHNOLOGY LLC,

       Defendants.

-------------------------------------------------------------------X

Index No. _____/\_\_\_\_\_

**COMPLAINT**

Plaintiff, Ademco Inc. d/b/a Resideo ("Plaintiff" or "Resideo"), through their undersigned counsel, for their Complaint against Defendants, TWS Technology Ltd. and TWS Technology LLC ("Defendants" or "TWS"), alleges, upon information and belief, as follows.

## PARTIES

1. Plaintiff Ademco Inc. is a corporation organized under Delaware law and doing business as Resideo, with its principal place of business in Scottsdale, Arizona, and facilities in, among other places, Melville, New York, and Manhattan, New York. In addition, Ademco, Inc. is licensed to do business in New York.

2. On information and belief, Defendant TWS Technology Ltd. is a foreign corporation with its principal place of business in Guangzhou, China. On information and belief, TWS has, through its subsidiaries and affiliates, approximately 2,500 employees worldwide, and has been designing and selling lithium-ion battery packs since its founding in 1998. TWS touts itself as one of the world's largest specialized battery-pack manufacturers.

3. On information and belief, TWS Technology LLC is a wholly owned subsidiary or affiliate of TWS Technology Ltd. and is organized under Delaware law, with places of business in Sacramento and Los Angeles, California; Reno, Nevada; Atlanta, Georgia; Boston, Massachusetts;

Jacksonville, Florida; and Bannockburn, Illinois. On information and belief, TWS Technology LLC's principal place of business is in Bannockburn, Illinois.

## JURISDICTION AND VENUE

4.      The Court has personal jurisdiction over Defendant TWS Technology Ltd. because TWS Technology Ltd. submitted to this Court's jurisdiction through sales of products in response to duly issued purchase orders, containing specific terms and conditions governing the transactions (the "Purchase Orders") that Resideo issued to TWS for the battery-pack products at issue.

5.      Each Purchase Order stated that the included terms and conditions would be "deemed accepted when the supplier to which this Purchase Order is issued ("Supplier") returns the acknowledgment copy of this Purchase Order or begins performing, whichever is earlier." Exhibit A at 3.

6.      Each Purchase Order also stated that "Resideo rejects any additional or inconsistent terms and conditions offered by Supplier at any time. Any reference to Supplier[']s quotation, bid, or proposal does not imply acceptance of any term, condition, or instruction contained in that document." Exhibit A at 3.

7.      The Purchase Orders state that their terms and conditions "supersede any prior or contemporaneous communications, representations, promises, or negotiations, whether oral or written, respecting the subject matter of this Purchase Order." Exhibit A at 3.

8.      The terms and conditions included with the Purchase Order state that the transactions and the agreement are "governed by the laws of the State of New York . . . and the federal or state courts in New York, New York will have exclusive jurisdiction of any dispute." Exhibit A at 7.

9.      TWS Technology Ltd. accepted the Purchase Orders, including the choice of law and exclusive jurisdiction provisions, when it fulfilled the orders placed by Resideo.

2

10.    Resideo purchased significantly more than $1 million in battery packs, in the aggregate, from TWS through the Purchase Orders. As a result, pursuant to N.Y. General Obligations Law § 5-1401, New York law governs this dispute. And, pursuant to N.Y. General Obligations Law § 5-1402, TWS Technology Ltd. this Court has exclusive jurisdiction over this matter.

11.    In addition, the Court has jurisdiction over TWS Technology Ltd. because it purposefully availed itself of the opportunity to conduct activities in New York, and TWS Technology Ltd.'s contacts with the forum give rise or are related to Resideo's claims.

12.    TWS Technology Ltd. sold the battery packs at issue to Resideo through Resideo's employees in Melville, New York, for delivery to a Resideo facility in El Paso, Texas. To facilitate these sales, TWS Technology Ltd. sent invoices to Resideo in Melville, New York, and received payment through that same Melville office.

13.    On information and belief, the battery packs that TWS Technology Ltd. sold to Resideo were ultimately incorporated into security-panel products that were sold and distributed across the United States, including in New York.

14.    The Court similarly has personal jurisdiction over Defendant TWS Technology LLC because it acted as an agent or alter ego for TWS Technology Ltd.  On information and belief TWS Technology LLC is authorized to act on behalf of TWS Technology Ltd.; TWS Technology Ltd. has the right to exercise control over TWS Technology LLC and does in fact control that entity; TWS Technology LLC is exclusively dedicated to assisting TWS Technology Ltd. and furthering that entity's interests; and TWS Technology LLC cannot act without approval from TWS Technology Ltd. for important decisions.

3

15.   TWS Technology LLC acted as TWS Technology Ltd.'s agent or alter ego for the design, manufacture, or sale of the products at issue. The Purchase Orders, for example, require TWS to be responsible for the costs of "repairing, replacing or correcting nonconforming Goods," including "failure analysis" and "fault isolation." Exhibit A. at 4.

16.   Among other things, TWS Technology Ltd. enlisted TWS Technology LLC employees to assist it in addressing design problems that arose with the products at issue and did so to support TWS Technology Ltd.'s performance of the Purchase Order terms and also to support TWS Technology Ltd.'s sale of the products at issue to Resideo. As part of those and later efforts, TWS Technology LLC employees exchanged emails or other communications with Resideo employees, including in New York.

17.   On information and belief, TWS Technology LLC also conducted business with Resideo in New York when, from at least starting in 2018, TWS Technology LLC employees regularly communicated with Resideo employees in New York about the products at issue and to handle production forecasts, deliveries, and payments for the products at issue. By doing so, TWS Technology LLC also agreed to the Purchase Orders and the applicable terms and conditions.

18.   On information and belief, TWS Technology LLC conducts business in New York by promoting and selling battery products to New York-based customers or potential customers. TWS Technology LLC also promotes and sells TWS products to customers around the United States and generates significant revenue from those sales. Both TWS entities actually or reasonably expect the promotion and sale of TWS products to have consequences in interstate and international commerce, including through providing battery products that customers expect will perform reliably and safely for their intended purposes.

19.     Through TWS Technology Ltd.'s and TWS Technology LLC's actions, and as described in further detail below, both entities committed tortious acts by, among other things, negligently misrepresenting that the battery packs at issue would fulfill their intended purpose, and by negligently misrepresenting that the subsequent programming and design changes would correct the performance issue in the battery packs that Resideo observed. As also detailed below, both entities also breached the contract and applicable warranties for the products at issue.

20.     Venue is proper in this court because Defendants developed products for Resideo and sold them through Resideo's office in New York, and because TWS Technology Ltd. and TWS Technology LLC agreed to the exclusive jurisdiction of federal and state courts in New York, New York.

## **FACTUAL BACKGROUND**

### **TWS's Battery Expertise and Sales Pitch**

21.     Resideo was formed in 2018, as part of the process through which Honeywell International, Inc. ("Honeywell") spun off its certain businesses for home products and distribution. Resideo manufactures and sells home automation, security, and energy-management products.

22.     In 2017, before the spin-off, Honeywell issued a request for proposals for the design and manufacture of a battery pack, to be used as a backup energy source in security-alarm panels.

23.     A battery pack is a set of batteries or battery cells that are designed to meet specific power, capacity, or voltage needs. Batteries in a battery pack can be configured in different ways and can also have sensors or other failsafe devices that prevent the battery pack from overheating or creating other safety hazards. A battery pack's design will affect how well the battery pack performs, its average lifespan, and whether the pack will be suitable for a specific purpose.

24.     Honeywell sought to purchase battery packs because it had, in turn, contracted to manufacture and sell the assembled alarm panels to ADT, LLC ("ADT"), a home-security company. The alarm panels allowed users to arm, disarm, and otherwise control their ADT security systems. Honeywell intended to purchase custom-designed battery packs from a supplier that it could then integrate into this alarm-panel product.

25.     Through the bidding process, Honeywell sought a battery supplier that could both design and manufacture the backup battery pack for the alarm panel. Honeywell informed potential suppliers about the battery pack's intended use and relevant operation parameters.

26.     Although lithium-ion batteries are commonplace in many household products today, they did not reach ubiquity until very recently. In 2017, Honeywell had not developed an alarm panel using a lithium-ion battery before, and Honeywell was clear with bidding suppliers that it needed, and intended to rely on, the supplier's expertise to design an adequate battery pack.

27.     Honeywell chose TWS because of TWS's expertise with batteries and designing battery packs, including specifically its expertise with lithium-ion batteries. TWS touts itself as having this expertise and advertises its specific focus on lithium-based battery solutions.

28.     TWS confirmed to Honeywell that it could design and manufacture a battery pack that would meet Honeywell's operational requirements in its alarm panel and serve as a reliable backup battery in the final alarm-panel product.

29.     To that end, TWS developed a battery-pack design that included, among other things, specifications for cell parameters and assembly, charging method and voltage, and storage and operating temperatures. Honeywell relied on TWS for this expertise and did not participate in the battery-pack's design.

30.     After Honeywell selected TWS as its battery-pack supplier in 2017, TWS began manufacturing battery packs according to its proposed design and Honeywell's operating specifications, initially using battery cells purchased from LG Corporation.

## Battery-Pack Failures and TWS's Failed Solution

31.     After Honeywell received battery packs from TWS, it began conducting its own testing. During this testing, in approximately July 2018, Honeywell observed a failure mode related to the battery packs' Current Interruption Device ("CID").

32.     A CID is a failsafe mechanism that effectively acts like an electrical fuse. If the batteries in a battery pack reach excessive pressure, voltage, or temperature levels, the CID will "open" in the same way that a fuse might "trip." Once a CID opens, the battery pack stops working, with the intent that the battery pack will not overheat and cause a safety concern. An open CID is irreversible, and the battery pack is rendered permanently useless.

33.     In July 2018, Honeywell contacted TWS about the CID issue that it had observed in TWS's battery packs.

34.     As part of investigating the CID issue, Honeywell sent to TWS an assembled alarm panel, so that TWS could observe and test the battery pack in exactly the same configuration and conditions in which the battery pack would be used by consumers.

35.     TWS received the alarm panel, tested battery packs according to their intended use, consulted LG about the battery cells, and ultimately concluded that the CID issue was being caused because the batteries were overcharging, overheating, and "float charging." Float charging is a charging method that keeps a battery continuously charged. TWS focused on float charging as the source of the issue and performed float-charging testing.

7

36.     As a result of the testing, TWS made specific recommendations to Honeywell to fix the problem, including altering the alarm panel's programming so that float charging was reduced and the battery pack was only charged once per day.

37.     Relying on TWS's skill and expertise, Honeywell promptly edited the alarm panel's software and charging parameters according to TWS's instructions. Thereafter, Honeywell did not observe the CID opening during testing.

38.     In October 2018, Resideo spun off from Honeywell and continued what was previously Honeywell's home-security business. As part of the spin-off, Resideo assumed Honeywell's legal rights and obligations related to the ADT home-security panel, the battery packs at issue, and all related supplier agreements and arrangements.

Resideo and TWS's Purchase Orders

39.     From November 2017 to October 2021, TWS fulfilled dozens of Purchase Orders for battery packs that were assembled into alarm panels.

40.     Initially, in 2017, Honeywell's orders were smaller in volume as the product went through earlier stages of development and sale.

41.     Starting in 2018, after TWS seemingly corrected the CID issue, Resideo entered full production and produced thousands of alarm panels for ADT using TWS's battery packs.

42.     Between 2018 and 2020, Resideo purchased about 750,000 battery packs from TWS for use in the ADT alarm panels, with purchases totaling in the millions of dollars.

43.     Resideo employees, including those based in New York, largely communicated about these orders with TWS Technology LLC employees who handled project orders, production forecasts, deliveries, and payments. On information and belief, TWS Technology LLC employees asked that Resideo direct all questions or issues to TWS Technology LLC employees, and not TWS Technology Ltd. employees, unless the issues related to product quality or engineering.

8

44.     Resideo purchased battery packs from TWS using the Purchase Orders. The Purchase Orders included terms and conditions which govern the transactions entered into pursuant to the orders.

45.     By accepting and fulfilling the Purchase Orders, TWS agreed that:

> Resideo's Purchase Order Terms and Conditions attached to, transmitted with, or referenced in this Purchase Order (together with all related specifications, drawings, or other documents referred to on the face of the Purchase Order or related to this Purchase Order) are incorporated by reference and shall govern the transaction(s) entered into pursuant to this Purchase Order. . . .

Exhibit A at 2.

46.     The Terms and Conditions stated warranties that all purchased goods "be free from defects in material, workmanship, and design, even if the design has been approved by Resideo," "conform to applicable drawings, designs, quality control plans, specifications and samples and other descriptions furnished or specified by Resideo," "be merchantable," and "be fit for the intended purposes and operate as intended." *Id.* at 4.

47.     Through the Terms and Conditions, TWS agreed that the warranty period for the battery packs "is 36 months from the date of delivery to the end user . . . ." TWS also warranted the battery packs "for the same time period (if extending beyond 36 months) as the warranties provided by Resideo to Resideo's customers relating to such Goods." *Id.*

48.     The warranties also "survive any delivery, inspection, acceptance, or payment by Resideo, and "[c]laims for breach of warranty do not accrue until discovery of nonconformance. . . . Any applicable statute of limitations runs from the date of discovery." *Id.*

49.     In the event that TWS breached its warranties to Resideo, TWS agreed that:

> If conforming Goods are not furnished within the time specified by Resideo then Resideo may, at its election, have the nonconforming Goods repaired, replaced, or corrected at Supplier's expense or credited to Resideo. Supplier is responsible for the costs of repairing, replacing or correcting nonconforming Goods or crediting

9

them to Resideo, and for all related costs, expenses and damages including, but not limited to, the costs of removal, disassembly, failure analysis, fault isolation, reinstallation, re-inspection, and retrofit of the nonconforming Goods or of Resideo's affected end-product; all freight charges, including but not limited to incremental freight expenses incurred by Resideo for shipments of repaired, replaced, or corrected Goods to Resideo and for shipments of repaired, replaced, or corrected Goods or finished product containing or incorporating repaired, replaced, or corrected Goods from Resideo to any customer of Resideo; all customer charges; and all corrective action costs.

*Id.*

50.     Resideo's Purchase Orders also included an express warranty regarding "epidemic"

failures:

If, following delivery, Goods exhibit a substantially similar repetitive root cause, failure mode or defect indicating a common or systemic failure ("Epidemic Failure"), then, without prejudice to Resideo's rights under Section 22: (a) the party discovering the failure will promptly notify the other and Supplier will provide to Resideo a preliminary plan for problem diagnosis within one business day of such notification, which plan Supplier will revise at Resideo's request; (b) Supplier and Resideo will diagnose the problem, plan an initial work-around and effect a permanent solution; (c) Supplier and Resideo will agree on a plan for customer notification, replacement scheduling and remediation, including identification of suspect population, field removal, return and reinstallation, work in progress, inventory replacement, and repair, or retrofitting, regardless of location or status of WIP completion; and (d) Supplier is responsible for all costs and damages associated with any Epidemic Failure. Resideo and Supplier will work together in good faith to establish and expeditiously implement an Epidemic Failure action plan. If Supplier or any of its Component suppliers initiate any Product or Component recalls, retrofits, or service bulletins that affect Product quality, Supplier will immediately communicate this information to Resideo.

*Id.*

## TWS Breaches the Terms and Conditions

51.     In July 2021—well before any TWS battery pack had been in the field for 36 months—Resideo began receiving reports from ADT of widespread battery-pack failures in the field, meaning, in homes and businesses across America.

52.     Resideo and TWS conducted separate analyses of the failures and concluded that the failed batteries had open CIDs. This was the same issue that Honeywell had asked TWS for instructions to fix in 2018, and for which Honeywell made the provided modifications.

53.     For the batteries that had open CIDs, TWS concluded that the root cause was that the battery packs were being used in high-heat environments and overcharging. But TWS already knew how the battery packs were intended to be used, including their expected operating and storage temperatures, as the operating parameters were made clear to TWS at the time of design and sale and as TWS tested the batteries in security panels. TWS had specifically advised Honeywell, now Resideo, on how it believed Resideo should properly program the battery packs to prevent the open CID issue.

54.     As time made clear, however, TWS failed to correct the issue and its programming instructions were not correct. As a result, TWS failed to provide battery packs sufficient for the intended use and warranted life.

55.     As a result of the CID issue, ADT launched a massive, nationwide effort to identify and replace the TWS battery packs that failed in users' homes, each time with an open CID. ADT contacted hundreds of thousands of customers with alarm panels that depended on TWS batteries. For each affected customer, ADT then either scheduled an individual visit by a qualified serviceperson to replace the battery pack or arranged to have the defective battery shipped back to ADT and replaced with a new battery pack. This was a painstaking process that took more than a year to execute, at considerable expense.

56.     TWS breached its warranties to Resideo by failing to design, manufacture, and sell battery packs that adequately performed for their intended purpose, and in accordance with their warranty, for at least 36 months.

57.     TWS also negligently misrepresented to Resideo that the battery packs were suitable for their intended use.

58.     As a result of TWS's misconduct, ADT replaced hundreds of thousands of affected battery packs in alarm panels assembled by Resideo. As required by the contract between ADT and Resideo, ADT was then entitled to seek those extensive replacement costs from Resideo, which Resideo paid according to its contractual obligations.

59.     Thus, by virtue of TWS's misconduct, Resideo suffered extensive damages.

## COUNT ONE

### (Breach of Contract)

60.     Resideo incorporates by reference the allegations stated above.

61.     The Purchase Orders issued by Resideo, and accepted and fulfilled by TWS, formed valid and enforceable contracts between the parties.

62.     Resideo performed all its obligations under the Purchase Orders.

63.     TWS breached the Purchase Orders by not fulfilling its obligations to provide merchantable batteries. Instead, TWS manufactured and sold defective battery packs that failed to perform as specified and for their intended purpose.

64.     TWS's breach also triggered the epidemic failure obligations in the Purchase Order.

65.     Because of TWS's breach of the Purchase Order, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

## COUNT TWO

### (Breach of Express Warranty)

66.     Resideo incorporates by reference the allegations stated above.

67.     Through the Purchase Orders, TWS agreed to the express warranties stated in the Terms and Conditions.

12

68. The battery packs that TWS sold to Resideo did not conform to the express warranties stated in the Purchase Order's Terms and Conditions. Among other things, the battery packs were not free from defects, were not merchantable, and did not perform their intended purpose. The battery packs also did not perform satisfactorily for 36 months.

69. Because of TWS's breach of the Purchase Order, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

### COUNT THREE

**(Breach of Implied Warranty)**

70. Resideo incorporates by reference the allegations stated above.

71. TWS is a merchant specializing in designing and selling lithium-ion batteries and battery packs.

72. TWS sold approximately 750,000 battery packs to Resideo that were not merchantable. Among other things, the battery packs were not of fair average quality within the contract description, were not fit for the ordinary or intended particular purposes for which such goods are used and contain even quality among all units shipped.

73. TWS knew of the intended use for the battery packs through the RFP process, communications with Honeywell and Resideo, and because TWS tested the battery packs in the intended alarm panel.

74. Honeywell, and then Resideo, relied on TWS's skill, experience, and judgment in designing, manufacturing, and selecting lithium-ion battery packs for use by Resideo in the alarm panels at issue.

75. TWS breached the warranty of fitness for a particular purpose by selling battery packs to Resideo that did not satisfy that intended purpose.

13

76.     Because of TWS's breach of implied warranties, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

**COUNT FOUR**

**(Negligent Misrepresentation)**

77.     Resideo incorporates by reference the allegations stated above.

78.     TWS and Resideo had a special relationship which imposed a duty on TWS to give correct information, because TWS was aware of Resideo's reliance on its expertise for lithium-ion batteries.

79.     TWS made false representations that it should have known were incorrect, including that TWS could design battery packs for the purpose required by Resideo and that the battery packs would perform as intended. TWS then further made false representations that its alterations to the battery pack's programming and design had corrected the open CID issue that Resideo had observed.

80.     Resideo reasonably relied on TWS's representations.

81.     Because of TWS's negligent misrepresentations, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Resideo respectfully requests the following relief:

A.     A judgment in favor of Resideo and against Defendants, and awarding Resideo compensatory damages in an amount to be determined at trial, as well as all of Resideo's costs, disbursements, interest, and attorney's fees allowable under any applicable law or contract; and

B.     Any other relief that this Court deems just and equitable under the circumstances.

14

Dated:     Garden City, New York
           June 7, 2023

                                        Yours, etc.,

                                        **PILLINGER MILLER TARALLO, LLP**


                                        Neil L. Sambursky, Esq.
                                        1140 Franklin Avenue, Suite 214
                                        Garden City, New York 11530
                                        nsambursky@pmtlawfirm.com
                                        (516) 408-5388
                                        PMT File No. N-RESID-00123

                                        **GREENE ESPEL PLLP**
                                        Faris A. Rashid, Reg. No. 0391508
                                        Farah N. Famouri, Reg. No. 0403295
                                        222 S. Ninth Street, Suite 2200
                                        Minneapolis, MN 55402
                                        frashid@greeneespel.com
                                        ffamouri@greeneespel.com
                                        (612) 373-8352
                                        (612) 373-8375
                                        *(Pro hac vice motion to be submitted)*

                                        ***Attorneys for Ademco Inc. d/b/a Resideo***

# Exhibit A

# resideo

**Sold To:**
Ademco Inc.
Electronic Prod. COE # US
263 Old Country Rd
MELVILLE NY  11747-2712
United States

## Purchase order

| Number | Version | Date |
|---|---|---|
| **4431219494** | **1** | **03-APR-2020** |

Resideo's Purchase Order Terms and Conditions attached to, transmitted with, or referenced in this Purchase Order (together with all related specifications, drawings, or other documents referred to on the face of the Purchase Order or related to this Purchase Order) are incorporated by reference and shall govern the transaction(s) entered into pursuant to this Purchase Order. Resideo's Purchase Order number and line item number must appear on all invoices, shipping documents and notices, bills of lading, and all correspondence related to this order.  Unless prohibited by law or otherwise indicated on the face of this Purchase Order, all Payment terms shall commence from the date upon which both (i) a correct invoice is received at the specified "Bill to - mailing" address and in accordance with the Net terms of payment indicated below subject to Resideo's scheduled payment runs and (ii) all goods and/or services are received in conformance with the Purchase Order.

**Vendor Address:**
TWS Technology LTD
244 248 Des Voeux Rd Central
999077 SHEUNG WAN
Hong Kong

Your Vendor Number with us:    2091305

Tel:                                                 85230501950

**Bill To - mailing address:**

**Email Address - PDF attachments only:**
APUSInvoices@resideo.com

**Postal address:**
EMAIL ONLY TO OUR PDF MAILBOX

**Ship to:**
Ademco (Inc.) Juarez
12220 Rojas Dr, Ste 100
Dock Door 5 or 7
EL PASO TX  79936-7713
United States

**Resideo Contact:**

| | | |
|---|---|---|
| Buyer: | Name: Portillo, Yazmin | |
| | Tel: +1 9155331008 X 4244 | |
| | Fax: | |
| | Email: yazmin.portillo@resideo.com | |
| Accts Payable: | Tel: | |
| | Email: APUSHelpdesk@Resideo.com | |

| Item | Material/Description | Quantity | UoM | Unit Price | Net Amount | TAX |
|---|---|---|---|---|---|---|
| | **Terms of payment :**  Net 90 days | | | | | |
| | **Currency :**  USD | | | | | |
| | **Terms of delivery :**  EXW(Ex Works) /EX-WORKS | | | | | |
| | Must comply with Resideo specs: Barcode and Label per ES702; RoHS Compliant per ES746 | | | | | |
| | Certificate of Compliance (CoC) is required for every shipment and every Purchase | | | | | |
| 10 | 300-10186 | 10.008,00 | EA | 6.317,50 /1.000  EA | 63.225,54 | N |
| | BATT, LF, Lithium-ion, 3.6V, 7800mAH,3pi | | | | | |
| | Revision Level B | | | | | |
| | Your material Number:   A1070040000 | | | | | |
| | Part Number: 300-10186 | | | | | |
| | Description: BATT, LF, Lithium-ion, 3.65V, 6450mAH,3pin,69.2x56.05x19mm,0C to 45C | | | | | |
| | | | | | | |
| | Honeywell Requirements: | | | | | |
| | Barcode and Label per ES702; REACH Compliant per ES746; RoHS Compliant per ES746 | | | | | |
| | | | | | | |
| | *** Item completely delivered *** | | | | | |
| | **Manufacturing Part Number** | **Manuf.** | | **Manuf. pl. Rev. I** | | |
| | A10700400A1 | A000013221 TWS INDUSTRIAL (HOLDINGS) LTD | | | | |
| | KL11099 | A000013884 YIYANG CORUN BATTERY CO LTD | | | | |
| | KL11654 | A000013884 YIYANG CORUN BATTERY CO LTD | | | | |
| | Manufacturers Material Analysis all GRs required , if you are not the manufacturer please supply both your own Material Analysis | | | | | |

**resideo**

**Sold To:**
Ademco Inc.
Electronic Prod. COE # US
263 Old Country Rd
MELVILLE NY 11747-2712
United States

## Purchase order

| Number | Version | Date |
|---|---|---|
| **4431219494** | **1** | **03-APR-2020** |

Resideo's Purchase Order Terms and Conditions attached to, transmitted with, or referenced in this Purchase Order (together with all related specifications, drawings, or other documents referred to on the face of the Purchase Order or related to this Purchase Order) are incorporated by reference and shall govern the transaction(s) entered into pursuant to this Purchase Order. Resideo's Purchase Order number and line item number must appear on all invoices, shipping documents and notices, bills of lading, and all correspondence related to this order. Unless prohibited by law or otherwise indicated on the face of this Purchase Order, all Payment terms shall commence from the date upon which both (i) a correct invoice is received at the specified "Bill to - mailing" address and in accordance with the Net terms of payment indicated below subject to Resideo's scheduled payment runs and (ii) all goods and/or services are received in conformance with the Purchase Order.

| all GRs and the manufacturers | | |
|---|---|---|
| Total net value excl. tax | USD | 63.225,54 |

| Approved by: | Portillo, Yazmin |
|---|---|



# TERMS AND CONDITIONS

Resideo Standard Purchase Order Terms and Conditions for Goods and Services

**1.        Acceptance - Order Of Precedence - Modification**

This purchase order (**"Purchase Order"**) is for the purchase of goods services, or both as described on the face of this Purchase Order (collectively, **"Goods"**) and is issued by the member of Ademco Inc group of companies identified on the face of this Purchase Order(**"Resideo"**). This Purchase Order is deemed accepted when the supplier to which this Purchase Order is issued (**"Supplier"**) returns the acknowledgment copy of this Purchase Order or begins performing, whichever is earlier. Resideo rejects any additional or inconsistent terms and conditions offered by Supplier at any time. Any reference to Supplier#s quotation, bid, or proposal does not imply acceptance of any term, condition, or instruction contained in that document.

These terms and conditions together with any previously executed non-disclosure agreement (the obligations of which remain in effect) and with the exhibits, schedules, specifications, drawings, or other documents referred to on the face of the Purchase Order, or attached, or any documents incorporated by reference, supersede any prior or contemporaneous communications, representations, promises, or negotiations, whether oral or written, respecting the subject matter of this Purchase Order. All contract documents related to this Purchase Order are interpreted together as one agreement; provided, however, that in the event of any conflict among the provisions of one or more of such contract documents as are validly in effect at the time of such conflict, the following order of precedence applies: (a) any consignment, stocking or other replenishment agreement; then (b) any supply agreement; then (c) any contract for labor services; then (d) the face of the Purchase Order and any supplemental terms included or incorporated by reference; then (e) these general Purchase Order provisions; and finally (f) other contract documents agreed to in writing by the parties.  The exhibits, schedules and other attachments to this Purchase Order are incorporated by reference. No change to or modification of this Purchase Order  will be binding upon Resideo unless in writing, specifically identifying that it amends this Purchase Order, and signed by an authorized procurement representative of Resideo. If Supplier becomes aware of any ambiguities, issues, or discrepancies between this Purchase Order and any  specification, design, or other technical requirement applicable to this Purchase Order, Supplier will immediately submit the matter to Resideo for resolution. Neither Party has relied on any promises, inducements, or representations by the other, except those expressly stated in this  Purchase Order. No course of dealing, prior dealings, usage of trade or course of performance  will be used to modify, supplement or explain any terms used in, or incorporated by reference into, this Purchase Order.

**2.        Delivery, Shipment and Packaging**

2.1.      TIME IS OF THE ESSENCE. Supplier will deliver Goods in the quantities and on the date(s) specified on the Purchase Order or Purchase Order schedule releases. If delivery dates are not  stated, Supplier will offer its best delivery date(s), which will be subject to acceptance or rejection by Resideo. Unless otherwise directed, all Goods shipped in one day from and to a single location must be consolidated on one bill of lading or air waybill, as appropriate.

2.2.      If the delivery schedule is endangered for any reason other than Resideo#s fault, then Supplier will, at its expense, deliver Goods by the most expeditious shipping method required to  fulfill the Purchase Order delivery requirements. Supplier is responsible for all costs incurred by Resideo resulting from Supplier#s delayed or missed delivery.  If any Products are not delivered on time, Resideo may, without prejudice to its other rights, deduct 2% of the Purchase Order value per week of late delivery, up to a maximum of 8% and if delivery is delayed for more  than 4 weeks.  Resideo will not have to prove actual damages to recover the stipulated damages   in this section. The stipulated damages above and, if assessed, additional damages will be credited in any outstanding invoice or, if not sufficient,  Supplier will pay Resideo within 10 days of Purchaser#s assessment. Resideo reserves the right to reject, at no expense to Resideo, all or any part of any delivery that varies from the quantity authorized by Resideo for shipment.  Resideo reserves the right to pursue additional remedies caused by late delivery, including  but not limited to: (a) incremental freight expenses incurred by Resideo for shipments of Goods  to Resideo and for shipments of Goods or finished product containing or incorporating the Goods from Resideo to any customer of Resideo, and (b) all liquidated damages payable by Resideo as  a result of any such late delivery.  Supplier will not make any substitutions without Resideo#s prior written approval.  All items will be packaged according to Resideo's instructions or, if none, according to good commercial practice in a manner sufficient to ensure receipt in an undamaged condition. Resideo will not be liable for any discharge, spill or other environmental incident or condition (including clean-up costs) involving any Goods shipped under the Purchase  Order unless caused by Resideo and in no event until delivery to the destination designated by Resideo.  All containers will be properly marked for identification as instructed on Resideo#s Purchase Order and contain a packing slip that details, at a minimum, the Resideo Purchase Order number(s), product part number, detailed product description, country of origin, total number  of boxes in shipment, quantity of product shipped, and final delivery address.  Items shipped  in advance of Resideo's delivery schedule may be returned at Supplier's expense. For domestic shipments, if requested by Resideo, and for all international shipments, Supplier will give notice of shipment to Resideo when the Goods are delivered to a carrier for transportation. The Purchase Order number(s) must appear on all correspondence, shipping labels, and shipping documents, including all packing sheets, bills of lading, and air waybills.

2.3.      All Goods, unless specifically exempted by the destination country#s governing authorities, must be marked with the country of origin (manufacture) of the Goods in a conspicuous place  as legibly, indelibly, and permanently as the nature of the article or container permits.

2.4.      Supplier will provide Resideo with (a) the Harmonized Tariff Schedule number, country of origin information or certificates, manufacturer's affidavits, applicable free trade agreement  ("FTA") certificates, and any other documents or information Resideo may require to comply with   international trade regulations or to lawfully minimize duties, taxes, and fees, and (b) FTA certificates for all Goods that qualify under one or more FTAs.  Supplier will provide Resideo all documents, records, and other supporting information necessary to substantiate the Goods# qualification under an FTA. Supplier will exert reasonable efforts to qualify the Goods under FTAs.

2.5.      Within one business day after Supplier delivers the Goods to the carrier or at such earlier time as Resideo may request, Supplier will send Resideo a complete set of shipping documents  including but not limited to the commercial invoice, packing list, and air waybill, or three original parts of the combined through-bill of lading, clean without notation, necessary to release the Goods to Resideo#s custody.

2.6.      Supplier will (a) comply with the quality system and quality assurance procedures set forth in the Quality Manual made available to Supplier, and (b) participate in and accept the terms of Resideo#s Cost of Poor Performance Program, which will be provided to Supplier upon request.

**3.        Notice of Delay.** Supplier must immediately notify Resideo in writing with all  relevant information relating to any delay or threatened delay of the timely performance of this Purchase Order.

**4.        Excusable Delay (Force Majeure)**

Neither party will be in default for any delay or failure to perform due to causes beyond its control and without its fault or negligence, and which are unforeseeable, but any delay or failure to perform caused by the default of a sub tier supplier of Supplier will be excused only if  (a) it is beyond the control of both Supplier and its sub-tier supplier(s) and without the fault or negligence of any of them, and (b) the Goods to be furnished cannot be obtained from other  sources in sufficient time to permit Supplier to meet the delivery schedule. Supplier's ability to sell Goods at a more advantageous price or Supplier's economic hardship in buying materials or processing necessary for manufacture of the Goods will not constitute an excusable delay event. The party affected by an excusable delay will promptly provide written notice to the other, explaining in detail the full particulars and expected duration of the excusable delay, and  will use its best efforts to mitigate the effects of the delay and to remedy the delay if it can be remedied. If Supplier's delivery is delayed, Resideo may, at Resideo's sole option cancel  deliveries scheduled during the excusable delay period or elect to extend the period of performance to cover the period of delay caused by the excusable delay.  If an excusable delay occurs that affects delivery of Goods to Resideo, Supplier will allocate its available supply of Goods in a manner that assures Resideo of at least the same proportion of Supplier's total output of  Goods as was allocated to Resideo before the excusable delay event. If delivery of any Goods is  delayed for more than 30 days, Resideo may, without liability, cancel all or any part of this Purchase Order.

**5.        Performance Assurance Plan**

If Resideo, in its sole discretion, determines there is a significant risk that Supplier will fail to meet its performance or delivery requirements under this Purchase Order, Resideo may require Supplier to perform under a Resideo or Resideo-approved Performance Assurance Plan. The Performance Assurance Plan may include specific reporting and performance requirements reasonably   tailored to ensure Supplier#s adequate performance under identified provisions of this Purchase Order. Any failure by Supplier to satisfy the terms of the Performance Assurance Plan is a material breach of this Purchase Order.

**6.        Shipping Terms, Title and Risk of Loss**

6.1.      If the Goods will be transported from Supplier's location in the U.S. to Resideo's designated delivery location in the U.S., unless otherwise specified on the face of the Purchase Order or in a separate signed agreement, the F.O.B. (UCC terms) point is Resideo's designated delivery location. When the F.O.B. point is Supplier's U.S. location, Supplier bears all risk of loss or damage to the Goods and title passes to Resideo upon delivery of the Goods by Supplier to  the carrier designated or approved by Resideo. When the F.O.B. point is Resideo's U.S. location, Supplier bears all risk of loss or damage to the Goods and title passes to Resideo upon delivery of the Goods by Supplier at Resideo's designated delivery location.

6.2.      In all other cases, unless otherwise specified on the face of the Purchase Order or in a  separate signed agreement, (a) Supplier will deliver the Goods DAP (INCOTERMS 2010) at Resideo's designated delivery location, and (b) title to Goods passes to Resideo upon receipt at Resideo's designated delivery location.

6.3.      The foregoing does not relieve Supplier of any responsibility for hidden damages discovered after acceptance of the Goods.  Notwithstanding the foregoing, title and risk of loss to Goods subject to a consignment, stocking or other replenishment agreement pass upon release of the  Goods from consigned inventory or at such other time set forth in such consignment, stocking or other replenishment agreement. Resideo may direct Supplier to ship the Goods to Resideo or to  any third party designated by Resideo.

**7.        Import/Customs Compliance**

Supplier assumes all responsibility and liability for any shipments covered by this Purchase Order requiring any government import clearance. If government authorities declare or otherwise impose countervailing duties, antidumping duties, or retaliatory duties on the Goods imported under this Purchase Order, Resideo reserves the right to terminate this Purchase Order under the  Termination provisions of this Purchase Order. Supplier will be debited for any duties, fees, or freight incurred by Resideo due to Supplier's failure to comply with the terms and conditions  of this Purchase Order.

**8.        Drawback**

To the extent applicable to any shipment of Goods to Resideo or Resideo#s designee, all drawback of duties, and rights thereto, related to duties paid by Supplier or Resideo when the Goods are imported or any materials or components used in manufacturing of the Goods will accrue to the exclusive benefit of Resideo. Duty drawback rights include rights developed by substitution and duty drawback rights obtained from sub-tier suppliers related to the Goods.  Supplier will provide Resideo with all documents, records, and other supporting information necessary to obtain any duty drawback, and will reasonably cooperate with Resideo to obtain payment.

**9.        Offset**

Supplier will assist Resideo in obtaining credit from Supplier#s government for the value of relevant Goods purchased to meet any present or future contractual offer or industrial benefit requirements imposed upon Resideo or its subsidiaries or affiliates, if any.  Assistance includes, but is not limited to, providing upon Resideo#s request evidence of the existence, value, content, and other pertinent information relating to the purchases. Resideo reserves the right to  claim these credits for itself or third parties. If Supplier awards any portion of the work under this Purchase Order to any lower tier supplier, Supplier will assign to Resideo any credits  obtained from the lower tier supplier#s government relating to this transaction, if any, and assist Resideo in obtaining those credits.

**10.        Resideo-Supplied Materials, Tooling, Equipment and Technical Data**

10.1.      Title to any material, components, tooling, equipment, or technical data that Resideo pays for or provides to Supplier or is responsible for providing to Supplier, including replacements (**"Resideo Property"**), will remain or vest with Resideo. Supplier will conspicuously label Resideo Property as such, maintain it in good working condition, keep written records of the Resideo Property in its possession and the location of the property, not allow any liens to  be placed upon it, not abandon Resideo Property, prohibit any third party from using or taking  possession of Resideo Property and not change its location without prior written approval from  Resideo. Supplier is responsible for inspecting and determining that the Resideo Property is in  useable and acceptable condition.

10.2.      Supplier shall obtain all permits and licenses necessary for the installation, operation, possession, and use of Resideo Property. Supplier shall comply with all laws, rules, regulations, and ordinances applicable to the installation, use, operation of Resideo Property.

---

PO Number:    4431219494

**resideo**

## TERMS AND CONDITIONS

10.3.    Supplier will use Resideo Property exclusively to fulfill Resideo Purchase Orders unless otherwise authorized in writing by Resideo's procurement representative. Resideo Property is intended for use at the Supplier's site only or as otherwise authorized in writing by Resideo's procurement representative and, to the extent applicable, is subject to U.S. and other government export or re-export requirements. Supplier is responsible for any loss, damage, or destruction of Resideo Property and any loss, bodily injury, damage or destruction resulting from Supplier's use of Resideo Property. Supplier shall provide for the service, repair, and maintenance of Resideo Property, at its own expense, so as to keep Resideo Property in good condition, repair, appearance, and working order as when delivered to Resideo hereunder, ordinary wear and tear excepted. Supplier shall, at its own expense, replace any and all parts and devices which may from time to time become worn out, lost, stolen, destroyed, damaged beyond repair, or rendered unfit for use for any reason whatsoever. All such replacement parts, mechanisms, and devices shall be free and clear of liens, encumbrances, and rights of others and shall become Resideo Property. Supplier will not include the cost of any insurance for Resideo Property in the prices charged under this Purchase Order and, to the extent that any Goods contain any Resideo Property, will not include in the price of any such Good any mark-up or fee with respect to such Resideo Property. Supplier will return Resideo Property or dispose of it as Resideo directs in writing. Resideo makes no representations and disclaims all warranties (express or implied) with respect to Resideo Property.

11.    **Price**

Supplier will furnish the Goods at the prices stated on the face of the Purchase Order. If prices are not stated on the face of the Purchase Order, Supplier will offer its lowest prices subject to written acceptance by Resideo. Unless otherwise provided on the face of the Purchase Order, the prices include all packaging and freight to the specified delivery point; applicable taxes and other government charges including, but not limited to, all sales, use, or excise taxes; and all customs duties, fees, or charges that must be separately itemized on all invoices issued by the Supplier in terms of this Purchase Order. To the extent that value added tax (or any equivalent tax) is properly chargeable on the supply to Resideo of any Goods, Resideo will pay the tax as /an addition to payments otherwise due Supplier under this Purchase Order, if Supplier provides to Resideo a value-added tax (or equivalent tax) invoice. To the extent Resideo  has not received from Supplier all applicable forms regarding compliance with applicable tax laws, Resideo reserves the right to deduct from any payment to Supplier pursuant to this Purchase  Order those amounts that Resideo, in its sole discretion, deems to be required to be withheld  in order to comply with the tax laws of any applicable jurisdiction. Upon the agreement of the  parties to reduced pricing for the Goods, such pricing shall immediately apply to all Goods in  consignment, stocking or replenishment arrangement with Supplier, all undelivered Goods, all open  and unfilled Purchase Orders, all future Purchase Orders and all unconsumed inventory owned by Resideo.

12.    **Price: Most Favored Customer and Meet or Release**

Supplier warrants that the prices charged for the Goods delivered under this Purchase Order  are  the lowest prices charged by Supplier for similar goods. If Supplier charges a lower price for similar goods, Supplier must notify Resideo and apply that price to all Goods ordered under this Purchase Order by immediately paying Resideo the price difference and applying the lower price to all Purchase Orders. If at any time before full performance of this Purchase Order Resideo notifies Supplier in writing that Resideo has received a written offer from another supplier for similar goods at a price lower than the price set forth in this Purchase Order, Supplier  must immediately meet the lower price for any undelivered Goods.  If Supplier fails to meet the   lower price, in addition to other rights or remedies, Resideo, at its option, may immediately  terminate the balance of the Purchase Order without liability. As directed by Resideo, Supplier will  provide the Goods at the prices listed on the face of this Purchase Order, subject to these terms and conditions, to other Resideo divisions and affiliates and any third-party Resideo sub-supplier or designee.

13.    **Invoicing and Payment**

After each shipment made or service provided, Supplier will submit to the address indicated on the Purchase Order an invoice listing  a description of the Goods provided and, as applicable,  part numbers, quantity, unit of measure, hours, and the unit and total prices. Supplier must provide invoices in no event more than 90 days after delivery of Goods to Resideo otherwise Supplier waives its right to payment. This invoice must match the corresponding Purchase Order pricing, quantities, and terms, and must be sent to the invoice address listed on the Purchase Order.  All applicable taxes and other Government charges including, but not limited to, sales, use,  or excise taxes, value added tax, customs duties, fees and all incidental charges including but not limited to royalties, selling commissions, nonrecurring engineering, or other incidental  charges must be separately itemized and identified on the invoice. The invoice must also include the following information in English, or in the destination country's official language if required: (a) name and address of Supplier and the Resideo entity purchasing the Goods; (b) name  of shipper (if different from Supplier); (c) Resideo's Purchase Order number(s); (d) country of export; (e) detailed description of the Goods; (f) Harmonized Tariff Schedule number; (g) country of origin (manufacture) of the Goods, or if multiple countries of origin, the country of origin of each part shipped; (h) weights of the Goods shipped; (i) currency in which the sale was made; (j) payment terms; (k) shipment terms used; and (l) all rebates or discounts.  If an invoice does not comply with the above requirements or is exhausted (out of funds or paid in full), or the invoice contains quantities or prices greater than the ones reflected on the Purchase  Order the invoice will be rejected by Resideo. The invoice will be accompanied (if applicable) by a signed bill of lading or express receipt evidencing shipment. Payment of an invoice does not constitute acceptance of the Goods and is subject to appropriate adjustment should Supplier  fail to meet the requirements of the Purchase Order.  Payment terms are net 120 days from receipt of correct invoice and conforming Goods unless otherwise stated on the face of the Purchase  Order or other written agreement executed by both parties; provided, however, that in the event that applicable law requires a payment terms period of shorter duration, payment terms shall  be the maximum period allowed by applicable law.  Invoices will not be approved unless they accurately  reference conforming Goods received by Resideo or services satisfactorily performed for Resideo, as well as a valid Purchase Order number, supplier name and address, line description, quantity at line level, price at line level, withholding rates and/or amounts for applicable  taxes.  Payment will be scheduled for the next payment cycle following the net terms for the Purchase Order.

14.    **Set Off.** Resideo may deduct any amount owing from Supplier to Resideo as a set off against any amount owing to Supplier under this Purchase Order.

15.    **Inspection**

15.1.    All Goods may be inspected and tested by Resideo, its customers, higher-tier contractors, and end users at all reasonable times and places.  If inspection or testing is made at Supplier's premises, Supplier will provide, without charge, all reasonable facilities and assistance  required for the inspection and tests. Supplier's standard inspection and testing system must be approved by Resideo in writing. All inspection and testing records, including sub-tier supplier records relating to the Goods, will be maintained by Supplier and made available to Resideo  during the performance of this Purchase Order, and for such longer periods if specified by Resideo.

15.2.    Final inspection and acceptance by Resideo will be at destination unless otherwise specified in this Purchase Order.  Resideo may inspect all or a sample of Goods, and may reject all  or any portion of the Goods within 90 days of delivery if Resideo determines the Goods are defective or nonconforming.  If Resideo performs any inspection (other than the standard inspection) after discovering defective or nonconforming Goods, any additional inspection costs will be paid by Supplier.  No inspection, tests, approval, design approval, or acceptance of any Goods relieves Supplier from responsibility for warranty or any defects (latent or otherwise), fraud, or negligence. Resideo reserves the absolute right to refuse acceptance of, or reject and return  to Supplier at Supplier's sole cost and expense any material, Goods that fail to conform to any applicable laws  or regulations, or for which Supplier fails to package, ship, label or provide proper notice to Resideo as required by any applicable law or regulation. If Goods are defective or nonconforming, Resideo may, by written notice to Supplier: (a) rescind this Purchase Order as to the Goods; (b) accept the Goods at an equitable reduction in price; or (c) reject the  Goods and require the delivery of replacements.  Delivery of replacement Goods will be accompanied  by a written notice specifying that the Goods are replacements.  If Supplier fails to deliver required replacements promptly, Resideo may: (1) correct any retained defective or nonconforming  Goods at Supplier's expense; (2) replace them with Goods from another supplier and charge the  Supplier the cost thereof, including cover, and any incidental costs; or (3) terminate this Purchase Order for cause.

16.    **Warranty**

16.1.    Supplier warrants to Resideo, its successors, assigns, customers, and end users that during the entire Warranty Period specified below, all Goods furnished (including all replacement  or corrected Goods or components and regardless of whether all or any part of such furnished Goods or any replacement or corrected Goods was manufactured, distributed or otherwise commercialized  by a third party prior to delivery by or on behalf of Supplier to Resideo) will (a) be new, (b) be free  from defects in material, workmanship, and design, even if the design has been approved by Resideo, (c) conform to applicable drawings, designs, quality control plans, specifications and samples and  other descriptions furnished or specified by Resideo, (d) not be or contain Counterfeit Items (as  defined below), (e) be and only contain materials directly obtained from the original equipment manufacturer (**"OEM"**) or a reseller authorized by the OEM, (f)  be merchantable, (g) be fit for the  intended purposes and operate as intended, (h) comply with  all laws and regulations, (i) be free  and clear of any and all liens or other encumbrances, (j) contain only authentic, unaltered OEM labels  and markings, and (k) not infringe any patent, published patent application, or other intellectual property rights of any third party and not utilize misappropriated third party trade secret information. Goods that fail to meet the preceding standards are collectively called "non-conforming Goods." "Counterfeit Items" mean Components (as defined below), Goods and software incorporated in a Good or Component that (i) are unauthorized copies or substitutes of an OEM item; (ii) are not produced in accordance with, or do not contain the proper materials or components as specified on, the OEM's specifications or design; (iii) are used, refurbished, or reclaimed, but which are represented as being new; or (iv) are labeled, logoed or marked to mislead or deceive a reasonable person into believing a non-OEM item is genuine.  Supplier must obtain third party warranties consistent with Section 16 for all raw materials, components, and services required by Supplier to perform under this Agreement (**"Components"**) and Supplier is solely responsible for ensuring that all Components meet these requirements. Any Component that fails to meet these requirements will be deemed to be a non-conforming Good.  Supplier will promptly notify Resideo in writing upon Supplier discovering that it has, or suspects that it may have, delivered a non-conforming Good or Counterfeit  Item.

16.2.    As to services, in addition to any express or implied warranties, Supplier warrants that  (a) it possesses the requisite expertise, facilities and equipment necessary and appropriate to perform the services, (b) the services will be performed in a safe and workmanlike manner, and (c) the services will be performed in accordance with the highest standards in the industry.

16.3.    The Warranty Period is 36 months from the date of delivery to the end user or such longer period of time mandated by any longer government requirement covering the Goods. In addition  to the warranties described above, Supplier also warrants all Goods to the same extent and for  the same time period (if extending beyond 36 months) as the warranties provided by Resideo to  Resideo's customers relating to such Goods. These warranties are for the benefit of Resideo, Resideo's customers, and any other person claiming by or through Resideo.  These warranties will  survive any delivery, inspection, acceptance, or payment by Resideo. Claims for breach of warranty do not accrue until discovery of nonconformance, even if the Goods were previously inspected.  Any applicable statute of limitations runs from the date of discovery. If conforming Goods  are not furnished within the time specified by Resideo then Resideo may, at its election, have  the nonconforming Goods repaired, replaced, or corrected at Supplier's expense or credited to Resideo.  Supplier is responsible for the costs of repairing, replacing or correcting nonconforming Goods or crediting them to Resideo, and for all related costs, expenses and damages including,  but not limited to, the costs of removal, disassembly, failure analysis, fault isolation, reinstallation, re-inspection, and retrofit of the nonconforming Goods or of Resideo's affected  end-product; all freight charges, including but not limited to incremental freight expenses incurred  by Resideo for shipments of repaired, replaced, or corrected Goods to Resideo and for shipments  of repaired, replaced, or corrected Goods or finished product containing or incorporating repaired,  replaced, or corrected Goods from Resideo to any customer of Resideo; all customer charges; and  all corrective action costs.  Unless set off by Resideo, Supplier will reimburse Resideo for all such costs upon receipt of Resideo's invoice.  Any replacement Goods are warranted for the same period as the original Goods.  Additionally, if any services are found not to be performed as warranted within a period of 36 months after the conclusion of the performance of the services by Supplier, Resideo may direct Supplier to either refund to Resideo the amount  paid for the services, or perform the services again in a proper manner to the extent necessary   to provide Resideo with the result originally contemplated by Resideo. The warranties and rights provided are cumulative and in addition to any warranty provided by law or equity.

16.4.    If, following delivery, Goods exhibit a substantially similar repetitive root cause, failure mode or defect indicating a common or systemic failure (**"Epidemic Failure"**), then, without prejudice to Resideo's rights under Section 22: (a) the party discovering the failure will promptly notify the other and Supplier will provide to Resideo a preliminary plan for problem diagnosis within one business day of such notification, which plan Supplier will revise at Resideo's request; (b) Supplier and Resideo will diagnose the problem, plan an initial work-around and effect a permanent solution; (c) Supplier and Resideo will agree on a plan for customer notification, replacement scheduling and remediation, including identification of suspect population, field removal, return and reinstallation, work in process (**"WIP"**), inventory replacement, and repair, or retrofitting, regardless of location or status of WIP completion; and (d)  Supplier is responsible for all costs and damages associated with any Epidemic Failure. Resideo and Supplier will work together in good faith to establish and expeditiously implement an Epidemic Failure action plan. If Supplier or any of its Component suppliers initiate any Product or Component recalls, retrofits, or service bulletins that affect Product quality, Supplier will  immediately communicate this information to Resideo.

FILED: NEW YORK COUNTY CLERK 06/07/2023 12:29 PM

NYSCEF DOC. NO. 2

INDEX NO. 652743/2023

RECEIVED NYSCEF: 06/07/2023

resideo

Case 1:23-cv-08383-AS    Document 1-1    Filed 09/21/23    Page 24 of 26

## TERMS AND CONDITIONS

16.5.    No part of any software or other deliverables delivered by Supplier under this Purchase Order shall contain any software or component licensed or obtained under any Open Source licensing program. "Open Source" shall mean any software or other material that is distributed as "free software", "open source software" or under a similar licensing or distribution model (including but not limited to the GNU General Public License (GPL), GNU Lesser General Public License (LGPL), Mozilla Public License (MPL), and the Apache License) If Supplier uses Open Source in any software or deliverable, Supplier must first seek written approval from Resideo and if approved, Supplier must identify each Open Source item along with the applicable license terms.  For  any such approved Open Source, Supplier represents that (a) Supplier is in compliance with the  terms and conditions of all applicable licenses for Open Source and (b) Resideo's use of such  Open Source (i) will not adversely impact Resideo's proprietary software (ii) will not require  Resideo to make available the source code for any Resideo propriety software (iii) will not prohibit or limit Resideo from charging a fee in connection with sublicensing or distributing the software.

16.6.    Goods covered by this Purchase Order will comply with all applicable treaties, laws, regulations of the place of manufacture and Canadian, European Union and U.S. state and federal laws, regulations and standards (a) concerning the importation, sale, design, manufacture, packaging and labeling of its Goods, (b) regulating the sale of Goods, and (c) relating to the environment and/or the toxic or hazardous nature of Goods or their constituents, including (without limitation) the U.S. Toxic Substances Act, the U.S. Occupational Safety and Health Act, the U.S.    Hazardous Communication Standard, the Federal Hazardous Substances Act, the California Proposition 65, European ROHS standards, and other current and subsequently applicable requirements; and Supplier agrees that it shall furnish promptly on request and provide all information and certifications evidencing compliance with such laws, regulations, standards and requirements.

16.7.    Supplier represents and warrants that there is nothing that will directly, indirectly, actually or potentially restrict or prevent Supplier in any way from fulfilling all its obligations, duties and services under this Purchase Order, including without limitation any exclusivity or non-compete arrangement.

**17.    Changes**

Resideo may, by written or electronic notification, direct changes in the drawings, designs, specifications, method of shipment or packing, quantity, or time or place of delivery of the Goods; reschedule the services; or require additional or diminished services.  Only authorized Resideo procurement representatives may issue changes to the Purchase Order.  If any change causes  an increase or decrease in the cost of, or the time required for, performing this Purchase Order, an equitable adjustment will be made in the Purchase Order price, delivery dates or both, and this Purchase Order will be modified in writing or electronically accordingly.  Any claim by Supplier for adjustment under this provision may be deemed to be waived unless asserted in writing (including the amount of the claim and adequate supporting documentation) and delivered to  Resideo within 30 days from the date of the receipt by Supplier of the Resideo-directed change to the Purchase Order.  If Resideo compensates Supplier for property made obsolete or excess by a change, Resideo may prescribe the manner of disposition of the property.  Notwithstanding any disagreement between the parties regarding the impact of a change, Supplier will proceed diligently with its performance under this Purchase Order pending resolution of the disagreement.

**18.    Design and Process Changes**

18.1    Supplier will make no changes in the design, materials, manufacturing location, manufacturing equipment, production process, changes between a manual and automated process, or any other processes related to the Goods specified in the Purchase Order or documents referenced in it,  or if none, those in place when the Purchase Order is issued, without the advance written approval of Resideo's procurement representative. This requirement applies whether or not the change affects costs and regardless of the type of change, including product improvements.

18.2    To request approval to change a manufacturing location or subcontracting of process required to manufacture Goods, Supplier must provide Resideo with a plan at least 180 days prior to the  proposed start date of implementing such change in the manufacturing location or subcontracting of process required for the Goods. Any such plan is subject to Resideo's written approval,  and must result in a reduction in price charged by Supplier to Resideo for Goods, and must demonstrate that supplier has taken all necessary actions to avoid negative impacts to Resideo, including but not limited to maintaining additional inventory, overlapping production schedules,  etc. Such price reductions will be agreed to by Supplier and Resideo prior to implementation.

18.3    Supplier will be responsible for any and all of Resideo's costs incurred as a result of changes implemented by Supplier including but not limited to all customer charges; all labour costs, including engineering costs, travel and lodging; all costs to transition to an alternative  source of supply; redesign and/or recertification; and all corrective action.

18.4    Supplier will flow down this requirement in all its subcontracts and purchase orders for purchased goods or process-related services required for the Goods. Whether such Goods are supplied to Supplier as an end item, a component part of an end item or an individual piece part.

**19.    Stop Work**

At any time by written notice and at no cost, Resideo may require Supplier to stop all or any part of the work under this Purchase  Order for up to 120 days (**"Stop Work Order"**), and for any further period as mutually agreed.  Immediately upon receipt of a Stop Work Order, Supplier will comply with its terms.  At any time Resideo may, in whole or  in part, either cancel the Stop Work Order or terminate the work under the Termination section of this Purchase Order.  To the extent the Stop Work Order is canceled or expires, Supplier must immediately resume work.

**20.    Termination**

20.1.    The non-breaching party may terminate this Purchase Order if the other party commits a material breach and fails to remedy the breach within 30 days following receipt of written notice specifying the grounds for the breach, except in the case of breach related to safety, health, or security or any misuse or disclosure of Resideo's intellectual property rights or Confidential Information, Resideo will have the right to immediately terminate the Purchase Order.  A material breach includes, but is not limited to, late delivery or delivery of nonconforming Goods.  If Supplier breaches its obligations to Resideo and Resideo terminates this Purchase Order in whole or in part, Resideo may charge Supplier for any additional cost it incurs in performing Supplier's obligations or in having such obligations performed by a third party.  The solvent  party may terminate this Purchase Order upon written notice if the other party becomes insolvent or if any petition is filed or proceedings commenced by or against that party relating to bankruptcy, receivership, reorganization, or assignment for the benefit of creditors.  If a termination by Resideo for breach by Supplier is determined to have lacked cause, such termination will be treated as a termination without cause under Section 20.2.

20.2.    Notwithstanding any firm time period or quantity on the face of the Purchase Order, Resideo may terminate this Purchase Order in whole or in part at any time with or without cause for  undelivered Goods or unperformed services upon 10 days# prior written notice.

20.3.    If Resideo terminates this Purchase Order under either 20.1 or 20.2, Resideo#s sole liability to Supplier, and Supplier#s sole and exclusive remedy, is payment for Goods received  and  accepted by Resideo before the date of termination. If Resideo terminates this Purchase Order under Section 20.2 above, Resideo#s sole liability to Supplier, and Supplier#s sole and exclusive remedy, is payment for (A) Goods received and accepted by Resideo before the date of termination, and (B) with respect to custom Goods that are within lead time under the terminated Purchase Order, unique raw materials, work in progress and finished Goods, which shall be delivered to Resideo. The payment can be set off against any damages to Resideo. Upon termination, Resideo  may require Supplier to transfer title and deliver to Resideo any completed Goods and Resideo  will pay the Purchase Order price for those Goods subject to set off against any damages to Resideo.  Resideo may also require Supplier to transfer title and deliver to Resideo any or all property produced or procured by Supplier to perform this Purchase Order. Resideo will credit Supplier with the reasonable value of the property, but not more than Supplier#s actual cost or the Purchase Order value, whichever is less.

20.4.    To the extent that any portion of this Purchase Order is not terminated under 20.1 or 20.2 above, Supplier will continue performing that portion.

**21.    Cessation of Production**

If production of any Good is to be discontinued or suspended within 1 year after final delivery   under this Purchase Order, Supplier must give Resideo as much prior written notice as commercially reasonable of the discontinuance or suspension.  For at least 180 days from the notice of discontinuance or suspension, Supplier must accept orders from Resideo for the Good at the price  and on the terms of this Purchase Order.

**22.    Buy Resideo**

Supplier will use commercially reasonable efforts to utilize Resideo products and services in the fulfillment of this Purchase Order.  Upon Resideo#s request, the Parties will mutually agree  in the establishment of reasonable metrics for the utilization of Resideo products and services.

**23.    General Indemnification**

Supplier will, at its expense, defend, hold harmless and indemnify Resideo and its customers, subsidiaries, affiliates, and agents, and their respective officers, directors, shareholders, employees and customers, (collectively **"Indemnitees"**) from and against any and all loss, cost, damage, claim, demand, penalty or liability, including reasonable attorney and professional  fees and costs, and the cost of settlement, compromise, judgment, or verdict incurred by or demanded from the Indemnitee ("Loss") arising out of, resulting from or occurring in connection with Supplier#s Goods  by Supplier or its personnel (including any employment-related Loss arising out of, resulting from or occurring in connection with the performance), the acts, omissions, negligence or willful misconduct of Supplier or its personnel, Supplier#s breach of the terms of this Agreement, or any theft or other misappropriation of Resideo#s or its personnel's information, property or funds by Supplier or its personnel. Indemnitees may participate in the defense and negotiations to protect their interests. Supplier will not enter into any settlement  or compromise without Resideo's prior written consent, which will not be unreasonably withheld. If Resideo is obligated to pay any Loss or any damages pursuant to its contract with a customer, then Supplier will be liable for such Loss any damages to the extent Supplier causes or contributes to such Loss or any damages. Furthermore, in the event a recall or other corrective  action relating to Supplier's Goods is necessitated by a defect or a failure to conform to any  laws, regulations or specifications, Supplier shall bear all costs and expenses of such recall  or other corrective action, including without  limitation, costs of notifying customers, customer refunds, cost of returning goods, and other expenses incurred to meet obligations to third parties.  Nothing in this Section limits Resideo's right to claim all actual damages sustained by Resideo as a result of Supplier-caused delays.  Supplier's indemnification includes claims between parties, including legal fees.

**24.    Intellectual Property Indemnification**

For Goods provided under this Purchase Order, Supplier will, at its expense, defend and indemnify the Indemnitees from and against any and all loss, cost, damage, claim, or liability, including reasonable attorney and professional fees and costs, and the cost of settlement, compromise, judgment, or verdict incurred by or demanded from Indemnitee arising out of, or relating to  any alleged or actual: (a) patent, copyright, or trademark infringement; (b) unlawful disclosure, use, or misappropriation of a trade secret; or (c) violation of any other third-party intellectual property right, and from expenses incurred by Indemnitee in defense of such suit, claim,  or proceeding if Supplier does not undertake the defense thereof.  Supplier will not enter into any settlement without Resideo#s prior written consent, which will not be unreasonably withheld.  Indemnitee may participate in the defense or negotiations to protect its interests. If any  injunction or restraining order is issued, Supplier will, at Resideo#s option and Supplier#s expense, obtain for Indemnitee  either the right to continue using and selling the Goods or replace or modify the Goods to make them non-infringing; without any loss of functionality.  Supplier#s indemnification includes claims between parties, including legal fees.

**25.    Insurance**

Supplier will maintain and carry liability insurance in an amount no less than the greater of (a) the minimum amount required by applicable law, or (b) the following coverages: commercial general liability (including product liability and, for services to be performed, completed operations liability) in a sum no less than $5 million, automobile liability in a sum no less than $5 million, worker#s compensation in an amount no less than the applicable statutory minimum requirement, and employer#s liability in an amount of no less than $5 million, all with insurance  carriers with an AM Best rating of no less than A- or  equivalent.  In addition, Supplier is responsible for maintaining an adequate level of insurance to cover any potential losses due to damage to Resideo Property, as defined in Section 10.  All insurance required by this Section must cover Ademco Inc, its subsidiaries and affiliates, and their respective officers, directors, shareholders, employees and agents as additional insureds.  Before delivery of any Goods or commencement of any services under the Purchase Order, Supplier will provide to Resideo evidence  that Seller maintains the described insurance, and that the coverage will not be changed without 30 days advance written notification to Resideo from the carrier(s).  Except where prohibited by law, Supplier will require its insurers to waive all rights of recovery or subrogation against Ademco Inc, its subsidiaries and affiliated companies, and its and their respective officers, directors, shareholders, employees, and agents.  The amount of insurance carried in compliance with the above requirements is not to be construed as either a limitation on or satisfaction of the indemnification obligation in this Purchase Order.

**26.    Lien Waivers**

Supplier will furnish, upon Resideo#s request, waivers by Supplier and all other persons entitled to assert any lien rights in connection with the performance of this Purchase Order and will  indemnify Resideo against all costs, loss or liability incurred by Resideo as a result of any  failure by Supplier or any other person to comply with this provision.



# TERMS AND CONDITIONS

**27. Confidentiality; Intellectual Property; Data Protection**

27.1    All information, including without limitation specifications, samples, drawings, materials, know-how, designs, processes, and other technical, business, or financial information, that: (a) has been or will be supplied to Supplier by  or on behalf of Resideo; or (b) Supplier will design, develop, or create in connection with this Purchase Order; as to individual items or a combination of components or both, and whether or not completed, and all derivatives of (a) and (b) that Supplier has or will design, develop or create are deemed to be **"Confidential Information"** of Resideo.  All Confidential Information is work made for hire and made in the course of services rendered. All rights to it belong exclusively to Resideo, with Resideo having the sole right to obtain, hold, and renew, in its  own name or for its own benefit, patents, copyrights, registrations, or other appropriate protection.  To the extent that exclusive title or ownership rights in Confidential Information may  not originally vest in Resideo, Supplier irrevocably assigns transfers and conveys to Resideo all right, title, and interest therein.

27.2    Resideo#s Confidential Information will remain the property of Resideo. It may not be used by Supplier for any purpose other than for performing this Purchase Order, may not be disclosed to any third party, and will be returned to Resideo upon the earlier of Resideo#s written request or completion of the Purchase Order.  If, with Resideo#s prior written approval, Supplier  furnishes Confidential Information to a sub-tier supplier, Supplier will bind the sub-tier supplier to confidentiality requirements substantially identical to this provision and Supplier will remain responsible to Resideo  for any breach of this provision by its sub-tier suppliers.  No disclosure, description or other communication of any sort will be made by Supplier to any third person of the fact of Resideo#s purchase of Goods hereunder, the terms of this Purchase Order, the substance of any discussions or negotiations concerning this Purchase Order, or either  party's performance under this Purchase Order.

27.3    Data Privacy Obligations. Supplier will comply with Resideo#s Data Privacy Obligations for Suppliers posted at https://www.resideo.com/suppliers.

27.4    Data Rights. Without limiting any other rights Resideo might have under this Purchase Order, Supplier grants Resideo and its subsidiaries and affiliates access to and a perpetual, irrevocable, non-exclusive, worldwide, fully paid up right to retain, transfer, duplicate, analyze, modify, prepare derivative works and otherwise use for any purpose all data inputted, uploaded or transferred in relation to, or which is collected by, the Goods and any related products or services **("Goods Data")**. Goods Data is Resideo confidential information. All information, analysis, inventions and algorithms derived from Goods Data by Resideo and/or its subsidiaries and affiliates and any intellectual property rights obtained thereon, are owned exclusively and solely by Resideo and are Resideo#s confidential information. This Section survives termination of this Purchase Order.

27.5    With the exception of personal data, this Agreement imposes no obligation upon Supplier if Supplier can demonstrate that the Confidential Information: (a) was rightfully in Supplier#s  possession before receipt from Resideo and was not accompanied by a duty of confidentiality; (b) is or becomes a matter of public knowledge through no fault of Supplier; (c) is rightfully received by Supplier from a third party and is not accompanied by a duty of confidentiality; (d)  is disclosed by Resideo to a third party without a duty of confidentiality on the third party;  (e) is independently developed by Supplier without use of Resideo#s Confidential Information; or (f) is disclosed under operation of law, provided Supplier notifies Resideo and upon Resideo#s request and at Resideo#s cost cooperates in all reasonable respects to contest the disclosure  or obtain a protective order or other remedy.

**28. Audit**

28.1    Supplier will maintain detailed records reflecting Supplier#s compliance with this Purchase Order for at least 10 years from the date of last delivery.  Supplier will provide, and will  cause each of its sub-tier suppliers to provide, access for Resideo#s personnel, auditors, all  regulatory authorities and Resideo#s customers to have access at all reasonable times to facilities, books and other relevant records and any other information as requested by Resideo or Resideo#s auditors. Supplier will require each of its sub-tier suppliers to do likewise with respect to their records and materials. Supplier will maintain, and will provide Resideo upon request with, documentation that authenticates traceability of the manufacturers utilized by Supplier to obtain all Goods and Components under this Purchase Order.

28.2    If any invoice submitted by Supplier is found to be in error, an appropriate adjustment will be made to the invoice or the next succeeding invoice following the discovery of the error  and the resulting payment/credit will be issued promptly.  Supplier will, and will cause its sub-tier suppliers to, promptly correct any other Supplier deficiencies discovered as a result of  the audit.

**29. Limitation of Liability**

RESIDEO IS NOT LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES (INCLUDING ANY DAMAGES FROM BUSINESS INTERRUPTION, LOSS OF PROFITS OR REVENUE, COST  OF CAPITAL, OR LOSS OF USE OF ANY PROPERTY OR CAPITAL) EVEN IF ADVISED, OR OTHERWISE AWARE, OF  THE POSSIBILITY OF ANY SUCH DAMAGES.  THE EXCLUSION OF SUCH DAMAGES IS INDEPENDENT OF, AND WILL SURVIVE, ANY FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY UNDER THESE TERMS AND CONDITIONS.

**30. Assignment and Subcontracting**

This Purchase Order will be binding on the parties and their respective permitted successors and assigns. Supplier will not assign this Purchase Order or any rights or obligations under this  Purchase Order or subcontract the manufacture of the Goods or performance of any related services without the prior written approval of Resideo. Any transfer of this Purchase Order by Supplier  by merger, consolidation, or dissolution, or any change in ownership or power to vote a controlling share of the voting stock in Supplier, will constitute an assignment for the purpose  of this Agreement. Any assignment or subcontract without Resideo's written approval will be voidable at the option of Resideo. Resideo may assign this Purchase Order or any rights or obligations under this Purchase Order to any of its subsidiaries or affiliates or to any purchaser or  successor to all or substantially all of the assets of Resideo without Supplier's consent and upon written notice to Supplier.  To the extent Supplier assigns or subcontracts all or part of the manufacture of the Goods or performance of any related services as permitted under this Purchase Order, Supplier will be responsible for its assignees and subcontractors (including but not limited to its affiliates) and their personnel to the same extent as if the acts or omissions were performed by Supplier and its employees, agents and personnel.

**31. Relationship of Parties/Independent Contractor**

Nothing in this Purchase Order will be construed to place Supplier and Resideo in an agency, employment, franchise, joint venture,  or partnership relationship.  Neither party has the authority to obligate or bind the other in any manner, and nothing contained in this Purchase Order will give rise or is intended to give rise to rights of any kind to any third parties.  Neither  party will make any representation to the contrary.  The parties agree that Supplier will perform its obligations under this Purchase Order as an independent contractor.  Supplier will be solely responsible for all Employer Obligations with respect to Supplier personnel, even if a court or other body deems the personnel to be Resideo employees.  **"Employer Obligations"** means all obligations of any kind imposed customarily or by law or agreement on persons acting in the capacity of an employer, including, without limitation, responsibility for (a) hiring, assigning, compensating, and terminating personnel; (b) withholding and paying taxes; (c) verification of employment eligibility, including compliance with work authorization and immigration laws  and export licensing and control requirements; (d) compliance with all federal, state, and local laws (both common and statutory) and regulations related to employment and the rights of personnel. Supplier represents and warrants that it and all its subcontractors, if any, comply and  will continue to comply with all applicable employment laws and regulations related to personnel working on Resideo matters, that all personnel working on Resideo matters are authorized to work in the relevant jurisdiction, and that it does not employ child or forced labor.

**32. Compliance with Laws and Integrity**

32.1    Supplier will comply with all laws, regulations and ordinances and Resideo#s Code of Business Conduct **("Code")** in performing this Purchase Order.  A copy of the Code may be obtained at https://www.resideo.com/suppliers. Supplier agrees to abide by and maintain an integrity  and compliance program that encompasses at a minimum the standards of business conduct set forth in the Code and that effectively prevents and corrects ethical violations and maintains compliance with laws.  To the extent deemed applicable by Resideo, Supplier will also comply with Resideo#s (a) Information and System Security Supplier Terms and Conditions, and (b) Product Security Term and Conditions.

32.2    Supplier agrees to abide by the Code and maintain an integrity and compliance program that encompasses at a minimum the standards of business conduct set forth in the Code and that effectively prevents and corrects ethical violations and maintains compliance with laws.  Supplier  and its employees, agents, representatives and subcontractors have not made or received, and will not make or receive, directly or indirectly, any payments, loans, gifts, favors or other special consideration or form of compensation (a) to or from Resideo, to its employees, agents or  representatives, other than payments set forth in this Agreement or other written contractual agreement between Supplier and Resideo; or (b) to or from any third party for the purpose of influencing the performance by Supplier or Resideo of its respective duties hereunder.  Supplier warrants it has and will comply with the U.S. Foreign Corrupt Practices Act, UK Bribery Act, EU  and similar anti-bribery legislation or requirements. A breach of this provision will be deemed a material breach of this Purchase Order and grounds for termination of this Purchase Order. Supplier will indemnify and hold harmless Resideo from and against any and all loss, cost, expense (including reasonable attorney and professional fees), claims, damage, or liability arising  out of or resulting from or occurring in connection with Supplier#s breach of this Section.  Supplier must have a management system dedicated to compliance with applicable environmental, health and safety laws and regulations to ensure a safe working environment for its employees and  responsible care of materials to prevent a negative impact on the environment (for example: ISO14001:2004/OHAS 18001:2007).

32.3    Upon request, in form and substance satisfactory to enable Resideo to meet its compliance obligations with regard to Regulation (EC) No 1907/2006 **("REACH")**, Supplier will provide  Resideo with complete information regarding the chemical composition of any Goods supplied under this Purchase Order, including all safety information required under REACH and information regarding the registration or pre-registration status of any Deliverables pursuant to REACH promptly but no later than 30 days of receiving such request. Supplier agrees that it will include  any Resideo "Identified Use" in its REACH registrations or applications for Authorization, unless Supplier notifies Resideo that it rejects the Identified Use in order to protect human health or the environment and specifies the reason for the rejection. In this case, Resideo will have the right to terminate this Purchase Order without incurring any damages.

32.4    Absent Resideo#s prior written consent, no Goods will contain any of the substances identified in (a) Article 4(1) of the European Parliament Directive 2011/65/EU (the  **"RoHS Directive"**) as the RoHS Directive may be updated from time to time and as such Directive is implemented in any country, but only to the extent that the Directive applies to the commercialization, sale or use of such Goods, or (b) similar applicable laws or regulations (including, without  limitation, the United States Department of Transportation and California Proposition 65), restricting the use of hazardous materials in such other jurisdictions to the extent that any such  law or regulation applies to the commercialization, sale or use of such Goods. If such prior written consent is given, then Supplier shall inform Resideo in writing of same, and properly warn, label, package and ship such hazardous materials in accordance with all applicable laws and  regulations. Further, prior to shipment and upon request, Supplier shall identify and provide to Resideo compliant material safety data sheet information and RoHS Directive information for covered Goods.

32.5    Goods will comply with the restrictions set forth in the Montreal Protocol on ozone-depleting substances. Supplier will avoid use of materials of concern in the Goods provided to Resideo, including but not limited to Persistent, Bioaccumulative Toxic (PBT) substances, Persistent Organic Pollutants (POPs) (e.g. PCBs, mercury, certain insecticides-DDT, chlordane etc.), carcinogens (known or suspected), mutagens, radioactive materials, reproductive toxins (known or suspected), beryllium, hexavalent, chromium, asbestos or other respirable fibers, ozone depleting substances, brominated flame retardants or nanoparticles. Supplier will proactively inform Resideo of any above listed substances content in any Goods supplied under a Purchase Order.

32.6    Supplier will be responsible for all costs and liabilities for or relating to the recycling of Goods pursuant to the most current version of European Parliament Directive 2012/19/EU (the  **"WEEE Directive"**) as the WEEE Directive may be updated from time to time and as such Directive is implemented in any country.

32.7    All Goods conform to all applicable European Union harmonization legislations relating to products which are intended to be placed on the market in the European Economic Area including, without limitation, CE marking Directives and Directives, as such directives are updated from  time to time and enacted by the national laws (**"EU Harmonization Legislation"**). Supplier  will ensure that the Goods have been designed and manufactured in accordance with the requirements of the EU Harmonization Legislation. Supplier will, at its cost, take all measures necessary to ensure that the design and manufacturing processes assure compliance of the Goods.  As Resideo may be considered a manufacturer of the Goods for the purposes of certain Directives of the EU Harmonization Legislation, Supplier expressly agrees, at its cost, to assist Resideo with  fulfilling the obligations of a manufacturer under said Directives.



# TERMS AND CONDITIONS

32.8    **US Equal Employment Opportunity Regulations.** To the extent employment activities of Supplier occur in the United States and if otherwise applicable **this contractor and subcontractor shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability.**

32.9    If this Purchase Order is funded under a United States Government prime or lower tiered subcontract, the provisions of 29 CFR Part 471, Appendix A to Subpart A (relating to the obligation to post a notice of employee rights under the National Labor Relations Act and to notify covered subcontractors of their obligation to do so) are incorporated by reference in this Purchase Order.

32.10    In accordance with applicable "Conflict Minerals" laws, Resideo must determine whether its products contain tin, tantalum, tungsten or gold (**"3TG"**) originating in the Democratic Republic of the Congo and adjoining countries (**"Conflict Minerals"**). To the extent Supplier supplies Goods containing 3TG to Resideo under any Purchase Order, Supplier commits to have a supply chain process to ensure and document a reasonable inquiry into the country of origin of the 3TG minerals incorporated into such Goods. If requested, Supplier will promptly provide information or representations that Resideo reasonably believes are required to meet its conflict minerals compliance obligations.

33.    **Applicable Law and Forum**

33.1    **Executive Escalation.** Before a Party initiates any arbitration or litigation action, other than injunctive relief, that Party must notify the other Party in writing that the notifying Party requests an executive conference. The executive conference is to be held no later than 15 days after the date the notice is considered given under Section 36 (Notices). At least one executive of each Party will attend the conference. Each Party will present its view of the dispute, and the executives will enter into good faith negotiations to resolve the dispute. If the dispute is not resolved by the earlier of 30 days after the date the conference commenced or 45 days after the written notice is considered to have been given, then either Party may pursue resolution of the dispute consistent with the other terms of this Purchase Order.

33.2    **United States.** If Resideo is a legal entity formed in the United States, then the construction, interpretation, and performance hereof and all transactions hereunder will be governed by the laws of the State of New York, U.S.A. without regard to or application of its principles or laws regarding conflicts of laws, and excluding the United Nations Convention on the International Sale of Goods of 1980 (and any amendments or successors thereto), and the federal or state courts in New York, New York will have exclusive jurisdiction of any dispute.

33.3    **Asia Pacific.** If Resideo is a legal entity formed in an Asia Pacific country, then the construction, interpretation, and performance hereof and all transactions hereunder will be governed by the laws of the country under which the Resideo entity is formed, excluding the UN Convention on Contracts for the International Sale of Goods of 1980 (and any amendments or successors thereto), and the courts of that country will have exclusive jurisdiction of any dispute except for the following locations where any dispute arising out of or relating to this Purchase Order, including the breach, termination or validity thereof, will be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre (**"SIAC"**) in accordance with the Arbitration Rules of the Singapore International Arbitration Centre (**"SIAC Rules"**) for the time being in force, which rules are deemed to be incorporated by reference in this Section 31.2. The seat of the arbitration shall be Singapore. In relation to disputes concerning Purchase Order value below 1,000,000 USD, the Tribunal shall consist of sole arbitrator, while in relation to disputes concerning Purchase Order value above 1,000,000 USD, the Tribunal shall consist of three arbitrators, one nominee of each party and the two shall chose a third neutral arbitrator.

The language of the arbitration shall be English. Judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of arbitration and the language of arbitration will be selected by Resideo.

Either party may apply to the arbitrator seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved. Either party may also, without waiving any remedy under this Purchase Order, seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the arbitrator#s determination of the merits of the controversy.

33.4    **Europe, Middle East, and Africa.** If Resideo is a legal entity formed in a Middle Eastern or African country or formed in a country not identified above, then the construction, interpretation, performance and enforcement hereof and all transactions hereunder and the parties relationship in connection therewith or any related claims whether founded in contract, tort or otherwise, will be governed by the laws of laws of England and Wales , without regard to or application of its principles or laws regarding conflicts of laws, and excluding the UN Convention on Contracts for the International Sale of Goods of 1980 (and any amendments or successors thereto) if applicable in such country. Any dispute arising out of or relating to this Purchase Order, including the breach, termination or validity thereof, will be finally resolved by a panel of three arbitrators in accordance with the Rules for Arbitration of the International Chamber of Commerce. Judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of arbitration be London, England and the language of arbitration will be English.

33.5    **Additional rules applicable to Arbitration:** Any award will be payable in the currency of this Purchase Order. Either party may apply to the arbitrators seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved. Either party also may, without waiving any remedy under this Purchase Order, seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the arbitrators# determination of the merits of the controversy. The language of the arbitration will be English. Pending settlement or final resolution of any dispute, Supplier will proceed diligently with the performance of this Purchase Order in accordance with Resideo#s directions.

34.    **Remedies**

All Resideo remedies set forth in this Purchase Order are in addition to, and will in no way limit, any other rights and remedies that may be available to Resideo at law or in equity.

35.    **Notices**

Notices relating to this Purchase Order must be in writing and may be delivered personally, by overnight courier, or by certified first class mail, postage prepaid (each to the respective addresses appearing on the face of this Purchase Order); or sent by fax to the respective fax number provided by Resideo or Supplier. Notice will be deemed given on the date delivered if delivered personally; three business days after being placed in the mail as specified above; or upon confirmation receipt that it was transmitted satisfactorily if transmitted by fax.

36.    **Publicity**

Any news release, public announcement, advertisement, publicity or any other disclosure concerning this Purchase Order to any third party except as may be necessary to comply with other obligations stated in this Purchase Order requires prior written approval of Resideo. Supplier will not use Resideo#s name or marks or refer to or identify Resideo in any advertising or publicity releases or promotional or marketing materials without Resideo#s prior written approval. Furthermore, Supplier will not claim or suggest, implicitly or explicitly, that Resideo#s purchase of its Goods use of its services or deliverables constitutes Resideo#s endorsement of its Goods, services or deliverables.

37.    **Headings and Captions**

Headings and captions are for convenience of reference only and in no way are to be construed to define, limit or affect the meaning or interpretation of any provision of this Purchase Order.

38.    **Waiver**

The failure or delay of either party to enforce at any time any of the provisions of this Purchase Order will not be construed to be a continuing waiver of those provisions, nor will any such failure or delay prejudice the right of the party to take any action in the future to enforce any provision. No waiver from Resideo shall be effective unless set forth expressly in writing and manually signed by Resideo.

39.    **Severability**

If any provision of this Purchase Order (or portion thereof) is held to be illegal, invalid, or unenforceable by a court of competent jurisdiction, the parties agree that the court will construe the provision in a manner that renders the provision valid and enforceable to the fullest extent possible under the law of the applicable jurisdiction and that the remaining provisions will remain in full force and effect.

40.    **Supply Chain Security**

Supplier will implement the Business Partner Criteria of any Supply Chain Security Program that the country of import for the Goods may adopt such as the U.S. Customs-Trade Partnership Against Terrorism (C-TPAT) or the Canadian Partners in Protection (PIP) Program.

41.    **Non-Exclusivity/No Commitment**

Nothing in this Purchase Order will restrict Resideo#s right to contract with any third party to provide or perform, or to provide or perform on its own behalf, products, or services similar or identical to the Goods provided to Supplier by Resideo.

42.    **Translations**

Translations in various languages of these General Terms and Conditions of Purchase may be available for reference. In case of inconsistencies between translations and the original English version, the English version shall prevail.

43.    **Survival**

All provisions of this Purchase Order which by their nature should apply beyond its term will remain in force after any termination or expiration of this Purchase Order including, but not limited to, those addressing the following subjects: Import/Customs Compliance, Drawback, Offset, Resideo-Supplied Materials, Tooling, Equipment and Technical Data, Price, Price: Most Favored Customer and Meet or Release, Invoicing and Payment, Set Off, Warranty, Cessation of Production, General Indemnification, Intellectual Property Indemnification, Insurance, Lien Waivers; Confidentiality/Data Privacy and Intellectual Property, Audit, Relationship Between the Parties/Independent Contractor, Applicable Law and Forum, Publicity, Waiver, and Survival.

----------------------------------------------------------------------------
Resideo Standard PO Terms and Conditions for Goods and Services
Revision 01/11/2018