SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

ADEMCO INC. D/B/A RESIDEO

                        Plaintiff,

        -against-

TWS TECHNOLOGY (GUANGZHOU) LIMITED,
TWS TECHNOLOGY LTD., and
TWS TECHNOLOGY LLC,

                        Defendants.

-------------------------------------------------------------------X

Case No. 1:23-cv-08383-AS

**AMENDED COMPLAINT**

Plaintiff Ademco Inc. d/b/a Resideo ("Plaintiff" or "Resideo"), through their undersigned counsel, for their Amended Complaint against Defendants TWS Technology (Guangzhou) Limited, TWS Technology Ltd., and TWS Technology LLC ("Defendants" or "TWS"), alleges, upon information and belief, as follows:

## PARTIES

1.    Plaintiff Ademco Inc. is a corporation organized under Delaware law and doing business as Resideo, with its principal place of business in Scottsdale, Arizona, and facilities in, among other places, Melville, New York, and Manhattan, New York. In particular, Resideo's security business unit, which is the relevant unit for the product at issue in this lawsuit, has product management, engineering, and marketing resources for that product based out of Melville, New York. In addition, Resideo is licensed to do business in New York.

2.    On information and belief, Defendant TWS Technology (Guangzhou) Limited ("TWS Guangzhou") is a foreign corporation with its principal place of business in Guangzhou, China. On information and belief, TWS Guangzhou has, combined with its subsidiaries and affiliates, approximately 2,500 employees worldwide, and has been designing and selling lithium-

ion battery packs since its founding in 1998. TWS Guangzhou touts itself as one of the world's largest specialized battery-pack manufacturers.

3.     On information and belief, Defendant TWS Technology Ltd. ("TWS Hong Kong") is a foreign corporation with its principal place of business in Hong Kong. On information and belief, TWS Hong Kong is a wholly owned subsidiary or affiliate of TWS Guangzhou.

4.     On information and belief, TWS Technology LLC ("TWS USA") is a wholly owned subsidiary of TWS Hong Kong and is organized under Delaware law, with places of business in Sacramento and Los Angeles, California; Reno, Nevada; Atlanta, Georgia; Boston, Massachusetts; Jacksonville, Florida; and Bannockburn, Illinois. TWS Hong Kong is the sole member of TWS USA.

## JURISDICTION AND VENUE

**I.     The Court has personal jurisdiction over TWS Hong Kong because it agreed to jurisdiction in this Court.**

5.     The Court has personal jurisdiction over Defendant TWS Hong Kong because TWS Hong Kong submitted to this Court's jurisdiction through sales of products in response to duly issued purchase orders, containing specific terms and conditions governing the transactions (the "Purchase Orders") that Resideo issued to TWS for the battery-pack products at issue.

6.     Each Purchase Order states that the included terms and conditions would be "deemed accepted when the supplier to which this Purchase Order is issued ('Supplier') returns the acknowledgment copy of this Purchase Order or begins performing, whichever is earlier." Exhibit A at 3.

7.     Each Purchase Order also states that "Resideo rejects any additional or inconsistent terms and conditions offered by Supplier at any time. Any reference to Supplier[']s quotation, bid,

or proposal does not imply acceptance of any term, condition, or instruction contained in that document." *Id.*

8. The Purchase Orders state that their terms and conditions "supersede any prior or contemporaneous communications, representations, promises, or negotiations, whether oral or written, respecting the subject matter of this Purchase Order." *Id.*

9. The terms and conditions included with the Purchase Order state that the transactions and the agreement are "governed by the laws of the State of New York . . . and the federal or state courts in New York, New York will have exclusive jurisdiction of any dispute." *Id.* at 7.

10. TWS Hong Kong accepted the Purchase Orders, including the choice of law and exclusive jurisdiction provisions, when it facilitated the fulfillment of orders placed by Resideo.

11. In addition, the Court has personal jurisdiction over TWS Hong Kong because it purposefully availed itself of the opportunity to conduct activities in New York, including by contracting with Resideo in over 80 purchase orders for well over $1 million in goods.

12. TWS Hong Kong sold the battery packs at issue to Resideo through Resideo's employees in Melville, New York, for delivery to a Resideo facility in El Paso, Texas. To facilitate these sales, TWS Hong Kong sent invoices to Resideo in Melville, New York, and received payment through that same Melville office.

13. On information and belief, the battery packs that TWS Hong Kong sold to Resideo were ultimately incorporated into security-panel products that were sold and distributed across the United States, including in New York.

## II.    TWS USA and TWS Hong Kong are alter egos of TWS Guangzhou.

14.    On information and belief, TWS Hong Kong and TWS USA are part of a network of shell companies organized under the "TWS Group" umbrella, with both TWS Hong Kong and TWS USA under the common ownership of one or more TWS entities based in TWS's headquarters of Guangzhou, China.[1]

15.    The TWS Group's corporate structure is not possible to discern through publicly available records, and its public-facing statements are imprecise. As a result, Resideo cannot determine how the TWS entities are structured in relationship to one another. On information and belief, TWS Guangzhou is either the entity that owns and controls TWS Hong Kong and TWS USA, or it is another entity that acts interchangeably under the TWS Group umbrella.

16.    Regardless, TWS Guangzhou, TWS Hong Kong, and TWS USA do not operate with corporate separation, and thus are alter egos.

17.    The TWS Group operates its subsidiaries and affiliates as extensions of a single TWS business, with different subsidiaries operating in different geographies.

18.    The TWS Group lists its U.S.-based operations as one "tech center" and six sales offices, without any U.S. headquarters. Ex. B at 14. Guangzhou, China, is the only TWS headquarters identified anywhere in the world. *Id.*

19.    On information and belief, the TWS Group formed "TWS Korea, Inc." to conduct business in South Korea, TWS USA to conduct business in the United States, and "TWS Gmbh" in Frankfurt, Germany, to facilitate TWS Group's operations in Germany. The TWS Group refers

---

[1] *See* Ex. B at 14; *see also* Ex. C.

to "TWS Gmbh" as its "regional hub office," further indicating common ownership and a lack of separation across entities. Ex. B at 4; Ex. D at 1.

20.     On information and belief, the TWS Group shares employees, resources, finances, contracts, and manufacturing capabilities across entities.

21.     The TWS Group represents publicly that it has "2,000 global employees to service the worldwide markets" without any recognition of corporate separation among its foreign subsidiaries. Ex. B at 3.

22.     The TWS Group further represents that is has one manufacturing facility each in Guangzhou, Huaibei, and Xuyi, China; and also in Jakarta, Indonesia. Ex. B at 13. The vast majority of TWS employees are based in these four facilities, and these four facilities are used to manufacture goods that are sold by TWS Hong Kong and TWS USA. *See id.* (stating that the four facilities have over 2,000 employees combined).

23.     The TWS Group also represents that it has "over 80 patents and 100 senior experts" worldwide, without any recognition of operating through separate entities. Ex. B at 6.

24.     The TWS Group likewise represents that it has customers around the world, again without any acknowledgment that a subset of these customers are conducting business with, and contracting with, TWS Group subsidiaries like TWS Hong Kong. *See* Ex. B at 11.

25.     Accordingly, on information and belief, TWS Guangzhou and TWS Hong Kong formed TWS USA solely to serve as an extension of the TWS Group's business in the United States. TWS Guangzhou, TWS Hong Kong, and TWS USA do not maintain separate business operations.

26.     On information and belief, TWS Guangzhou, TWS Hong Kong, and TWS USA do not have separate corporate decision-making processes or authority, but instead

operate as extensions of TWS Group's central leadership. For example, the TWS Group states that it has a single "leadership team" for its global operations, and its Executive Vice President of Sales, Marketing, and PMO oversees "global sales regions," including North America. Ex. E at 1.

27. The lack of corporate separation across TWS entities leads them to act interchangeably, such that all three entities—TWS Guangzhou, TWS Hong Kong, and TWS USA—are alter egos for purposes of personal jurisdiction.

28. All three entities acted interchangeably when fulfilling the contracts at issue in this dispute.

29. TWS Guangzhou designed the battery pack at issue, yet the invoices for these products were invoiced by, and the purchase orders for these products were issued to, TWS Hong Kong. TWS Hong Kong also processed payment for the purchase orders at issue. Yet TWS Guangzhou manufactured the products, and the products were shipped from Guangzhou to Resideo in the United States. On information and belief, TWS Hong Kong played no role in designing or manufacturing the products at issue.

30. Similarly, during the product development phase, TWS USA facilitated the shipment of product samples to the United States, even though TWS USA did not design or make the products (or product samples) at issue. And TWS USA employees had multiple communications with Resideo employees, including in Melville, New York, about product samples and purchase orders during the development phase.

31. Furthermore, the Purchase Orders require TWS Hong Kong to be responsible for the costs of "repairing, replacing or correcting nonconforming Goods," including "failure analysis" and "fault isolation." Ex. A at 4. But TWS Hong Kong did not attempt to perform those obligations;

TWS Guangzhou and TWS USA did. TWS Guangzhou employees were primarily responsible for evaluating the product defects at issue, TWS USA employees facilitated communications about these issues and were also party to the related email communications.

32. As part of those and later efforts, TWS Guangzhou and TWS USA employees exchanged multiple emails and other communications with Resideo employees, including in New York. In those communications, the TWS entities did not distinguish among themselves in any way, and all TWS employees used email addresses ending in "tws.com."

33. Similarly, TWS Guangzhou hired a testing laboratory in Guangzhou China to better analyze the product failures at issue, in fulfillment of the Purchase Order's requirements. That third-party lab's report identified "TWS Technology (Guangzhou) Limited" as both the "Client" and the "Manufacturer," with no mention of TWS Hong Kong or TWS USA.

34. On information and belief, TWS USA also conducted business with Resideo in New York when, from at least starting in 2018, TWS USA employees regularly communicated with Resideo employees in New York about the products at issue and to handle production forecasts, deliveries, and payments for the products at issue. By doing so, TWS USA acted as TWS Hong Kong's alter ego, and also became subject to the Purchase Orders and the applicable terms and conditions.

35. As a result, on information and belief, TWS USA and TWS Hong Kong share information, resources, sales, revenue, and employees with TWS Guangzhou. On information and belief, both TWS Hong Kong and TWS USA are wholly reliant on TWS Guangzhou in terms of personnel, finances, and operations, and neither TWS Hong Kong nor TWS USA have authority to make important decisions without acquiescence from TWS Guangzhou or entities in the TWS Group. *See* Ex. B at 13.

36.     Because TWS Guangzhou, TWS Hong Kong, and TWS USA all acted interchangeably to fulfill the Purchase Orders, each entity agreed to be bound by the Purchase Orders' terms.

**III.    TWS Hong Kong and TWS USA conduct business in New York.**

37.     On information and belief, TWS USA conducts business in New York by promoting and selling battery products to New York-based customers or potential customers. TWS USA also promotes and sells TWS products to customers around the United States and generates significant revenue from those sales.

38.     Both TWS Hong Kong and TWS USA actually or reasonably expect the promotion and sale of TWS products to have consequences in interstate and international commerce, including through providing battery products that customers expect will perform reliably and safely for their intended purposes.

39.     Through TWS Hong Kong and TWS USA's actions, and as described in further detail below, both entities committed tortious acts by, among other things, negligently misrepresenting that the battery packs at issue would fulfill their intended purpose, and by negligently misrepresenting that the subsequent programming and design changes would correct the performance issue in the battery packs that Resideo observed. As also detailed below, both entities also breached the contract and applicable warranties for the products at issue.

**IV.    Venue is proper in this Court.**

40.     Venue is proper in this Court because Defendants developed products for Resideo and sold them through Resideo's office in New York, and because TWS Guangzhou, TWS Hong Kong, and TWS USA agreed to the exclusive jurisdiction of federal and state courts in New York, New York.

## FACTUAL BACKGROUND

### TWS Group's Battery Expertise and Sales Pitch

41.     Resideo was formed in 2018, as part of the process through which Honeywell International, Inc. ("Honeywell") spun off its certain businesses for home products and distribution. Resideo manufactures and sells home automation, security, and energy-management products.

42.     In 2017, before the spin-off, Honeywell issued a request for proposals for the design and manufacture of a battery pack, to be used as a backup energy source in security-alarm panels.

43.     A battery pack is a set of batteries or battery cells that are designed to meet specific power, capacity, or voltage needs. Batteries in a battery pack can be configured in different ways and can also have sensors or other failsafe devices that prevent the battery pack from overheating or creating other safety hazards. A battery pack's design will affect how well the battery pack performs, its average lifespan, and whether the pack will be suitable for a specific purpose.

44.     Honeywell sought to purchase battery packs because it had, in turn, contracted to manufacture and sell the assembled alarm panels to ADT, LLC ("ADT"), a home-security company. The alarm panels allowed users to arm, disarm, and otherwise control their ADT security systems. Honeywell intended to purchase custom-designed battery packs from a supplier that it could then integrate into this alarm-panel product.

45.     Through the bidding process, Honeywell sought a battery supplier that could both design and manufacture the backup battery pack for the alarm panel. Honeywell informed potential suppliers about the battery pack's intended use and relevant operation parameters.

46.     Although lithium-ion batteries are commonplace in many household products today, they did not reach ubiquity until very recently. In 2017, Honeywell had not developed an

alarm panel using a lithium-ion battery before, and Honeywell was clear with bidding suppliers that it needed, and intended to rely on, the supplier's expertise to design an adequate battery pack.

47.     Honeywell chose TWS Guangzhou because of its expertise with batteries and designing battery packs, including specifically its expertise with lithium-ion batteries. TWS Guangzhou touts itself as having this expertise and advertises its specific focus on lithium-based battery solutions.

48.     TWS Guangzhou confirmed to Honeywell that it could design and manufacture a battery pack that would meet Honeywell's operational requirements in its alarm panel and serve as a reliable backup battery in the final alarm-panel product.

49.     To that end, TWS Guangzhou designed a battery pack that included, among other things, specifications for cell parameters and assembly, charging method and voltage, and storage and operating temperatures.

50.     When TWS Guangzhou submitted its written product specifications to Resideo, it listed itself, "TWS Technology (Guangzhou) Limited," and not TWS Hong Kong or TWS USA, as the entity responsible for the battery pack's design. Ex. F at 1 (an excerpt of TWS battery specifications).

51.     On information and belief, engineers and project managers based in Guangzhou developed the battery pack at issue.

52.     Honeywell relied on TWS Guangzhou for its expertise and did not participate in the battery-pack's design, nor did Honeywell distinguish among the TWS entities. As previously mentioned, all TWS employees used email addresses ending in "tws.com." This meant Honeywell did not know which entity an employee worked for unless the employee happened to communicate that information.

53.     After Honeywell selected TWS Guangzhou as its battery-pack supplier in 2017, TWS Guangzhou began manufacturing battery packs according to its proposed design and Honeywell's operating specifications, initially using battery cells purchased from LG Corporation ("LG").

54.     During this development phase, when Honeywell requested product samples, TWS USA, and not TWS Guangzhou or TWS Hong Kong, engaged with Honeywell employees to coordinate shipping product samples to Honeywell. At least two TWS USA employees had multiple communications with Honeywell in connection with the Purchase Orders and related product samples.

55.     Nevertheless, Honeywell issued its Purchase Orders to TWS Hong Kong, and TWS Hong Kong facilitated collecting payment and shipping battery packs from Guangzhou to the United States.

56.     On information and belief, no Honeywell employee worked with a TWS Hong Kong employee, in any capacity, to facilitate the development or manufacture of the battery pack at issue.

**Battery-Pack Failures in 2018 and TWS's Failed Solution**

57.     After Honeywell received battery packs from TWS Guangzhou with the assistance of TWS USA, Honeywell began conducting its own testing. During this testing, in approximately July 2018, Honeywell observed a failure mode related to the battery packs' Current Interruption Device ("CID").

58.     A CID is a failsafe mechanism that effectively acts like an electrical fuse. If the batteries in a battery pack reach excessive pressure, voltage, or temperature levels, the CID will "open" in the same way that a fuse might "trip." Once a CID opens, the battery pack stops working,

with the intent that the battery pack will not overheat and cause a safety concern. An open CID is irreversible, and the battery pack is rendered permanently useless.

59.     In July 2018, Honeywell contacted TWS Guangzhou about the CID issue that it had observed in TWS's battery packs. TWS USA employees were included on these communications. On information and belief, TWS Hong Kong employees did not participate in these communications.

60.     As part of investigating the CID issue, Honeywell sent to TWS Guangzhou an assembled alarm panel, so that it could observe and test the battery pack in exactly the same configuration and conditions in which the battery pack would be used by consumers.

61.     TWS Guangzhou received the alarm panel, tested battery packs according to their intended use, consulted LG about the battery cells, and ultimately concluded that the CID issue was being caused because the batteries were overcharging, overheating, and "float charging." Float charging is a charging method that keeps a battery continuously charged. TWS Guangzhou focused on float charging as the source of the issue and performed float-charging testing.

62.     As a result of the testing, TWS Guangzhou made specific recommendations to Honeywell to fix the problem, including altering the alarm panel's programming so that float charging was reduced and the battery pack was charged only once per day.

63.     Relying on TWS Guangzhou's skill and expertise, Honeywell promptly edited the alarm panel's software and charging parameters according to TWS Guangzhou's instructions. Thereafter, Honeywell did not observe the CID opening issue during testing.

64.     In October 2018, Resideo spun off from Honeywell and continued what was previously Honeywell's home-security business. As part of the spin-off, Resideo assumed

Honeywell's legal rights and obligations related to the ADT home-security panel, the battery packs at issue, and all related supplier agreements and arrangements.

65.     Resideo's security business unit, which assumed the security panel product at issue, is based in Melville, New York. Resideo's security business unit oversaw product management, engineering, and marketing resources for the panel out of the Melville facilities.

### Resideo and TWS's Purchase Orders

66.     From November 2017 to October 2021, TWS Guangzhou and TWS Hong Kong fulfilled dozens of Purchase Orders for battery packs that were assembled into alarm panels. On information and belief, those battery packs were all assembled by TWS Guangzhou.

67.     Initially, in 2017, Honeywell's orders were smaller in volume as the product went through earlier stages of development and sale.

68.     Starting in 2018, after TWS Guangzhou and TWS USA seemingly corrected the CID issue, Resideo entered full production and produced thousands of alarm panels for ADT using TWS battery packs.

69.     Between 2018 and 2020, Resideo purchased about 750,000 battery packs from TWS Hong Kong for use in the ADT alarm panels, with purchases totaling in the millions of dollars.

70.     Resideo employees, in particular those based in New York, largely communicated about these orders with TWS USA employees who handled project orders, production forecasts, deliveries, and payments. On information and belief, TWS USA employees asked that Resideo direct all questions or issues to TWS USA employees, and not TWS Hong Kong or TWS Guangzhou employees, unless the issues related to product quality or engineering.

71.     Resideo purchased the battery packs from TWS Hong Kong using the Purchase Orders. The Purchase Orders included terms and conditions which govern the transactions entered into pursuant to the orders.

72.     By accepting and fulfilling the Purchase Orders, and by addressing orders, forecasts, deliveries, and payments pursuant to the Purchase Orders, TWS Guangzhou, TWS Hong Kong, and TWS USA agreed that:

> Resideo's Purchase Order Terms and Conditions attached to, transmitted with, or referenced in this Purchase Order (together with all related specifications, drawings, or other documents referred to on the face of the Purchase Order or related to this Purchase Order) are incorporated by reference and shall govern the transaction(s) entered into pursuant to this Purchase Order. . . .

Ex. A at 2.

73.     The Terms and Conditions stated warranties that all purchased goods "be free from defects in material, workmanship, and design, even if the design has been approved by Resideo," "conform to applicable drawings, designs, quality control plans, specifications and samples and other descriptions furnished or specified by Resideo," "be merchantable," and "be fit for the intended purposes and operate as intended." *Id.* at 4.

74.     Through the Terms and Conditions, TWS Guangzhou, TWS Hong Kong, and TWS USA agreed that the warranty period for the battery packs "is 36 months from the date of delivery to the end user. . . ." TWS Guangzhou, TWS Hong Kong, and TWS USA also warranted the battery packs "for the same time period (if extending beyond 36 months) as the warranties provided by Resideo to Resideo's customers relating to such Goods." *Id.*

75.     The warranties also "survive any delivery, inspection, acceptance, or payment by Resideo, and "[c]laims for breach of warranty do not accrue until discovery of nonconformance. . . . Any applicable statute of limitations runs from the date of discovery." *Id.*

76.     In the event that TWS Guangzhou, TWS Hong Kong, and TWS USA breached

their warranties to Resideo, the entities agreed that:

> If conforming Goods are not furnished within the time specified by Resideo then Resideo may, at its election, have the nonconforming Goods repaired, replaced, or corrected at Supplier's expense or credited to Resideo. Supplier is responsible for the costs of repairing, replacing or correcting nonconforming Goods or crediting them to Resideo, and for all related costs, expenses and damages including, but not limited to, the costs of removal, disassembly, failure analysis, fault isolation, reinstallation, re-inspection, and retrofit of the nonconforming Goods or of Resideo's affected end-product; all freight charges, including but not limited to incremental freight expenses incurred by Resideo for shipments of repaired, replaced, or corrected Goods to Resideo and for shipments of repaired, replaced, or corrected Goods or finished product containing or incorporating repaired, replaced, or corrected Goods from Resideo to any customer of Resideo; all customer charges; and all corrective action costs.

*Id.*

77.     Resideo's Purchase Orders also included an express warranty regarding "epidemic"

failures:

> If, following delivery, Goods exhibit a substantially similar repetitive root cause, failure mode or defect indicating a common or systemic failure ("Epidemic Failure"), then, without prejudice to Resideo's rights under Section 22: (a) the party discovering the failure will promptly notify the other and Supplier will provide to Resideo a preliminary plan for problem diagnosis within one business day of such notification, which plan Supplier will revise at Resideo's request; (b) Supplier and Resideo will diagnose the problem, plan an initial work-around and effect a permanent solution; (c) Supplier and Resideo will agree on a plan for customer notification, replacement scheduling and remediation, including identification of suspect population, field removal, return and reinstallation, work in progress, inventory replacement, and repair, or retrofitting, regardless of location or status of WIP completion; and (d) Supplier is responsible for all costs and damages associated with any Epidemic Failure. Resideo and Supplier will work together in good faith to establish and expeditiously implement an Epidemic Failure action plan. If Supplier or any of its Component suppliers initiate any Product or Component recalls, retrofits, or service bulletins that affect Product quality, Supplier will immediately communicate this information to Resideo.

*Id.*

**TWS Breaches the Terms and Conditions in 2021**

78.     In or around July 2021—well before any TWS battery pack had been in the field for 36 months—Resideo began receiving reports from ADT of widespread battery-pack failures in the field, meaning, in homes and businesses across America, including in New York.

79.     Immediately thereafter, Resideo notified TWS Guangzhou and TWS USA of these reports and the identified product failures. Resideo also shipped failed battery packs to TWS Guangzhou starting in mid-2021. TWS acknowledged receiving the notice, the battery packs, and the fact that the battery packs had failed. On information and belief, TWS Hong Kong received notice of these failures through the other TWS entities, or received notice as the alter ego for these entities.

80.     Resideo and TWS Guangzhou separately analyzed the failures occurring in the United States and concluded that the batteries had open CIDs. This was the same issue that Honeywell had asked TWS Guangzhou for instructions to fix in 2018, and for which Honeywell made the provided modifications.

81.     In 2021, TWS Guangzhou hired a third-party testing laboratory based in Guangzhou, China, where TWS Guangzhou's headquarters are also located. The third-party laboratory identified "TWS Technology (Guangzhou) Limited" as the entity that hired the lab, and the entity that manufactured the battery pack at issue. Ex. G at 1. For the batteries that had open CIDs, TWS Guangzhou and its third-party lab concluded that the root cause was that the battery packs were being used in high-heat environments and overcharging.

82.     But TWS Guangzhou, TWS Hong Kong, and TWS USA each already knew how the battery packs were intended to be used, including their expected operating and storage temperatures, as the operating parameters were made clear at the time of design and sale.

Additionally, TWS USA had facilitated the shipment of product samples and TWS Guangzhou had tested the batteries in the security panels. And in 2018, TWS Guangzhou had already specifically advised Honeywell, now Resideo, on how it believed Resideo should properly program the battery packs to prevent the open CID issue.

83. As time made clear, however, TWS Guangzhou and TWS USA failed to correct the issue and TWS Guangzhou's instructions did not solve the problem. As a result, TWS Guangzhou, TWS Hong Kong, and TWS USA failed to provide battery packs sufficient for the intended use and warranted life.

84. Because of the CID issue, ADT launched a massive, nationwide effort to identify and replace the TWS battery packs that failed in users' homes, each time with an open CID. ADT contacted hundreds of thousands of customers with alarm panels that depended on TWS batteries. For each affected customer, ADT then either scheduled an individual visit by a qualified serviceperson to replace the battery pack or arranged to have the defective battery shipped back to ADT and replaced with a new battery pack. This was a painstaking process that took more than a year to execute, at considerable expense.

85. TWS Guangzhou, TWS Hong Kong, and TWS USA breached their warranties to Resideo by failing to design, manufacture, and sell battery packs that adequately performed for their intended purpose, and in accordance with their warranty, for at least 36 months.

86. TWS Guangzhou, TWS Hong Kong, and TWS USA also negligently misrepresented to Resideo that the battery packs were suitable for their intended use.

87. As a result of TWS Guangzhou, TWS Hong Kong, and TWS USA's misconduct, ADT replaced hundreds of thousands of affected battery packs in alarm panels assembled by Resideo. As required by the contract between ADT and Resideo, ADT was then entitled to seek

those extensive replacement costs from Resideo, which Resideo paid according to its contractual obligations.

88. Thus, by virtue of TWS Guangzhou, TWS Hong Kong, and TWS USA's misconduct, Resideo suffered extensive damages.

## **COUNT ONE**

### **(Breach of Contract)**

89. Resideo incorporates by reference the allegations stated above.

90. The Purchase Orders issued by Resideo, and accepted and fulfilled by TWS Guangzhou, TWS Hong Kong, and TWS USA, formed valid and enforceable contracts between the parties.

91. Resideo performed all its obligations under the Purchase Orders and notified the TWS Group after discovering the potential breach.

92. TWS Guangzhou, TWS Hong Kong, and TWS USA breached the Purchase Orders by not fulfilling its obligations to provide merchantable batteries. Instead, TWS Guangzhou; TWS Hong Kong; and TWS USA, through their parent company; manufactured and sold defective battery packs that failed to perform as specified and for their intended purpose.

93. TWS Guangzhou, TWS Hong Kong, and TWS USA's breach also triggered the epidemic failure obligations in the Purchase Order. Accordingly, after Resideo notified the TWS entities of the breach, the TWS entities were required to provide a preliminary plan, after which the parties would ultimately agree on a plan for remediation. The TWS entities breached their epidemic failure obligations when TWS Guangzhou, TWS Hong Kong, and TWS USA failed to present a viable plan for correcting the issue and TWS Guangzhou's instructions did not solve the problem.

94.     Because of the breaches of the Purchase Order, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

## COUNT TWO

**(Breach of Express Warranty)**

95.     Resideo incorporates by reference the allegations stated above.

96.     Through the Purchase Orders, TWS Guangzhou, TWS Hong Kong, and TWS USA agreed to the express warranties stated in the Terms and Conditions.

97.     The battery packs that TWS Guangzhou, TWS Hong Kong, and TWS USA sold to Resideo did not conform to the express warranties stated in the Purchase Order's Terms and Conditions. Among other things, the battery packs were not free from defects, were not merchantable, and did not perform their intended purpose. The battery packs also did not perform satisfactorily for 36 months.

98.     Because of these breaches of the Purchase Order, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

## COUNT THREE

**(Breach of Implied Warranty)**

99.     Resideo incorporates by reference the allegations stated above.

100.    TWS Guangzhou, TWS Hong Kong, and TWS USA are merchants that specialize in designing or selling lithium-ion batteries and battery packs.

101.    TWS Guangzhou, TWS Hong Kong, and TWS USA made and sold approximately 750,000 battery packs to Resideo that were not merchantable. Among other things, the battery packs were not of fair average quality within the contract description and were not fit for the ordinary or intended particular purposes for which such goods are used.

102.     TWS Guangzhou, TWS Hong Kong, and TWS USA knew of the intended use for the battery packs through the RFP process, communications with Honeywell and Resideo, and because TWS Guangzhou had tested the battery packs in the intended alarm panel.

103.     Honeywell, and then Resideo, relied on TWS Guangzhou, TWS Hong Kong, and TWS USA's skill, experience, and judgment in designing, manufacturing, and selecting lithium-ion battery packs for use by Resideo in the alarm panels at issue.

104.     TWS Guangzhou, TWS Hong Kong, and TWS USA breached the warranty of fitness for a particular purpose by selling battery packs to Resideo that did not satisfy that intended purpose.

105.     Because of TWS Guangzhou, TWS Hong Kong, and TWS USA's breach of implied warranties, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

## COUNT FOUR

### (Negligent Misrepresentation)

106.     Resideo incorporates by reference the allegations stated above.

107.     TWS Guangzhou, TWS Hong Kong, TWS USA, and Resideo had a special relationship which imposed a duty on the TWS entities to give correct information, because the TWS entities were aware of Resideo's reliance on its expertise for lithium-ion batteries.

108.     TWS Guangzhou, TWS Hong Kong, and TWS USA made false representations that it should have known were incorrect, including that the TWS entities could design battery packs for the purpose required by Resideo and that the battery packs would perform as intended. In or about 2018, TWS Guangzhou and TWS USA made additional false representations that the

alterations to the battery pack's programming and design had corrected the open CID issue that Resideo had observed.

109. Resideo reasonably relied on TWS Guangzhou, TWS Hong Kong, and TWS USA's representations.

110. Because of TWS Guangzhou, TWS Hong Kong, and TWS USA's negligent misrepresentations, Resideo has suffered extensive damages exceeding $1 million, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Resideo respectfully requests the following relief:

A.   A judgment in favor of Resideo and against Defendants, and awarding Resideo compensatory damages in an amount to be determined at trial, as well as all of Resideo's costs, disbursements, interest, and attorney's fees allowable under any applicable law or contract; and

B.   Any other relief that this Court deems just and equitable under the circumstances.

Dated:     Garden City, New York
           November 27, 2023

Yours, etc.,

**PILLINGER MILLER TARALLO, LLP**

Neil L. Sambursky, Esq.
1140 Franklin Avenue, Suite 214
Garden City, New York 11530
nsambursky@pmtlawfirm.com
(516) 408-5388
PMT File No. N-RESID-00123

**GREENE ESPEL PLLP**

*s/Faris A. Rashid*
Faris A. Rashid, Reg. No. 0391508
Farah N. Famouri, Reg. No. 0403295
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
frashid@greeneespel.com
ffamouri@greeneespel.com
(612) 373-8352
(612) 373-8375
*Admitted Pro Hac Vice*

**Attorneys for Ademco Inc. d/b/a Resideo**