**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ADEMCO INC. (D/B/A RESIDEO),**

Plaintiff,

— against —

**TWS TECHNOLOGY (GUANGZHOU) LIMITED,**
**TWS TECHNOLOGY LTD.** and
**TWS TECHNOLOGY LLC,**

Defendants.

No. 23-cv-08383 (AS) (SLC)

---

# Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint

---

**REED SMITH LLP**

John C. Scalzo
Casey J. Olbrantz
Karunya Venugopal
599 Lexington Avenue
New York, NY 10022

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION............................................................................................................... 1

LEGAL STANDARD ......................................................................................................... 3

RESIDEO'S FACTUAL ALLEGATIONS ......................................................................... 3

ARGUMENT ........................................................................................................................ 8

I.      RESIDEO FAILS TO PLAUSIBLY ALLEGE ANY ALTER EGO LIABILITY ...... 8

        A.      Resideo Cannot Establish "Complete Domination" Of TWS USA and TWS
                HK Because It Concedes Both Entities Have "Independent Significance"............. 9

        B.      Resideo Alleges No Fraudulent Or Injurious Misuse Of The Corporate Form..... 10

        C.      Resideo's Alter Ego Claims Against TWS USA Also Fail Because
                The FAC Does Not Sufficiently Allege The Reverse Veil-Piercing Factors ........ 11

II.     RESIDEO FAILS TO ALLEGE PERSONAL JURISDICTION OVER
        TWS USA ................................................................................................................... 12

        A.      Reverse Veil-Piercing Jurisdiction Over TWS USA Is Unavailable .................... 12

        B.      TWS USA Is Not Bound By The POs' Forum Selection Clause .......................... 13

        C.      Resideo Fails To Plead Any Transaction Supporting Long-Arm Jurisdiction ..... 14

        D.      Resideo Fails To Establish Personal Jurisdiction Based On
                TWS USA's Alleged Tortious Activity Directed To New York.......................... 15

III.    RESIDEO FAILS TO STATE A CLAIM AGAINST TWS USA OR
        TWS GZ, AND ITS NEGLIGENT MISREPRESENTATION CLAIM
        IS FATALLY DEFECTIVE ......................................................................................... 16

        A.      The Breach Of Contract And Warranty Claims Against TWS USA
                And TWS GZ Fail For Lack Of Contractual Privity .............................................. 16

        B.      The Breach Of Warranty Claims Also Fail Against TWS USA And TWS
                GZ Because Resideo Did Not Purchase Goods From Those Defendants ............. 17

        C.      Resideo's Claim For Breach Of The Purchase Order's
                "Epidemic Failure" Provision Fails Against All Defendants ............................... 18

        D.      Resideo's Conclusory Negligent Misrepresentation Claim Fails Against
                All Defendants, None of Which Plausibly Owe Any Special Duty ..................... 19

        CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

*Allison v. Clos-Ette Too, LLC*,
    2014 WL 4996358 (S.D.N.Y. Sep. 12, 2014) ............................................................ 9-10, 11

*Anderson v. Greene*,
    774 F. App'x. 694 (2d Cir. May 28, 2019) ................................................................... 18, 20

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
    356 F. Supp. 3d 379 (S.D.N.Y. 2019) ................................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 7

*Barrett v. Tema Development (1988), Inc.*,
    251 Fed. App'x. 698 (2d Cir. Oct. 24, 2007) ..................................................................... 15

*Barricade Books, Inc. v. Langberg*,
    2000 WL 1863764 (S.D.N.Y. Dec. 18, 2000) .................................................................... 14

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. IBM*,
    2022 WL 889145 (S.D.N.Y. Mar. 25, 2022) ................................................................. 12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 7

*Bentivoglio v. Event Cardio Grp., Inc.*,
    2019 WL 6341130 (S.D.N.Y. Nov. 27, 2019) ..................................................... 8, 9, 10, 11

*Beskrone v. Berlin*,
    656 F. Supp. 3d 496 (S.D.N.Y. 2023) ................................................................................. 13

*Buzzfeed, Inc. v. Anderson*,
    2022 WL 15627216 (Del. Ch. Oct. 28, 2022) ................................................................ 8, 10

*Cleveland-Cliffs Burns Harbor Ltd. Liab. Co. v. Boomerang Tube, Ltd. Liab. Co.*,
    2023 WL 5688392 (Del. Ch. Sept. 5, 2023) .................................................................... 8, 10

*Dos Santos v. Assurant, Inc.*,
    625 F. Supp. 3d 121 (S.D.N.Y. 2022) ................................................................... 3, 4, 5, 6, 7

*E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*,
    2003 WL 22068573 (S.D.N.Y. Sep. 5, 2003) .................................................................... 14

*Edwardo v. Roman Cath. Bishop of Providence*,
  66 F.4th 69 (2d Cir. 2023) ................................................................ 15

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
  2019 WL 1244294 (S.D.N.Y. Mar. 17, 2019) ................................ 16-17

*Fleisig v. ED&F Man Capital Mkts., Inc.*,
  2020 WL 3127875 (S.D.N.Y. June 12, 2020) ...................................... 18

*Gusmao v. GMT Grp., Inc.*,
  2008 WL 2980039 (S.D.N.Y. Aug. 1, 2008) ........................................ 20

*Hamlen v. Gateway Energy Servs. Corp.*,
  2017 WL 6398729 (S.D.N.Y. Dec. 8, 2017) ........................................ 11

*Horsehead Indus. v. Metallgesellschaft AG*,
  239 A.D.2d 171 (1st Dept. 1997) .............................................. 14, 17f

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
  2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ............................. 12-13, 13

*In re Interest Rate Swaps Antitrust Litig.*,
  261 F. Supp. 3d 430 (S.D.N.Y. 2017) .................................................. 3

*In re Parmalat Sec. Litig.*,
  375 F. Supp. 2d 278 (S.D.N.Y. 2005) ................................................ 10

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*,
  475 F. Supp. 2d 456 (S.D.N.Y. 2007) ................................................ 12

*Jia Wang Lin v. Canada Goose US, Inc.*,
  640 F. Supp. 3d 349 (S.D.N.Y. 2022) ................................................ 19

*JP Morgan Chase Bank v. Winnick*,
  350 F. Supp. 2d 393 (S.D.N.Y. 2004) ................................................ 19

*Kelly v. Beliv LLC*,
  640 F. Supp. 3d 286 (S.D.N.Y. 2022) ........................................... 19-20

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ......................................................... 3, 10

*LaCourte v. JP Morgan Chase & Co.*,
  2013 WL 4830935 (S.D.N.Y. Sep. 4, 2013) ........................... 8, 10, 11, 12

*Licci v. Lebanese Canadian Bank*,
   732 F.3d 161 (2d Cir. 2013) ................................................... 7

*Lynch v. City of N.Y.*,
   952 F.3d 67 (2d Cir. 2020) ..................................................... 3

*MacNaughton v. Young Living Essential Oils, LC*,
   67 F.4th 89 (2d Cir. 2023) .................................................... 17

*Manichaean Capital, LLC v. Exela Techs., Inc.*,
   251 A.3d 694 (Del. Ch. 2021) ...................................... 8, 11, 12

*Miramontes v. Ralph Lauren Corp.*,
   2023 WL 3293424 (S.D.N.Y. May 5, 2023) ........................ 20

*Navaera Sciences, LLC v. Acuity Forensic Inc.*,
   667 F. Supp. 2d 369 (S.D.N.Y. 2009) ................................. 15

*Painewebber Inc. v. WHV, Inc.*,
   1995 WL 296398 (S.D.N.Y. May 12, 1995) .................... 14, 15

*Penguin Group Inc. v. Am. Buddha*,
   16 N.Y.3d 295 (2011) ........................................................ 15

*Penguin Group Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010) ................................................... 8

*Rosen v. Hyundai Group*
   (Korea), 829 F. Supp. 41 (E.D.N.Y. 1993) ........................ 17

*Socap United States Inc. v. So.Cap. S.R.L.*,
   2019 WL 13247454 (S.D.N.Y. Mar. 29, 2019) ............... 12, 13

*Spencer Trask Ventures, Inc. v. Archos S.A.*,
   2002 WL 417192 (S.D.N.Y. Mar. 15, 2002) ........................ 15

*Troncoso v. TGI Friday's Inc.*,
   2020 WL 3051020 (S.D.N.Y. June 8, 2020) ........................ 10

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
   933 F.2d 131 (2d Cir. 1991) ................................................. 9

TWS Technology (Guangzhou) Limited ("**TWS GZ**"), TWS Technology Ltd. ("**TWS HK**"), and TWS Technology LLC ("**TWS USA**") (collectively, "**Defendant(s)**") submit this memorandum of law in support of their Rule 12(b)(2) & (6) Motion to Dismiss the Amended Complaint (ECF 24) ("**FAC**") filed by Plaintiff Ademco Inc. (D/B/A Resideo) ("**Resideo**").

## INTRODUCTION

TWS GZ and TWS USA have no place in this litigation. Resideo submitted purchase orders to TWS HK to supply battery packs for use in alarm systems that Resideo manufactured and sold to a retailer. Resideo alleges that some alarms failed when the retailer's customers used the alarms in "high-heat environments" unsuitable for the software Resideo installed. The FAC is its second attempt to pass blame to TWS entities for Resideo's own failures. In this round, Resideo adds a new entity, TWS GZ, and implausibly alleges that the entire "TWS Group" is liable for how Resideo used the battery packs it purchased from TWS HK. This is supposedly because, "[o]n information and belief," TWS HK, TWS USA, and every other TWS affiliate around the world is an "alter ego" of the ultimate parent, TWS GZ. The Court should not confuse the FAC's bulk for substance. Just like the original Complaint, its FAC is fatally defective in multiple respects.

*First*, Resideo fails to plausibly allege that Defendants are subject to veil-piercing liability. In its original Complaint, Resideo alleged that TWS HK masterminded and dominated TWS USA. Reversing course, Resideo now claims that TWS HK and TWS USA are actually "shells" of TWS GZ, which allegedly controls a global network of "alter ego" subsidiaries. But the well-pled allegations supporting Resideo's alter ego theories are not even controversial, much less actionable. The FAC affirmatively alleges that Defendants have distinct business operations in different jurisdictions around the world that support the same overall corporate objectives. Critically, Resideo does not allege that any TWS entity is undercapitalized, insolvent or

disregarded corporate formalities. Nor does Resideo allege that any TWS entity was misused to commit a fraud against Resideo. Fatally, Resideo instead alleges that the supposed "shell" Defendants have their own legitimate operations, employees, revenues, and managerial authorities. The Court should, therefore, dismiss Resideo's veil-piercing claims with prejudice.

*Second*, Resideo fails to establish a prima facie case of personal jurisdiction over TWS USA on any of its "alter ego," contractual, or long-arm theories. Resideo merely alleges that TWS USA's employees helped "facilitate" back-office functions and communications between Resideo and TWS USA's Asian affiliates. None of Resideo's theories pass muster: (i) Resideo repeatedly admits TWS USA is not a "shell" company against which "alter ego" personal jurisdiction could be asserted; (ii) the FAC includes no well-pled allegations from which the Court could plausibly infer TWS USA manifested an intent to be bound by the venue provisions in Resideo's purchase orders; (iii) Resideo does not allege it entered any transaction, anywhere, with TWS USA, let alone in New York; and (iv) Resideo does not plausibly allege that TWS USA committed any tort, anywhere. TWS USA should, therefore, be dismissed for lack of personal jurisdiction.

*Third*, virtually all of Resideo's causes of action fail to state a claim. Resideo's breach of contract and warranty claims against TWS USA and TWS GZ—including its claim for breach of the purchase orders' "Epidemic Failure" provisions—are legally defective because there is no contractual privity between the parties. Its "Epidemic Failure" claim against TWS HK also fails because Resideo does not plead any facts that plausibly describe a breach of the purchase orders' requirements for an "Epidemic Failure." And the negligent misrepresentation claim fails against every Defendant because it is not pled with particularity, no special duty is alleged, and it is barred by the economic loss doctrine. Thus, all of Resideo's claims, except for its generic breach of contract and warranty claims against TWS HK, should be dismissed with prejudice.

## RESIDEO'S FACTUAL ALLEGATIONS

This Section summarizes the FAC's well-pled factual allegations. Although Resideo's well-pled allegations are assumed to be true, the Court should not credit conclusory allegations or legal conclusions. *Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020). It also should not credit general allegations that are belied by "more specific allegations," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), nor "sweeping" "collective allegations" about separate defendants. *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 478 (S.D.N.Y. 2017). The Court also has "no obligation" to "accept as true" allegations in the FAC that "directly contradict" previous allegations in Resideo's original Complaint (ECF 1-1 ("**Complaint**"). *Dos Santos v. Assurant, Inc.*, 625 F. Supp. 3d 121, 131-32 (S.D.N.Y. 2022) (collecting cases); *see also* Scalzo Decl. Ex. 2 (showing deletions and additions) (the "**Redline**").

### A. The Parties

Resideo sells home automation, security, and energy-management products. (FAC ¶ 41.) It was created in 2018 through a spinoff from Honeywell International Inc. ("**Honeywell**"). (*Id.*)

TWS GZ is a corporation based in Guangzhou, China, and is "one of the world's largest specialized battery-pack manufacturers." (FAC ¶ 2.) TWS HK is a subsidiary of TWS GZ that has its "principal place of business" in Hong Kong. (*Id.* ¶ 3.) TWS HK allegedly sells goods that are manufactured by TWS GZ and other affiliates in China and Indonesia. (*Id.* ¶ 22.) TWS USA is a subsidiary of TWS HK, and is a Delaware corporation with six offices in California, Florida, Georgia, Illinois, Massachusetts, and Nevada. (*Id.* ¶¶ 4, 14, 18.) TWS USA's "principal place of business is in Bannockburn, Illinois." (Redline ¶ 4.) TWS USA also allegedly sells goods that are manufactured by affiliates (FAC ¶ 22), and its employees also allegedly assist Asian affiliates in communicating with their American customers. (*Id.* ¶¶ 30-34, 54, 59, 70, 82.)

## B.    Resideo Enlists TWS GZ To Manufacture Battery Packs

In 2017, Honeywell issued a request for proposal for the design and manufacture of a backup battery pack that it intended to use in a security alarm product it sold to non-party ADT, LLC ("**ADT**").  (*Id*. ¶¶ 42-44.)  It allegedly "sought a battery supplier that could both design and manufacture the backup battery pack," and purportedly "informed potential suppliers about the battery pack's intended use and relevant operation parameters."  (*Id.* ¶¶ 42-45.)  Honeywell was allegedly "clear" to suppliers that it "intended to rely on" the "supplier's expertise" (*id.* ¶ 46), although the FAC repeatedly admits that Honeywell and Resideo had their own significant technical expertise.  (*Id.* ¶¶ 57, 59, 63, 82.)  At some point in 2017, Honeywell "selected TWS [GZ] as its battery-pack supplier," purportedly because of its "expertise" "with batteries" and with "designing battery packs." (*Id.* ¶¶ 47, 53.)  TWS GZ then allegedly "designed a battery pack" and began manufacturing packs "using battery cells purchased from LG Corporation."  (*Id.* ¶¶ 49, 53.)

## C.    Resideo Issues Purchase Orders To TWS HK

Although TWS GZ allegedly manufactured the battery packs at issue, Resideo alleges that it agreed to purchase all relevant goods from TWS HK.  (*Id.* ¶¶ 29, 55.)  From 2017 through 2021, Honeywell and Resideo "duly issued" "over 80" purchase orders to TWS HK for "about 750,000 battery packs" (*id.* ¶¶ 5, 11, 69), which TWS HK "accepted" and "fulfill[ed]."  (*Id.* ¶ 10.)  TWS HK "sold the battery packs at issue," "delivered" them to Resideo's facility in "Texas," "sent invoices" to Resideo, and "received payment" of "well over $1 million."  (*Id.* ¶¶ 11, 12.)

Resideo alleges that the purchase orders it sent to TWS HK "govern" the sale of all goods at issue in this action.  (*Id.* ¶ 71.)  Resideo attached one purchase order to the FAC (ECF 24-1), and implies its terms and conditions were identical throughout its "over 80" purchases from TWS HK (the "**POs**").  (FAC ¶¶ 11, 71.)  The POs exclusively identify TWS HK as the counterparty, and make no reference to TWS GZ or TWS USA.  (POs at 1.)  Resideo alleges that TWS GZ and

TWS USA each "agreed to be bound by the [POs]" because they acted "interchangeably" with TWS HK "to fulfill the[m]." (FAC ¶ 36.) But the FAC alleges to the contrary that: (i) TWS USA's employees merely helped "facilitate "communications" and coordinate "forecasts, deliveries, and payments," for Resideo (*id.* ¶¶ 30-31, 34, 70), and (ii) TWS GZ designed, manufactured, and provided technical support concerning the goods. (*Id.* ¶¶ 29, 31, 33.)

In relevant part, the POs instruct TWS HK to ship all goods to El Paso, Texas, and identify an employee with an El Paso phone number (Yazmin Portillo) as the "approver" and "contact" for TWS HK. (POs at 1.) The POs also contain boilerplate product quality warranties, and provide a procedure to deal with "Epidemic Failures." (POs at 4.) The POs further state that the purchases from TWS HK are "governed by the laws of the State of New York" and that "the federal or state courts in New York, New York" have exclusive jurisdiction. (POs at 7.)

### D. TWS HK Allegedly Breaches The POs And Resideo Files Suit

In July 2018, Honeywell allegedly undertook its own testing of battery packs it had bought from TWS HK, which caused it to discover a technical "issue" with the packs' current interruption devices ("**CID Issue**"). (*Id.* ¶¶ 57-59.) Resideo alleges Honeywell chose to inform TWS GZ and TWS USA of the CID Issue (*id.* ¶ 59), and that TWS GZ responded by providing "specific recommendations" to "fix" it. (*Id.* ¶ 62.) Honeywell adopted the "recommendations" and chose to "promptly edit[]" its alarm systems' software, and Honeywell's subsequent testing indicated that the purported CID Issue had been solved. (*Id.* ¶ 63.) Shortly thereafter, in October 2018, Resideo was created and allegedly acquired Honeywell's relevant legal rights. (*Id.* ¶ 64.)

All was apparently well until July 2021, when Resideo "began receiving reports from ADT of widespread battery-pack failures" occurring only "in the United States." (*Id.* ¶¶ 78-80.) Upon contacting Defendants, Resideo and TWS GZ allegedly began "separately analyz[ing] the

failures," and concluded it was the same CID Issue, the "root cause" of which was that ADT's customers were using their alarm systems in "high-heat environments." (*Id.* ¶¶ 80-81.)

Resideo initiated this action in June 2023. (ECF 1-1.) After removing the case to this Court, Defendants filed a motion to dismiss. (ECF 10.) Resideo responded by filing the FAC. The crux of the FAC's claims is that the battery packs it purchased from TWS HK were supposed to be manufactured for "high-heat" environments, and that TWS GZ's "recommendations" about how to solve the CID Issue in 2018 were wrong. (FAC ¶¶ 81-83.) Resideo alleges these purported harms caused it to have liabilities to ADT in excess of $1 million. (*Id.* ¶¶ 87, 94, 98, 105, 110.) The FAC includes claims for breach of contract (Count One, *id.* ¶¶ 89-94), breach of express warranty (Count Two, *id.* ¶¶ 95-98), breach of implied warranty (Count Three, *id.* ¶¶ 99-105), and negligent misrepresentation (Count Four, *id.* ¶¶ 106-110). Within the breach of contract claim, Resideo alleges the Defendants breached the POs' "Epidemic Failure" provision. (*Id.* ¶ 93.)

### E. Resideo's Self-Contradictory And Implausible Alter-Ego Allegations

Seeking leverage over TWS HK (its contractual counterparty), Resideo devotes much of its FAC to a tortured theory that every entity under the control of TWS GZ—including TWS USA, TWS HK, and affiliates in Korea, Indonesia, Germany, and anywhere else—are necessarily sham "shell" companies and "alter egos" of each other and TWS GZ. (FAC ¶¶ 14-36.) The crux of Resideo's alter ego theory is that, based on publicly available marketing materials, websites, and LinkedIn pages, the "TWS Group" is truly one economic unit because the subsidiaries play different operational roles in their geographies to support the same overall business. (*Id.* ¶¶ 17-25.) Notwithstanding that these materials were publicly available long before Resideo filed its first Complaint, Resideo invented this theory in the FAC. But irrespective of the suspect timing, this new theory is flatly contradicted by the original Complaint, which did not name TWS GZ as

a defendant, and instead claimed that TWS HK (which Resideo now contradictorily alleges is an empty "shell") was purportedly the mastermind pulling TWS USA's strings. (*E.g.*, Redline ¶ 14.)

In any event, the FAC is devoid of any meaningful non-conclusory alter ego allegations. Resideo nowhere alleges that any entity is, for example, undercapitalized, insolvent, or disregards corporate formalities. Nor does the FAC allege that any entity abused the corporate form to commit some injurious fraud against Resideo. Instead, Resideo repeatedly affirmatively alleges that TWS USA and TWS HK have their own distinct and facially legitimate operations, revenues, offices, employees, and managerial authority, negating any alter ego theory. (FAC ¶ 3 (TWS HK has a distinct "principal place of business"); *id.* ¶¶ 17-19 (TWS USA "conduct[s] business" and through a "tech center" and six "sales office[s]"); *id.* ¶ 22 (TWS USA and TWS HK both sell goods); *id.* ¶¶ 30-32 & 54 (TWS USA "facilitated" the "shipment of product samples" and "communications," and "conducted business with Resideo"); *id.* ¶ 35 (TWS USA and TWS HK make their own "important" decisions unless stopped by TWS GZ); *id.* ¶ 37 (TWS USA "generates significant revenue"); *id.* ¶¶ 5, 10, 11, 12, 55, 69, 71 (TWS HK sold products to Resideo).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the FAC "must contain sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Resideo must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). To survive a Rule 12(b)(2) motion to dismiss, Resideo bears the burden of "mak[ing] a prima facie showing that jurisdiction exists." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 167 (2d Cir. 2013). This entails "making legally sufficient allegations of jurisdiction,

including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).

## ARGUMENT

## I.    RESIDEO FAILS TO PLAUSIBLY ALLEGE ANY ALTER EGO LIABILITY

Resideo has failed to meet the high bar for alleging alter ego liability, irrespective of the applicable law. *See LaCourte v. JP Morgan Chase & Co.*, 2013 WL 4830935, at *6 n.2 (S.D.N.Y. Sep. 4, 2013) ("New York and Delaware veil-piercing law do not materially differ."). The corporate form is "rarely" disregarded. *Bentivoglio v. Event Cardio Grp., Inc.*, 2019 WL 6341130, at *5 (S.D.N.Y. Nov. 27, 2019) (applying Delaware law). To overcome the "presumpt[ion]" that Defendants are separate entities and not a "single economic unit," *Buzzfeed, Inc. v. Anderson*, 2022 WL 15627216, at *12 (Del. Ch. Oct. 28, 2022), Resideo must set out an "exceptional" case. *Cleveland-Cliffs Burns Harbor Ltd. Liab. Co. v. Boomerang Tube, Ltd. Liab. Co.*, 2023 WL 5688392, at *4 (Del. Ch. Sept. 5, 2023).

Specifically, Resideo must show (1) "complete domination of the [subsidiary] corporation in respect to the transaction attacked," and (2) "that such domination was used to commit a fraud or wrong" that injured Resideo. *LaCourte*, 2013 WL 4830935, at *6; *Cleveland-Cliffs*, 2023 WL 5688392, at *5. And to pierce the corporate veil in "reverse," as Resideo purports to do here, it must also allege (3) that the "most" "exceptional circumstances" exist and set out "egregious facts" before the Court should "even consider" whether the FAC sufficiently alleges several additional equitable factors. *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714-15 (Del. Ch. 2021). At each step, Resideo fails to establish that Defendants are each alter egos, and its veil-piercing liability theories, therefore, should be dismissed.

**A.** **Resideo Cannot Establish "Complete Domination" Of TWS USA and TWS HK Because It Concedes Both Entities Have "Independent Significance"**

To satisfy the "complete domination" element, Resideo must show that TWS USA and TWS HK have no "independent significance" from TWS GZ. *Bentivoglio*, 2019 WL 6341130, at *5-6 (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. L.P. Wood*, 752 A.2d 1175 (Del. Ch. 1999)). To determine "independent significance," courts assess the so-called *Passalacqua* factors of capitalization, solvency, business discretion, profit generation, siphoning of assets, corporate formalities, overlap or absence of personnel, and commingling of funds and resources, among other things. *Id.*; *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) (noting no single factor is dispositive).

Resideo leaves no doubt that TWS USA and TWS HK have "independent significance"— the FAC readily concedes as much. Resideo repeatedly alleges that TWS USA has its own distinct operations, revenues, offices, employees, and managerial authority.[1] It makes similar allegations about TWS HK.[2] These extensive allegations about distinct operations are fatal to Resideo's alter ego claims. *See Allison v. Clos-Ette Too, LLC*, 2014 WL 4996358, at *7 (S.D.N.Y. Sep. 12, 2014)

---

[1]   FAC ¶ 4 (TWS USA has seven independent offices); *id.* ¶¶ 17-19 (TWS USA "conduct[s[ business" and "operate[s]" through a "tech center" and "sales office[s]"); *id.* ¶ 22 (TWS USA sells goods manufactured by affiliates); *id.* ¶¶ 30 & 54 (TWS USA "facilitated the shipment of product samples"); *id.* ¶¶ 31-32 (TWS USA "facilitated communications" with TWS GZ); *id.* ¶ 32 (TWS USA "conducted business with Resideo"); *id.* ¶ 35 (TWS USA makes its own "important" decisions unless stopped by TWS GZ); *id.* ¶ 37 (TWS USA "generates significant revenue"); *id.* ¶¶ 59, 68, 70, 72, 79, 82, 83 (alleging conduct specifically by TWS USA employees, as opposed to another Defendant's).

[2]   FAC ¶ 3 (TWS HK has its own "principal place of business"); *id.* ¶¶ 5, 10, 71 (TWS HK sold "products in response to duly issued purchase orders" that it "accepted"); *id.* ¶¶ 11, 69 (TWS HK "purposefully availed itself" of "conduct[ing] activities" in New York by "contracting with Resideo in over 80 purchase orders for well over $1 million in Goods," including "750,000 battery packs"); *id.* ¶¶ 12, 55 (TWS HK sent Resideo invoices and accepted payment); *id.* ¶ 22 (TWS HK sells goods manufactured by TWS GZ); *id.* ¶ 35 (TWS HK makes its own "important" decision unless stopped by TWS GZ).

(dismissal because plaintiff conceded subsidiary independently sold products, so it was not a "sham"); *Cleveland Cliffs*, 2023 WL 5688392, at *6-7 (dismissal because plaintiff alleged subsidiary had separate facilities and employees, negating an "inference" it was a "sham").

In addition to this fatal flaw, the FAC also does not allege sufficient facts to support the domination element of any alter ego theory. Virtually every relevant allegation (FAC ¶¶ 14, 16, 20, 25, 26, 27, 35) is conclusory, contradicted by a comparatively specific allegation, or inadequate as a matter of law to pierce the corporate veil. *See L-7 Designs*, 647 F.3d at 422. Generally, Resideo claims TWS USA and TWS HK are "extensions of a single business" and conduct distinct supporting operations. (FAC ¶¶ 17-35.) But that is "presumptively" permissible under the case law. *See Buzzfeed*, 2022 WL 15627216, at *12-13. Resideo never alleges any entity is undercapitalized, insolvent, fails to follow formalities, or the like. It merely alleges "routine" levels of control by TWS GZ in "ways that are entirely consistent with sound business practice" and the "observation of corporate formalities." *See LaCourte*, 2013 WL 4830935, at *5-6; *Bentivoglio*, 2019 WL 6341130, at *6 ("[O]wnership and operation of a subsidiary" are insufficient even if "exclusively for the parent's gain").[3] Simply put, if Resideo's allegations were sufficient, there would be "an alter ego relationship between almost every parent and subsidiary." *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 297 (S.D.N.Y. 2005).

### B.     Resideo Alleges No Fraudulent Or Injurious Misuse Of The Corporate Form

The alter ego theories independently fail because Resideo never alleges that the purported "domination was used to commit a fraud" that caused it harm. *LaCourte*, 2013 WL 4830935, at

---

[3]     Resideo's allegations about branding in marketing materials, email domains, and its own inability to discern "corporate structure" do not establish domination. *Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020, at *12 (S.D.N.Y. June 8, 2020) (collecting cases on internet materials); *Buzzfeed*, 2022 WL 15627216, at *27 (use of defined term for parent and subsidiaries irrelevant); *Bentivoglio*, 2019 WL 6341130, at *4 (dismissal where plaintiff claimed it could not learn defendants' corporate structure).

*6. To satisfy this second and mandatory element of an alter ego claim, Resideo is required to establish that Defendants "abuse[d]" the corporate form in a way that "must have directly harmed [Resideo]," and to "proffer[]" "some allegation of fraud or bad faith." *Allison*, 2014 WL 4996358, at *7; *Hamlen v. Gateway Energy Servs. Corp.*, 2017 WL 6398729, at *11-12 (S.D.N.Y. Dec. 8, 2017) (dismissal where plaintiff "fail[ed] to allege a sufficient nexus" alleged injuries and "alleged misuse of the corporate form") (collecting cases).

Tellingly, although Defendants previously moved to dismiss on this ground, Resideo's FAC is devoid of any allegations of misuse of the corporate form constituting a fraud. This pleading failure likewise necessitates dismissal. *See LaCourte*, 2013 WL 4830935, at *6. And even if Resideo had made such allegations, its claims are garden-variety contract and warranty claims that cannot support a veil-piercing claim, in any event. *See Hamlen*, 2017 WL 6398729, at *10-11 (collecting caselaw for the proposition that "an ordinary breach of contract" is "insufficient to warrant piercing the corporate veil"). Without alleging "something like fraud," an "underlying cause of action" such as "breach of contract" "cannot supply the necessary fraud or injustice." *Bentivoglio*, 2019 WL 6341130, at *6.

## C. Resideo's Alter Ego Claims Against TWS USA Also Fail Because The FAC Does Not Sufficiently Allege The Reverse Veil-Piercing Factors

To the extent the FAC purports to hold TWS USA liable for the conduct of TWS HK or TWS GZ (its parent and ultimate parent), Resideo's theory is for reverse veil-piercing, which requires several additional elements to state a claim. *See Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714-15 (Del. Ch. 2021) (identifying eight additional factors). The Court should not "even consider" any reverse piercing theory because Resideo has failed to allege the "exceptional circumstances" and "egregious facts" necessary for reverse veil-piercing. *Id.* Resideo does not even attempt to meet this heightened pleading standard at all. Rather, the FAC,

construed broadly, does not purport to address the additional reverse-piercing factors. *Id.* Relatedly, although the FAC is unclear, to the extent Resideo purports to hold TWS HK liable for claims against TWS GZ, that theory should also be dismissed for the same reasons.

## II. RESIDEO FAILS TO ALLEGE PERSONAL JURISDICTION OVER TWS USA

TWS USA should also be dismissed because the FAC does not plausibly establish personal jurisdiction. The original Complaint offered six specious jurisdictional theories that TWS USA previously rebutted in its original dismissal motion. (ECF 10 at 9-13.) The FAC abandoned some of those theories, and the others that remain fail as a matter of law.

### A. Reverse Veil-Piercing Jurisdiction Over TWS USA Is Unavailable

Alter ego personal jurisdiction over TWS USA is unavailable. (FAC ¶ 27.) To obtain reverse-piercing jurisdiction, Resideo needed to establish that TWS USA is a "shell" for the "allegedly controlling party." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. IBM*, 2022 WL 889145, at *2 (S.D.N.Y. Mar. 25, 2022) (citing *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 458-59 (S.D.N.Y. 2007)); *accord Socap United States Inc. v. So.Cap. S.R.L.*, 2019 WL 13247454, at *6-7 (S.D.N.Y. Mar. 29, 2019) (plaintiff must establish "pervasive control"). The "shell" test is the same as the "complete domination" element of alter ego liability. *Int'l Equity Invs.*, 475 F. Supp. 2d at 458. And because Resideo now alleges that TWS USA is dominated by TWS GZ and not its direct parent (FAC ¶ 15), it follows that Resideo must also demonstrate that both TWS USA and TWS HK are "shells." *LaCourte*, 2013 WL 4830935, at *6-7 (alter ego required for every link in the "chain").

For the same reasons discussed above, Resideo comes nowhere close to satisfying this high pleading burden. It conclusorily alleges that TWS USA and TWS HK are "shell companies" but that is not nearly enough. (FAC ¶ 14.) Resideo is required to show "actual domination." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *10 (S.D.N.Y. Mar. 10, 2021)

(dismissing claim; insufficient to allege "exercise [of] ultimate control," "direct[ion] [of] revenues," and disregard of formalities). Far from alleging facts to make that inference plausible, the FAC does the exact opposite. Resideo repeatedly concedes in its pleading that each of TWS USA and TWS HK have their own distinct operations, revenues, offices, employees, and managerial authority, all of which is irreconcilable with the notion that either was a mere shell. *Supra* Section I.A; *Beijing Neu*, 2022 WL 889145, at *2 (allegation that subsidiary was "fully controlled" in all relevant "interactions" was insufficient absent nonconclusory allegations establishing status as a "shell"); *Socap*, 2019 WL 13247454, at *6-7 (no alter ego jurisdiction even where purported sham entity had no cash or office, and had overlapping employees and operations). If Resideo's threadbare showing were sufficient, essentially every subsidiary of every corporation would be subject to alter ego jurisdiction.

### B. TWS USA Is Not Bound By The POs' Forum Selection Clause

Next, Resideo posits that TWS USA agreed to be bound by the POs' forum selection clause because it purportedly helped TWS HK fulfill the POs by "regularly communicat[ing] with Resideo employees" about "forecasts, deliveries, and payments." (FAC ¶¶ 34, 36.) This also fails. To begin with, the face of the POs state they are binding *only* on the "supplier to which this Purchase Order is issued," and the Complaint alleges that the POs were "issued" only to TWS HK. (FAC ¶ 55.) Thus, the POs themselves do not purport to bind TWS HK's affiliates.

Moreover, several recent cases in this District have held that forum selection clauses are not enforceable on due process grounds against non-signatory defendants even if the defendant is "closely related" to the signatory. *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 394 (S.D.N.Y. 2019); *HSM Holdings, LLC*, 2021 WL 918556, at *10; *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 514 (S.D.N.Y. 2023). And even if an exception to that rule still exists, none

would apply here because, as discussed in Section I.A., TWS USA is simply not a "dummy for [its] parent." *Horsehead Indus. v. Metallgesellschaft AG*, 239 A.D.2d 171, 172 (1st Dept. 1997).

### C.    Resideo Fails To Plead Any Transaction Supporting Long-Arm Jurisdiction

Resideo also fails to establish jurisdiction on the notion that its claims arose from TWS USA's "business transactions" under the long-arm statute. (FAC ¶¶ 37-38.) Under CPLR 302(a)(1), jurisdiction may be proper if: "(1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business." *Painewebber Inc. v. WHV, Inc.*, 1995 WL 296398, at *2 (S.D.N.Y. May 12, 1995). The putative defendant must "purposely avail[]" itself of and "invoke the benefits and protection" of New York law. *Id.* "A court must look at the totality of circumstances" and "may not subject the defendant to jurisdiction based on random, fortuitous, or attenuated contacts." *Id.* (citation omitted).

Critically, Resideo does not allege that TWS USA and Resideo *ever* engaged in any "transactions," whether in New York or otherwise. That omission is dispositive. The Court "plainly" does not have such jurisdiction if there was "no contract or business transaction between" the parties. *Barricade Books, Inc. v. Langberg*, 2000 WL 1863764, at *9 (S.D.N.Y. Dec. 18, 2000); *E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, 2003 WL 22068573, at *9 (S.D.N.Y. Sep. 5, 2003) (no jurisdiction where "there was no business transaction—let alone a 'New York business transaction'") (citing caselaw for the proposition that "mere presence in New York relating to business 'cannot transform business dealings into business transactions'").

And the few other allegations Resideo provides are far too vague and conclusory to establish long-arm jurisdiction. (FAC ¶¶ 30, 32, 34, 37, 38.) Resideo does not allege that anyone from TWS USA ever set foot in New York or shipped a product for TWS HK to Resideo there. Resideo instead alleges, vaguely, that TWS USA provided some unspecific amount of back-office support to Resideo's unnamed New York personnel concerning goods that a separate entity sold

to Resideo and shipped only to El Paso. That is insufficient. *See Painewebber Inc.*, 1995 WL 296398, at *3 (no jurisdiction where defendant had phone calls with New York plaintiff who performed and negotiated the parties' contract there; defendant's contacts were not intended to "project" itself into the New York market); *Navaera Sciences, LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 376 (S.D.N.Y. 2009) ("regular[] communicat[ion]" with plaintiff "in New York by telephone, email, and mail" is "insufficient"); *Spencer Trask Ventures, Inc. v. Archos S.A.*, 2002 WL 417192, at *6 (S.D.N.Y. Mar. 15, 2002) ("it is well settled that" "telephone and mail contacts generally do not constitute" transacting business under long-arm).

Further, even if TWS USA's sporadic purported contacts with New York somehow constitute business transactions, Resideo does not even allege that its claims against TWS USA arise out of those back-office contacts. That also necessitates dismissal. *See, e.g.*, *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 75-76 (2d Cir. 2023) ("Even assuming Defendants transacted business in New York, the district court correctly dismissed for lack of personal jurisdiction because [plaintiff's] claims do not 'arise from' Defendants' business activity"); *Barrett v. Tema Development (1988), Inc.*, 251 Fed. App'x. 698, 700 (2d Cir. Oct. 24, 2007) (affirming dismissal where claims did not arise out of alleged business transactions).

### D. Resideo Fails To Establish Personal Jurisdiction Based On TWS USA's Alleged Tortious Activity Directed To New York

Lastly, Resideo also fails to establish jurisdiction based on purported tortious activity. (FAC ¶ 39.) Under CPLR 302(a)(3), jurisdiction may be proper when: (1) a defendant commits "a tortious act outside New York"; (2) the claim "arose from that act"; (3) the "tortious act caused an injury" to property in New York; (4) the defendant "should reasonably have expected the act to have consequences in New York"; and (5) the defendant "derived substantial revenue from" interstate commerce. *Penguin Group Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011).

This theory fails as a threshold matter because the FAC's only tort is asserted against TWS USA based only on alter ego liability. (FAC ¶¶ 106-110.) Resideo never alleges in a nonconclusory manner that TWS USA made any misrepresentation. (*Compare* FAC ¶ 39, *with* FAC ¶¶ 63, 80, 83, 93.) Because Resideo's alter ego liability theories fail, no tort is actually alleged against TWS USA, and CPLR 302(a)(3) jurisdiction is unavailable. Relatedly, as discussed below, that tort claim also fails as a matter of law, which also negates this theory. But there is more. The FAC is devoid of other necessary allegations concerning TWS USA to establish personal jurisdiction: there are no well-plead allegations that TWS USA purportedly "should have reasonably expected" its "tort" to "have consequences in New York"; that TWS USA "derived substantial revenue from interstate commerce" (whether in relation to its "tort" or otherwise); or that TWS USA's purported misrepresentations caused relevant injury in New York. These deficiencies are especially glaring given that Resideo has already amended its pleading.

## III. RESIDEO FAILS TO STATE A CLAIM AGAINST TWS USA OR TWS GZ, AND ITS NEGLIGENT MISREPRESENTATION CLAIM IS FATALLY DEFECTIVE

Despite Resideo's attempts to bring TWS USA and TWS GZ into this action, Resideo's dispute is only with TWS HK—which Resideo alleges is the sole defendant that actually sold it goods (FAC ¶¶ 5, 10)—and that dispute is far narrower than the FAC's formulation. Even with the benefit of amendment, Resideo's claims for breach of contract and breach of warranty against TWS USA and TWS GZ still fail as a matter of law. So do Resideo's claims against all Defendants for breach of the POs' "Epidemic Failure" provision and for negligent misrepresentation.

### A. The Breach Of Contract And Warranty Claims Against TWS USA And TWS GZ Fail For Lack Of Contractual Privity

Resideo's claims for breach of contract and warranty are defectively pled against TWS USA and TWS GZ, neither of which is a party to the POs. As a general rule, "[t]here can be no breach of contract claim against a non-signatory to the contract." *Flatiron Acquisition Vehicle,*

*LLC v. CSE Mortg. LLC*, 2019 WL 1244294, at \*12 (S.D.N.Y. Mar. 17, 2019) (citing *Randall's Island Aquatic Leisure, LLC v. City of New York*, 92 A.D.3d 463 (1st Dept. 2012)). These claims fail because the POs, on their face, bind only the "supplier to which" they were issued (ECF 24-1), and TWS HK is the only supplier to which Resideo issued any POs. (FAC ¶¶ 5, 10.)

Resideo tries to circumvent this general rule by alleging that TWS USA and TWS GZ "agreed to be bound by the [POs]" because they acted "interchangeably to fulfill the[m]." (FAC ¶ 36.) But these allegations should not be credited because the FAC actually specifies that TWS USA helped with "communication," "forecasts, deliveries, and payments," while TWS GZ in contrast designed and manufactured the goods. (FAC ¶¶ 28-34.) Regardless, Resideo's barebones allegations that TWS USA and TWS GZ agreed to be bound by the POs do not satisfy any exception to the rule barring claims against non-signatories. *See Horsehead*, 239 A.D.2d at 172.

### B. The Breach Of Warranty Claims Also Fail Against TWS USA And TWS GZ Because Resideo Did Not Purchase Goods From Those Defendants

A plaintiff that seeks to "recover for financial injuries" on "express and implied breach of warranty claims" must make a "showing of privity" with the manufacturer. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023) (affirming dismissal of warranty claims where plaintiff had no contract with manufacturer). Here, Resideo alleges only that it purchased goods from TWS HK (FAC ¶¶ 5, 10, 55), and never alleges it did so from TWS USA or TWS GZ. Thus, for this independent reason, Resideo's claims against TWS USA and TWS GZ for breach of express and implied warranty also fail. *Rosen v. Hyundai Group (Korea)*, 829 F. Supp. 41, 49 (E.D.N.Y. 1993) (dismissing defendant because it was "undisputed" that it did not sell goods to plaintiffs; noting that "only 'sellers' are liable for breach of warranty").

### C. Resideo's Claim For Breach Of The Purchase Order's "Epidemic Failure" Provision Fails Against All Defendants

Resideo claims breach of the Purchase Order's "epidemic failure" provision (FAC ¶ 93), but this claim fails against TWS USA and TWS GZ because they are not bound by the Purchase Order (as discussed above), and also fails against all Defendants due to additional pleading defects. The Purchase Order provides that upon discovery of a systemic failure, Resideo could:

> (a) … notify [TWS HK] and [TWS HK] will provide to Resideo a preliminary plan for problem diagnosis …; (b) [TWS HK] and Resideo will diagnose the problem, plan an initial work-around and effect a permanent solution; (c) [TWS HK] and Resideo will agree on a plan for customer notification, replacement scheduling and remediation …; and (d) [TWS HK] is responsible for all costs and damages …. Resideo and Supplier will work together in good faith to establish and expeditiously implement an Epidemic Failure action plan.

(FAC ¶ 73.) Resideo alleges that Defendants breached this provision because they did not "present a viable plan for correcting the issue and TWS Guangzhou's instructions did not solve the problem." (FAC ¶ 93.) This conclusory allegation is not sufficient.

Resideo had to "plead the specific provisions" that "were allegedly breached and the specific actions of the defendants that constituted that breach," *Anderson v. Greene*, 774 F. App'x. 694, 697 (2d Cir. May 28, 2019), but it did not do so. Resideo does not allege that any Defendant refused to "agree on a plan for customer notification, replacement scheduling, or remediation," or refused to "work together in good faith to establish" and implement an "action plan." (FAC ¶ 73.) All it alleges is that a plan was provided, and that Resideo was unhappy with it. (FAC ¶ 93.) Those allegations are not sufficient to create a plausible inference of breach. *Fleisig v. ED&F Man Capital Mkts., Inc.*, 2020 WL 3127875, at *4 (S.D.N.Y. June 12, 2020) (dismissal where plaintiff did not plead "specific conduct" that breached "specific terms").

### D.     Resideo's Conclusory Negligent Misrepresentation Claim Fails Against All Defendants, None of Which Plausibly Owe Any Special Duty

The FAC concludes with an unparticularized claim for negligent misrepresentation against every Defendant (FAC ¶¶ 106-110), which fails for several independent reasons.

*First*, Resideo's negligent misrepresentation claim is supported only by formulaic and non-specific allegations (*e.g.*, FAC ¶¶ 86, 108), but it is "subject to the heightened pleading standard under Rule 9(b)." *Jia Wang Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 361 (S.D.N.Y. 2022) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005); *Baldeo v. Airbnb, Inc*., 2023 U.S. Dist. LEXIS 176085, at *18 (S.D.N.Y. Sept. 29, 2023) (same). Although Resideo was put on notice of this fatal defect (ECF 10 at 18-19), it made no attempt to cure the FAC, which does not provide the requisite "who, what, when, where, and how" details under Rule 9(b). *EMA Fin., Ltd. Liab. Co. v. Joey N.Y., Inc.*, 2019 U.S. Dist. LEXIS 161454, at *20 (S.D.N.Y. Sept. 22, 2019).  The claim thus fails.  *See Jia Wang Lin*, 640 F. Supp. 3d at 361.

*Second*, a negligent misrepresentation claim may arise only from a "special relationship," but Resideo fails to plausibly allege one.  *Id.* at 362.  In a "commercial context, a duty to speak with care exists" only if there is "a closer degree of trust" than "the ordinary buyer and seller."  *Id.* Resideo alleges a special relationship due to TWS GZ's "expertise with batteries and designing battery packs, including specifically its expertise with lithium-ion batteries." (FAC ¶ 47.)  That generic allegation is contradicted by the original Complaint's allegation that Resideo instead relied on *TWS HK's* expertise.  (Redline ¶ 27.)  And Resideo also alleges it had its own similar expertise.  (FAC ¶¶ 57, 59, 63, 82.)  It is not sufficient to allege merely that a party had greater "knowledge of the particulars of" the industry, and Resideo's allegations do not establish the "required" "specialized knowledge." *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004) (dismissal where defendant was allegedly "far more knowledgeable" about industry and had

expertise plaintiff needed); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 304 (S.D.N.Y. 2022) (allegations about "special knowledge and experience" were insufficient; "[a]ny company" has "expertise in its own product"); *Gusmao v. GMT Grp., Inc.*, 2008 WL 2980039, at *5-6 (S.D.N.Y. Aug. 1, 2008) (special knowledge of industry insufficient).

*Third*, the claim is barred by the economic loss doctrine. "A plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available." *Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *13 (S.D.N.Y. May 5, 2023) (dismissing claim) (citing *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*, 410 F.Supp.3d 662, 687 (S.D.N.Y. 2019). And if the damages "suffered are of the type remediable in contract, a plaintiff may not recover in tort." *Basso v. N.Y. Univ.*, 2020 U.S. Dist. LEXIS 223211, at *34 (S.D.N.Y. Nov. 30, 2020). Here, Resideo's claim is about the same general conduct as the breach of contract claims, and it seeks the exact same damages. (FAC ¶¶ 94, 98, 105, 110.) This defect also necessitates dismissal.

*Fourth*, even if Resideo were not required to abide by Rule 9(b), it offers no non-conclusory allegations for two mandatory elements—namely, that Defendants made a "representation that [they] should have known was incorrect," and that Resideo "reasonably relied" on them. *Anderson*, 607 F. Supp. 3d at 460. The FAC contains only conclusory or insufficient averments for each of these essential elements. (FAC ¶¶ 108 (Defendants "should have known" misrepresentations "were incorrect"); *id.* ¶¶ 52, 63, 109 (Resideo relied on TWS GZ's "expertise"); *id.* ¶ 62 (Resideo relied on TWS GZ's "recommendations").) That is insufficient.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the FAC be dismissed with prejudice in full as against TWS USA and TWS GZ, and in part as against TWS HK.

Respectfully submitted:

**REED SMITH LLP**

Dated:    February 26, 2024
          New York, New York

*/s/ John C. Scalzo*
John C. Scalzo
Casey J. Olbrantz
Karunya Venugopal
599 Lexington Avenue
New York, NY 10022
(212) 521-5400
jscalzo@reedsmith.com
colbrantz@reedsmith.com
kvenugopal@reedsmith.com

*Counsel for Defendants*