**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ADEMCO INC. (D/B/A RESIDEO),** | : |
| Plaintiff, | : |
| -against- | :     No. 23-CV-08383 (AS/SLC) |
| **TWS TECHNOLOGY (GUANGZHOU) LIMITED, TWS TECHNOLOGY LTD., and TWS TECHNOLOGY LLC,** | : |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**PILLINGER MILLER TARALLO, LLP**
Neil L. Sambursky, Esq.
1140 Franklin Avenue, Suite 214
Garden City, New York 11530
nsambursky@pmtlawfirm.com
(516) 408-5388
PMT File No. N-RESID-00123

**GREENE ESPEL PLLP**
Faris A. Rashid, Reg. No. 0391508
Farah N. Famouri, Reg. No. 0403295
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
frashid@greeneespel.com
ffamouri@greeneespel.com
(612) 373-8352
(612) 373-8375
(Admitted pro hac vice)

*Attorneys for Ademco Inc. d/b/a Resideo*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

ARGUMENT ............................................................................................................. 6

I.      Resideo Has Sufficiently Pled Causes of Action Against TWS GZ, TWS HK, and
        TWS USA as Alter Egos ................................................................................ 6

        A.      TWS GZ, TWS HK, and TWS USA are alter egos that ignore their corporate
                forms and piercing the veil ensures a fair outcome. ............................... 6

                1.      "TWS Group" operates as a single entity around the world. ..................... 6

                2.      Not applying the alter ego doctrine in this case would cause an
                        unjust and unfair result ............................................................ 9

                3.      Resideo has also sufficiently plead that TWS USA is the alter ego
                        of TWS GZ through "reverse" veil piercing. ............................. 10

II.     The Complaint Adequately Alleges That TWS USA Subjected Itself to Personal
        Jurisdiction in New York. .............................................................................. 11

        A.      TWS USA is subject to New York jurisdiction as an alter ego of TWS GZ
                and TWS HK. ......................................................................................... 11

        B.      TWS USA is bound by the Purchase Orders' forum selection clause both
                because it performed duties to fulfill the Purchase Orders and because it is
                closely related to TWS HK, a signatory of the Purchase Orders. ......... 13

        C.      TWS USA is subject to personal jurisdiction in New York because it
                directed misrepresentations to, and caused injury in, New York. ......... 16

III.    For Both Alter Ego Lability and Personal Jurisdiction, the Court Should Grant
        Jurisdictional Discovery as an Alternative Remedy. ....................................... 17

IV.     Resideo Sufficiently Alleged Claims Against TWS USA and TWS GZ. ......... 17

        A.      TWS GZ and TWS USA bound themselves to the Purchase Orders by their
                intent and actions. ................................................................................. 17

B.     TWS GZ designed and made the defective battery packs, and TWS USA helped sell them to Resideo, making them both liable for breach of warranty. ................................................................................................ 18

C.     TWS mischaracterizes Resideo's "epidemic failure" allegations. ........................ 19

D.     Resideo sufficiently alleged its negligent misrepresentation claim against the TWS entities. ................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Allison v. Clos-ette Too, LLC*,
   No. 14 Civ. 1618(LAK)(JCF), 2014 WL 4996358 (S.D.N.Y. Sept. 15, 2014) .........................9

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003).....................................................................................................17

*Arcadia Biosciences, Inc v. Vilmorin & Cie*,
   356 F. Supp. 3d 379 (S.D.N.Y. 2019)......................................................................................15

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*,
   No. 21 Civ. 7589 (AKH), 2022 WL 889145 (S.D.N.Y. Mar. 25, 2022) ..................................13

*Beskrone v. Berlin*,
   656 F. Supp. 3d 496 (S.D.N.Y. 2023)......................................................................................15

*BNY Mellon, N.A. v. Lyell Wealth Mgmt., LLC*,
   No. 16 CIV. 6896 (DAB), 2016 WL 7377235 (S.D.N.Y. Dec. 8, 2016) ................................14

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
   No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023)........................................8

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
   147 F. App'x 195 (2d Cir. 2005) .............................................................................................10

*Dorchester Fin. Sec., Inc. v. Banco BRG, S.A.*,
   722 F.3d 81 (2d Cir. 2013)................................................................................................11, 15

*Firefly Equities, LLC v. Ultimate Combustion Co.*,
   736 F. Supp. 2d 797 (S.D.N.Y. 2010)......................................................................................14

*First Bank of Am. v. Motor Car Funding, Inc.*,
   257 A.D.2d 287 (N.Y. App. Div. 1999) .....................................................................................6

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
   No. 1:17-CV-8987-GHW, 2019 WL 1244294 (S.D.N.Y. Mar. 18, 2019) .........................13, 17

*Gartner v. Snyder*,
   607 F.2d 582 (2d Cir. 1979).....................................................................................................10

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
   667 F. Supp. 2d 308 (S.D.N.Y. 2009)......................................................................................12

*Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*,
   No. 21 CIV. 6154 (JPC), 2022 WL 1748410 (S.D.N.Y. May 31, 2022).................................14

*Glanzer v. Shepard*,
    135 N.E. 275 (N.Y. 1922)....................................................................................19

*Hannah Bros. v. OSK Mktg. & Commc'ns, Inc.*,
    609 F. Supp. 2d 343 (S.D.N.Y. 2009)....................................................................9

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
    No. 20-cv-00967 (LJL), 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021)......................12, 13, 15

*Int'l Equity Invs. Inc. v. Opportunity Equity Partners, Ltd.*,
    475 F. Supp. 2d 456 (S.D.N.Y. 2007)..................................................................12

*Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*,
    909 F.2d 698 (2d Cir. 1990)..................................................................................9

*Kelly v. Beliv LLC*,
    640 F. Supp. 3d 286 (S.D.N.Y. 2022)....................................................................20

*Kimmell v. Schaefer*,
    675 N.E.2d 450 (N.Y. 1996)..................................................................................19

*LaRoss Partners, LLC v. Contact 911 Inc.*,
    874 F. Supp. 2d 147 (E.D.N.Y. 2012) ....................................................................14

*Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*,
    531 F. Supp. 3d 854 (S.D.N.Y. 2021)....................................................................9, 11

*Liberty Synergistics, Inc. v. Microflo Ltd.*,
    50 F. Supp. 3d. 267 (E.D.N.Y. 2014) ....................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)..................................................................................11

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
    268 F.3d 58 (2d Cir. 2001)....................................................................................7

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003)..................................................................................17

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) ..........................................................................20

*MBIA Ins. Corp. v. Royal Bank of Canada*,
    706 F. Supp. 2d 380 (S.D.N.Y. 2009)....................................................................14, 18

*Metro-Goldwyn-Mayer Studios Inc. v. Canal & Distrib. S.A.S.*,
    No. 07 Civ. 2918(DAB), 2010 WL 537583 (S.D.N.Y. Feb. 9, 2010)....................................14

*Miramax Film Corp. v. Abraham*,
  No. 01 CV 5202 (GBD), 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) .............................10

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989) .............................................................................................7

*N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*,
  657 F. Supp. 2d 410 (S.D.N.Y. 2009)......................................................................................7

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
  537 F.3d 168 (2d Cir. 2008)....................................................................................................6

*In re Optimal U.S. Litig.*,
  813 F. Supp. 2d 351 (S.D.N.Y. 2011); and (3) ...................................................................14

*Ossining Union Free Sch. Dist. v. Anderson*,
  539 N.E.2d 91 (N.Y. 1989)....................................................................................................19

*Palace Exploration Co. v. Petroleum Dev. Co.*,
  41 F. Supp. 2d 427 (S.D.N.Y. 1998)......................................................................................16

*Paroni v. Alstom SA*,
  No. 19 Civ. 1034 (PAE), 2020 WL 1033406 (S.D.N.Y. Mar. 3, 2020) ...........................15, 17

*Paroni v. Gen. Elec. UK Holdings Ltd.*,
  No. 19 Civ. 1034 (PAE), 2021 WL 3501234 (S.D.N.Y. Aug. 9, 2021) ...........................11, 12

*Penguin Grp. (USA) Inc. v. Amer. Buddha*,
  946 N.E.2d 159 (N.Y. 2011)..................................................................................................16

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
  420 F. Supp. 3d 123 (S.D.N.Y. 2019)....................................................................................20

*SOCAP USA Inc.*, No. 17 Civ. 5255 (PGG), 2019 WL 13247454 (S.D.N.Y. Mar.
  29, 2019) ................................................................................................................................13

*Storm LLC v. Telenor Mobile Commc'ns AS*,
  No. 06 Civ 13157 (GEL), 2006 WL 3735657 (S.D.N.Y. Dec. 18, 2006) ..........................7, 12

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*,
  933 F.2d 131 (2d Cir. 1991)............................................................................................7, 9, 10

## Other Authorities

N.Y.C.P.L.R. § 302(a)(1)............................................................................................................11

N.Y.C.P.L.R. § 302(a)(3)(ii).......................................................................................................16

Plaintiff Ademco Inc. d/b/a Resideo ("Plaintiff" or "Resideo"), respectfully submits this memorandum in opposition to Defendants TWS Technology (Guangzhou) Limited ("TWS GZ"), TWS Technology Ltd. ("TWS HK"), and TWS Technology LLC's ("TWS USA") (collectively "Defendants" or "TWS") motion to dismiss Plaintiff's First Amended Complaint (the "Motion").

## INTRODUCTION

TWS operates through entities within entities within entities, and it does so for at least one reason: lawsuits like this one. As Resideo's allegations and TWS's own statements show, TWS entities operate interchangeably to secure business around the world; to design, make, and ship products; and to collect payment. But when a defect becomes apparent and significant damages result, the same TWS entities suddenly have nothing to do with the product at issue.

In 2017, TWS GZ responded to a request for proposals issued by Honeywell International Inc.'s ("Honeywell") home security and automation business (now Resideo) for highly technical battery packs needed to serve a specific purpose in security-alarm panels. TWS GZ designed those batteries and represented to Honeywell that the batteries would perform as needed. When Resideo was ready to purchase TWS GZ's battery packs, its purchase orders were directed to TWS HK. To this day, no Honeywell or Resideo employee is aware of *ever* having interacted with a TWS HK employee in connection with the products at issue in this lawsuit.

In 2018, before production began in earnest, Honeywell detected a potential defect with TWS's battery packs. Although the purchase orders had been directed to TWS HK, TWS GZ and TWS USA surfaced to address the issue and provide specific, technical instructions to resolve it. Resideo then began issuing purchase orders to TWS HK for almost a million battery packs. Yet TWS USA—not TWS HK or TWS GZ—facilitated communications, shipments, payments, forecasting, and all other non-technical issues for the next two years.

In 2021, Resideo's customer for the alarm panels, ADT LLC, reported massive, cross-country battery failures. Resideo immediately reported the issue to TWS GZ and TWS USA. (Resideo did not report the issue to TWS HK because it had never interacted with TWS HK about the product.) TWS GZ and TWS USA fielded Resideo's communications, and Resideo shipped failed batteries directly to TWS GZ, whose employees analyzed the problem. TWS GZ also obtained an independent examination by engineering consultants in Guangzhou, China.

In addressing this motion, the Court should see through TWS's attempt to escape liability by asserting corporate separateness after years of blurring the lines. In the liability context, applying the alter ego doctrine and piercing the corporate veil is appropriate when companies act as a single entity, and to avoid an unfair or unjust result. Applying the alter ego doctrine in the personal jurisdiction context is a lighter burden under New York law. Under both tests, TWS has improperly disregarded the corporate form. And both alter ego inquiries are highly fact intensive. If there is any doubt, the Court should grant jurisdictional discovery. All three TWS entities have the same counsel, and conducting targeted discovery now would ensure efficiency and finality.

TWS also moves to dismiss claims as a matter of law, but this request should be denied for similar reasons. Although the Purchase Orders were directed to TWS HK, TWS GZ and TWS USA both intended to be bound by those contracts through their words and actions. Indeed, TWS GZ designed the defective battery and is the only entity with *any* battery-manufacturing capabilities. And if TWS GZ and TWS USA are not bound by the contracts, Resideo has validly pled a negligent misrepresentation claim in the alternative. TWS cannot have it both ways by invoking the economic loss doctrine on one hand, and claiming it is not bound by the parties' contracts on the other.

The TWS entities are exactly the kind of "shell" corporations used to game jurisdiction, liability, and ultimately, judgment collection. The Court should refuse to play by denying this motion in its entirety.

## FACTUAL BACKGROUND

TWS GZ is a battery design and manufacturing company headquartered in Guangzhou, China. Because it is organized under Chinese law, Resideo cannot access its incorporation or ownership records. Publicly, however, TWS markets itself as having 2,500 employees worldwide, though the vast majority work in China, where three of TWS's four manufacturing facilities are located. 1st Am. Compl. ("FAC") ¶¶ 2, 14 & Ex. B, at 14. (The fourth is in Jakarta, Indonesia.) TWS states that it has a "tech center" and sales offices in the United States, and a single sales office in Hong Kong. FAC Ex. B, at 15. TWS does not appear to have any manufacturing, shipping, or storage facilities in the United States or in Hong Kong. *See id.*

TWS conducts its global business through a series of subsidiaries. These include TWS HK, organized under Hong Kong law, and TWS USA, organized under Delaware law. *Id.* ¶¶ 3–4. TWS USA's sole member is TWS HK, and TWS HK is, in turn, an affiliate or subsidiary of TWS GZ. *Id.* ¶ 3. Based on publicly available materials, TWS refers to other subsidiaries as "regional hub offices." FAC Ex. D at 2. And TWS appears to have a single leadership team overseeing its global operations. FAC Ex. E. Accordingly, TWS GZ markets itself as a single entity—as "TWS" or the "TWS Group." *Id.* ¶ 13 & Ex. B.

In 2017, Resideo's predecessor, Honeywell sought to design and manufacture an alarm panel for use in home and commercial applications by ADT LLC, a home-security company. *Id.* ¶¶ 42, 44. The alarm panel's design included a lithium-ion battery pack that would act as a backup if the secured building lost power. *Id.* Honeywell had not previously designed an alarm panel using a lithium-ion battery, and thus issued a request for proposals ("RFP") for the battery pack's design

and manufacture. *Id.* ¶¶ 42, 46. Using this process, Honeywell intended to identify and rely on a battery manufacturer's expertise. *Id.* ¶ 46.

TWS GZ responded to the RFP, and employees based in Guangzhou, China, designed a battery pack that TWS GZ claimed would meet Honeywell's specific needs. *Id.* ¶¶ 47–49 & Ex. F. Honeywell selected TWS GZ based on its expertise and representations, and TWS GZ began manufacturing the battery packs that it designed. *Id.* ¶ 53.

During this development phase, Honeywell interacted with the TWS entities as if they were interchangeable. For example, when Honeywell requested battery-pack samples, TWS USA employees communicated with Honeywell and coordinated shipping those samples to Honeywell. *Id.* ¶ 54. And once the parties agreed to ramp up production, Honeywell issued its Purchase Orders to TWS HK. *Id.* ¶ 55. But to Resideo's knowledge, Honeywell never worked with any TWS HK employee for the battery pack's design or manufacture. *Id.* ¶ 56. TWS does not have any manufacturing facilities in Hong Kong—only a sales office. *Id.* ¶ 54 & Ex. B, at 14–15.

In July 2018, during the development phase, Honeywell tested TWS's battery packs and observed a failure mode related to the battery packs' Current Interruption Device ("CID"). *Id.* ¶ 57. Honeywell contacted TWS GZ and sent an assembled alarm panel with a failed battery pack to TWS GZ in Guangzhou, China, so that TWS could observe and test the pack as it was intended to be used. *Id.* ¶ 60. In a report issued solely by TWS GZ, TWS concluded that the CID issue was occurring because the batteries were overcharging, overheating, and continually charging. TWS GZ made specific software recommendations to fix the problem, which Honeywell adopted and relied on. *Id.* ¶¶ 61–63 & Ex. F. In dealing with this issue, TWS USA participated in communications with Honeywell, while TWS HK employees did not participate at all. *Id.* ¶ 59.

In October 2018, Resideo spun off from Honeywell and continued what was previously Honeywell's home-security business. *Id.* ¶ 64. From 2018 through 2020, Resideo purchased about 750,000 battery packs from TWS, totaling in the millions of dollars. *Id.* ¶ 69. Resideo employees based in Melville, New York, coordinated these orders with TWS USA employees, which handled project orders, forecasts, deliveries, and payments. *Id.* ¶¶ 56, 70. In fact, TWS USA employees asked Resideo to direct all questions or issues to them, and not TWS HK or TWS GZ, unless the issue related to product quality or engineering. *Id.* ¶ 70. For each battery shipment, Resideo issued Purchase Orders containing Terms and Conditions that required that any dispute be heard in New York, and governed by New York law. *Id.* ¶ 9 & Ex. A, at 8 ¶ 33.2.

Consistent with the battery specifications and intended uses stated in the RFP, Resideo incorporated TWS's battery packs into about 750,000 alarm panels, which it sold to ADT. *Id.* ¶¶ 66–69. ADT, in turn, sold the alarm panels to hundreds of thousands of customers. *Id.* ¶ 78.

In July 2021, however, ADT began reporting widespread battery failures in homes and businesses across America. Resideo immediately relayed these reports to TWS GZ and TWS USA, and shipped failed battery packs to TWS GZ in China. Resideo did not ship any failed battery packs to TWS HK or TWS USA. *Id.* ¶ 79. In fact, Resideo did not even inform TWS HK about the issue and does not know if it ever communicated with TWS HK employees about the failures. *See id.* TWS GZ tested the failed battery packs and communicated with Resideo employees about the issue. *See id.* ¶ 80. In addition, TWS GZ retained a third-party testing laboratory in Guangzhou, China, to further evaluate the battery packs. That lab concluded, essentially, that the same issues that Honeywell identified in 2018—and that TWS GZ had purported to fix—were causing the widespread failures. *Id.* ¶ 81.

Wanting to protect its customers' safety, ADT launched a massive, nationwide effort to replace the hundreds of thousands of TWS batteries contained in its alarm panels. *Id.* ¶¶ 84–85. At the same time, ADT invoked its contract rights against Resideo related to the battery failures and demanded substantial compensation. *Id.* ¶ 87. Resideo, in turn, filed this lawsuit.

## ARGUMENT

**I.     Resideo Has Sufficiently Pled Causes of Action Against TWS GZ, TWS HK, and TWS USA as Alter Egos.**

**A. TWS GZ, TWS HK, and TWS USA are alter egos that ignore their corporate forms and piercing the veil ensures a fair outcome.**

For liability purposes, courts treat entities as alter egos when: (1) the entities at issue operated as a "single economic entity," and (2) an "overall element of injustice or unfairness" is present. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008). Piercing the corporate veil is a "fact-laden" analysis that often requires discovery, making dismissal inappropriate until the plaintiff has had an opportunity to collect evidence. *See, e.g.*, *First Bank of Am. v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 294 (N.Y. App. Div. 1999).

**1.     "TWS Group" operates as a single entity around the world.**

Under New York's flexible, fact-specific inquiry, Resideo has plausibly alleged that TWS operates as a single entity. While there is no exhaustive list of factors to consider when determining whether entities operate as a single entity, some factors include:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (citation omitted). "Applying these—or any other pertinent factors—to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case." *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) (quotation omitted). Given the necessarily flexible framework, "all [factors] need not be present to support a finding of alter ego status." *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 421 (S.D.N.Y. 2009) (quotation omitted).

Resideo's allegations, and TWS's own public statements and actions, demonstrate TWS's disregard for the corporate form. The TWS entities have overlapping ownership, with a single leadership team for its global operations. FAC ¶¶ 3–4, 14–15, 26 & Ex. E, at 1. There is no evidence that TWS subsidiaries have their own officers, directors, or other leadership. In addition, Resideo alleged that the TWS entities have their "operations intertwined." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989). TWS GZ largely controls TWS USA's and TWS HK's marketing and operational policies, and all TWS entities share the same website. *See e.g.*, FAC ¶ 15 & Exs. B, C; *see Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ 13157 (GEL), 2006 WL 3735657, at *13 (S.D.N.Y. Dec. 18, 2006) (finding the failure to engage in separate marketing to be evidence of alter ego relationship). Similarly, TWS Group represents that it has "over 80 patents and 100 senior experts" worldwide, with no separation across entities. FAC ¶ 23 & Ex. B at 7. And TWS touts having customers around the world, with no indication that certain customers belong to subsidiaries. *Id.* ¶ 24 & Ex. B, at 7.

TWS also interchangeably relies on the same corporate resources and locations. *Id.* ¶ 27; *Passalacqua*, 933 F.2d at 139 (referring to factors). TWS claims a single headquarters, in

Guangzhou, China; all other locations extend out from there. *Id.* ¶ 18 & Ex. B, at 15. Indeed, a TWS GZ sales employee described TWS's subsidiary in Lagen, Germany, as a "regional hub office." FAC Ex. D, at 1. And TWS USA, which is owned by TWS HK, only has a "tech center" and six sales offices in the United States, all of which support TWS generally and are claimed by TWS as its own. *See Id.* ¶ 18 & Ex. B, at 15. TWS HK, for its part, has a single "sales office" in Hong Kong without any identifiable manufacturing, storage, or shipping services. Instead, TWS HK apparently serves as a mailstop for TWS GZ, which manufactured the 750,000 batteries that Resideo purchased from TWS HK. *Id.* ¶ 22. And although TWS now claims that TWS HK is the only party at issue, when product defect issues arose in 2018 and again in 2021, it was TWS GZ, supported by TWS USA, that responded. *Id.* ¶ 31. TWS GZ even hired a third-party lab in Guangzhou, China, to analyze its defective batteries. *Id.* ¶ 33. Resideo has not alleged a single interaction with TWS HK from initial sale through final defect-related communications.

TWS also intermingles its assets and does not have independent profit centers. TWS USA and TWS HK share information, resources, sales, revenue, and employees with TWS GZ and rely on TWS GZ for everything from personnel to manufacturing. *Id.* ¶ 35. As alleged, TWS USA and TWS HK do not maintain business operations separate from TWS GZ. *Id.* ¶ 25. This makes sense, because neither TWS USA nor TWS HK have any independent engineering or manufacturing capabilities. *Id.* ¶¶ 2, 14 & Ex. B, at 14. These entities market products that they did not design, do not make, and cannot fix when problems arise. And when TWS needs an independent lab to conduct product analysis, TWS GZ finds it and pays for it. FAC ¶ 33.

TWS's argument that the TWS entities have "normal" parent-subsidiary relationships is based on a blinkered reading of the FAC. In its memorandum, TWS cites inapposite cases alleging insolvency and other alter ego factors that are not relevant here. *See, e.g., Cleveland-Cliffs Burns*

*Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *5 (Del. Ch. Sept. 5, 2023) (court found one LLC was insolvent after an Article 9 sale and the plaintiff did not allege the corporations failed to observe corporate formalities); *Allison v. Clos-ette Too, LLC*, No. 14 Civ. 1618(LAK)(JCF), 2014 WL 4996358, at *7 (S.D.N.Y. Sept. 15, 2014) (plaintiff alleged only that the corporations were wholly owned subsidiaries and argued no other factors).

TWS also picks and chooses allegations to support its arguments, while ignoring context and reasonable inferences. For example, TWS argues that Resideo's allegations show that TWS has observed corporate formalities, but ignores the myriad other factors Resideo discussed above. Even in this litigation, the TWS entities are represented by the same counsel and answered Resideo's lawsuit with one voice. *See Hannah Bros. v. OSK Mktg. & Commc'ns, Inc.*, 609 F. Supp. 2d 343, 350 (S.D.N.Y. 2009) (quotation omitted) ("That the defendants have been represented by the same counsel and have . . . answered as one voice may, in appropriate circumstances, indicate a disregard for the corporate form supporting 'alter ego' liability."). At the Rule 12 stage, Resideo's allegations more than demonstrate TWS's disregard for the corporate form.

### 2. Not applying the alter ego doctrine in this case would cause an unjust and unfair result.

Contrary to TWS's arguments, and consistent with Resideo's allegations, New York law "permits the corporate form to be disregarded where excessive control alone causes the complained of loss." *Passalacqua*, 933 F.2d at 141; *see also Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990) (emphasis original) ("New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego[.]") (emphasis original); *see also Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 531 F. Supp. 3d 854, 860 (S.D.N.Y. 2021) ("Although Plaintiff does not allege any fraud, it has sufficiently alleged the disregard of any corporate distinction between [the defendants].");

*see also D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 198 (2d Cir. 2005) (holding that defendants "obfuscate[d] their separate identities in dealing with [plaintiff] both at the time the contractual relationship commenced and throughout their course of dealings" satisfied the second prong of alter ego liability); *Gartner v. Snyder*, 607 F.2d 582, 587–88 (2d Cir. 1979) (veil piercing may apply where the corporations are being operated as a single "corporate combine").

Here, Resideo has sufficiently alleged that TWS Group "used these entities interchangeably with no regard for their separate corporate identities." *D. Klein & Son, Inc.*, 147 F. App'x at 198; *see* FAC ¶ 28. For instance, although Resideo issued the Purchase Orders to TWS HK, it was TWS GZ that participated in the RFP process, designed the battery pack at issue, and negotiated the related terms. FAC ¶ 29. TWS GZ also manufactured the 750,000 battery packs governed by those Purchase Orders—TWS HK did not manufacture a single one. *Id.* ¶ 29. For its part, TWS USA coordinated shipping products to Resideo in the United States, and handled questions. *Id.* ¶¶ 30, 32. But when defect issues arose, twice, TWS GZ stepped in to address nonconforming goods under the Purchase Orders, even though that obligation purportedly belonged to TWS HK. *Id.* ¶¶ 31, 33. TWS used its entities to sell products to Resideo; excusing those entities from potential liability after a defect has been discovered would be an injustice.

### 3. Resideo has also sufficiently plead that TWS USA is the alter ego of TWS GZ through "reverse" veil piercing.

In the alternative, applying "reverse" veil piercing also requires TWS USA to remain a defendant subsidiary liable for its parents. *See Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d. 267, 297 (E.D.N.Y. 2014); *see also Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD), 2003 WL 22832384, at *7 (S.D.N.Y. Nov. 25, 2003) (citation omitted) (stating reverse veil piercing "may be appropriate in cases where the alter ego is being used as a 'screen' for the dominating entity"). Courts consider the same equitable factors outlined in *Passalacqua* when

determining if reverse veil-piercing should apply, as in a typical veil-piercing claim. *Liberty*, 50 F. Supp. 3d at 297–98. For that reason, the same analysis above applies to TWS USA under reverse veil piercing. At a minimum, the Court should dismiss TWS GZ without prejudice, and TWS USA should remain in the case.

## II.   THE COMPLAINT ADEQUATELY ALLEGES THAT TWS USA SUBJECTED ITSELF TO PERSONAL JURISDICTION IN NEW YORK.

Where a defendant challenges "the sufficiency of the plaintiff's factual allegations" regarding personal jurisdiction, "the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRG, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (citation omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167, 174 (2d Cir. 2013). Resideo has made the prima facie showing here.[1]

### A.   TWS USA is subject to New York jurisdiction as an alter ego of TWS GZ and TWS HK.

TWS concedes that the Court has personal jurisdiction over TWS GZ and TWS HK but incorrectly argues that the Court does not have jurisdiction over TWS USA because it is not an alter ego of TWS GZ and TWS HK. Notably, "[t]he standards for piecing the veil in the context of personal jurisdiction are lower than those in the context of establishing liability[.]" *Paroni v. Gen. Elec. UK Holdings Ltd.*, No. 19 Civ. 1034 (PAE), 2021 WL 3501234, at *8 (S.D.N.Y. Aug. 9, 2021). When determining whether a subsidiary is a parent's alter ego, courts look to four factors:

> (1) whether there exists common ownership and the presence of an interlocking directorate and executive staff, (2) the degree of financial dependency of the subsidiary on the parent, (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to

---

[1] Resideo does not allege that TWS USA is subject to personal jurisdiction due to its New York business transactions under N.Y.C.P.L.R. § 302(a)(1).

observe corporate formalities, and (4) the degree of the parent's control of the subsidiary's marketing and operational policies.

*Id.* (quoting *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009)). As with alter ego liability, when evaluating alter egos for jurisdiction, "there is an infinite variety of situations" possible, meaning the Court must consider the "totality of the evidence." *Int'l Equity Invs. Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007) (citation omitted). Contrary to this flexible analysis, TWS cites one unpublished case that itself does not cite any authority for the argument that Resideo must demonstrate that both TWS USA and TWS HK are shells. Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 12.

Even assuming TWS's assertion is correct, as discussed above in Section I.A.1, Resideo has sufficiently alleged that TWS USA is an alter ego of TWS GZ and TWS HK. *See e.g.*, FAC ¶¶ 23–25 (no corporate separation); ¶¶ 14–15, 18, 26 & Exs. B. at 15, E at 11 (common ownership and no separation); *see Storm LLC*, 2006 WL 3735657, at *13 (finding alter ego personal jurisdiction where the parent entity selected subsidiary's leadership and there were shared employees). TWS also controls its subsidiaries' operations, from marketing to manufacturing. *See e.g.*, FAC Ex B; *see also Storm LLC*, 2006 WL 3735657, at *13. And as discussed above, the TWS entities do not treat employees, facilities, or customers separately across entities, as when TWS GZ, TWS USA, and TWS HK fulfilled the Purchase Orders as though they were a single unit. FAC ¶¶ 27–28; *see also GEM Advisors, Inc.*, 667 F. Supp. 2d at 320 (finding alter ego personal jurisdiction in part because there was "no separate-decision making between the two entities").

The three cases that TWS cites in its briefing do not apply here. Defs.' Mem. 12–13. In *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-cv-00967 (LJL), 2021 WL 918556, at *10 (S.D.N.Y. Mar. 10, 2021), the only non-conclusory allegation supporting the idea that the *corporate* defendant, Mantu, was using the *individual* defendants, Eliezer and Niryaev, "to

advance its own personal interests" was an alleged statement by Eliezer that Mantu's assets were commingled with another corporation and that Mantu was a "sham." *Id.* This could not support the idea that Eliezer and Niryaev were alter egos for Mantu. *Id.* This is in stark contrast to the numerous allegations discussed above. Next, in *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, No. 21 Civ. 7589 (AKH), 2022 WL 889145, at *2 (S.D.N.Y. Mar. 25, 2022), there were *no* allegations, conclusory or otherwise, that the allegedly controlled entity was a shell. Finally, TWS cites *SOCAP USA Inc.*, No. 17 Civ. 5255 (PGG), 2019 WL 13247454, at *6–7 (S.D.N.Y. Mar. 29, 2019), for the proposition that there is no alter ego jurisdiction even where the allegedly controlled entity had no cash or offices and had some overlapping employees and operations. But there the entity had no cash or offices because it had stopped conducting business—not the case here. *Id.* Also, in *SOCAP* there was evidence of the allegedly controlled entity's separate marketing and operation policies, unlike TWS's operations here. *Id.*

### B. TWS USA is bound by the Purchase Orders' forum selection clause both because it performed duties to fulfill the Purchase Orders and because it is closely related to TWS HK, a signatory of the Purchase Orders.

TWS erroneously argues that TWS USA is not bound by the forum selection clauses in the Purchase Orders because the "POs state they are binding *only* on the 'supplier to which this Purchase Order is issued.'" Defs.' Mem. at 13 (emphasis in original). In reality, each Purchase Order states that it is "deemed accepted when the supplier to which this Purchase Order is issued (Supplier) returns the acknowledgement copy of this Purchase Order or begins performing." FAC ¶ 6 & Ex. A at 4 ¶ 13. The FAC cites many instances in which TWS USA began performing TWS HK's supposed duties under the Purchase Orders. *See e.g.*, *id.* ¶¶ 36, 54, 70.

When it began this performance, TWS USA accepted the provisions of the Purchase Order, including its forum selection clause. *Id.* ¶ 72; *see Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 1:17-CV-8987-GHW, 2019 WL 1244294, at *12 (S.D.N.Y. Mar. 18, 2019) (citation

omitted) ("[E]ven if a party does not sign a written agreement, it will be bound if the totality of its expressed words and deeds manifests an intent to be bound."); *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 384, 399 (S.D.N.Y. 2009) (denying dismissal of a breach of contract claim against a non-signatory where the complaint alleged that the non-signatory had arranged, marketed, and emailed about the contracts at issue).

Separately, a signatory to a contract may invoke a forum selection clause against a non-signatory for personal jurisdiction when the non-signatory is "closely related" to a signatory, such that enforcement of the forum selection clause is reasonably foreseeable. *Metro-Goldwyn-Mayer Studios Inc. v. Canal & Distrib. S.A.S.*, No. 07 Civ. 2918(DAB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010); *see also LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 155–56 (E.D.N.Y. 2012) (collecting cases). The "closely related" doctrine "exists precisely because there are some situations where courts believe that parties who are not signatories to such a clause should nonetheless be bound by that clause." *Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010); *see also Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, No. 21 CIV. 6154 (JPC), 2022 WL 1748410, at *6 (S.D.N.Y. May 31, 2022).

Courts have enforced a forum selection clause against a non-signatory where (1) the non-signatory and the signatory shared "a close business relationship" such that their business operations were "intertwined," *LaRoss Partners, LLC*, 874 F. Supp. 2d at 160–61 (quotations omitted); (2) the non-signatory was hired to carry out the signatory's contractual obligations, *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369–70 (S.D.N.Y. 2011); and (3) the non-signatory was formed by one of the signatories, *BNY Mellon, N.A. v. Lyell Wealth Mgmt., LLC*, No. 16 CIV. 6896 (DAB), 2016 WL 7377235, at *6 (S.D.N.Y. Dec. 8, 2016).

All three situations exist here. First, TWS USA has more than a "close relationship" with TWS HK; the two entities have wholly intertwined business operations, including a single headquarters and combined operations. FAC ¶¶ 18, 23–25, 27–28, 52 & Ex. B, at 14–15. The two entities share information, resources, sales, revenue, and employees. *Id.* ¶ 35. According to TWS itself, the entities "depend" on each other. FAC Ex. B, at 13. Second, TWS USA carried out contractual duties under the Purchase Orders. TWS acted interchangeably with the other TWS entities in fulfilling the Purchase Orders, handling forecasts, deliveries, and payments for the ordered products, *id.* ¶¶ 34, 36 54, and assisting with communications about design problems, *id.* ¶ 70. Third, the Court can infer that TWS USA was formed by TWS HK, its sole member and owner. FAC ¶¶ 3, 4, 25, 35; s*ee also Dorchester*, 722 F.3d at 84–85.

TWS cites three cases to support its assertion that the Purchase Orders' forum selection clause does not bind TWS USA. In each case, the non-signatory was either not closely related to a signatory or was an individual person acting only in their representative capacity. *See, e.g.*, *Arcadia Biosciences, Inc v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 395–96 (S.D.N.Y. 2019) (defendant was not closely related); *HSM Holdings, LLC*, 2021 WL 918556, at *8–9 ("The question of whether a court may exercise personal jurisdiction on the basis of a forum selection clause *over an individual* who did not sign the forum selection clause *in his individual capacity* has elicited a fair amount of discussion in the courts of the Second Circuit) (emphasis added); *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 501, 514–15 (S.D.N.Y. 2023) (defendants were individuals formerly employed by the signatory employer). And if there are questions about the relationship between the two TWS entities, jurisdictional discovery will answer them. *See Paroni v. Alstom SA*, No. 19 Civ. 1034 (PAE), 2020 WL 1033406, at *4 (S.D.N.Y. Mar. 3, 2020).

**C. TWS USA is subject to personal jurisdiction in New York because it directed misrepresentations to, and caused injury in, New York.**

Under New York's long-arm statute, jurisdiction is proper where, "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Amer. Buddha*, 946 N.E.2d 159, 162 (N.Y. 2011); N.Y.C.P.L.R. § 302(a)(3)(ii). TWS claims there is no jurisdiction over TWS USA because the FAC contains no allegations regarding the first, third, fourth, and fifth elements.

Not so. Regarding the first element, the FAC alleges that TWS USA had multiple communications with Resideo's New York employees about the products at issue and its problems, including whether the products would fulfill their intended purpose before and after the TWS's supposed corrections. FAC ¶¶ 30–32, 34, 39, 54, 68, 70, 86. As for the third element, a plaintiff in a misrepresentation action must allege that the misrepresentation was received and relied on in New York. *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 435 (S.D.N.Y. 1998). The FAC does just that. *See, e.g.*, FAC ¶ 70 (TWS USA employees who "handled project orders, production forecasts, deliveries, and payments" as well as "questions or issues" communicated with Resideo's New York employees); *see also id.* ¶ 65. Regarding the fourth and fifth elements, TWS USA should have expected consequences in New York because it helped fulfill the battery packs' Purchase Orders, which had a New York forum selection clause. *Id.* ¶¶ 9, 36. TWS USA also made misrepresentations regarding those Purchase Orders to Resideo's New York employees. *Id.* ¶¶ 30–32, 37, 39, 86. And TWS received substantial revenues through these

product sales, which TWS USA presumably benefited from through shared finances. *Id.* ¶ 35. TWS USA is subject to jurisdiction under New York's long-arm statute.

## III.   FOR BOTH ALTER EGO LIABILITY AND PERSONAL JURISDICTION, THE COURT SHOULD GRANT JURISDICTIONAL DISCOVERY AS AN ALTERNATIVE REMEDY.

"[E]ven in the absence of a prima facie showing" of jurisdiction, jurisdictional discovery may be warranted. *Paroni*, 2020 WL 1033406, at *4; *see also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir. 2003). District courts retain "considerable latitude in devising the procedures" pertinent to jurisdiction, *Paroni*, 2020 WL 1033406, at *4 (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)), and a plaintiff should be provided "ample opportunity to secure and present evidence relevant to the existence of jurisdiction," *APWU*, 343 F.3d at 627 (quotation omitted). To the extent the Court concludes that Resideo has not yet demonstrated prima facie jurisdiction, discovery is warranted. The FAC is based solely on Resideo's limited view of TWS's operations and publicly available statements; even limited discovery will necessarily uncover material evidence.

## IV.   RESIDEO SUFFICIENTLY ALLEGED CLAIMS AGAINST TWS USA AND TWS GZ.

### A.   TWS GZ and TWS USA bound themselves to the Purchase Orders by their intent and actions.

Contrary to TWS's argument, an entity *can* be bound to a contract that it did not sign if it "directly participated in the negotiation of the contract or if the entity is the parent of a subsidiary that signed the contract and controls the subsidiary for its own purposes." *Flatiron*, 2019 WL 1244294, at *13 (citing *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 239 A.D.2d 171, 172 (N.Y. App. Div. 1997)). Courts in this district sometimes apply the alter ego doctrine to evaluate whether the parent or subsidiary is also bound to a contract, as Resideo has argued above. Other courts, however, have considered whether a party intended be bound by a contract based on the

"the totality of its expressed words and deeds," including, for example, if the party marketed to the plaintiff, communicated about the transaction, attended meetings, participated in negotiations, or assumed contract obligations. *MBIA Ins. Corp.*, 706 F. Supp. 2d at 397.

Considering their words and actions, TWS GZ and TWS USA were the *real* contracting parties. TWS GZ designed the battery pack's specifications in coordination with Honeywell, submitted the formal proposal in response to the RFP, and negotiated pricing and production after winning the business. FAC ¶¶ 47–53 & Ex. F. Also, as alleged, TWS HK does not have any manufacturing facilities, meaning that TWS GZ not only designed but also manufactured the 750,000 battery packs at issue. Throughout that time, TWS USA acted as the primary contact for all non-technical issues. *Id.* ¶ 70. When Honeywell first detected the CID issue in 2018, it was TWS GZ that worked on the issue, not TWS HK. *Id.* ¶ 59. And when mass product failures began occurring in 2021, it was again TWS GZ, not TWS HK, that investigated the issue, communicated with Resideo, and hired a third-party lab. *Id.* ¶¶ 31–33. These allegations more than demonstrate an intent to be bound by the Purchase Orders.

### B. TWS GZ designed and made the defective battery packs, and TWS USA helped sell them to Resideo, making them both liable for breach of warranty.

As discussed immediately above, TWS GZ and TWS USA both intended to be bound, and should be bound, by the Purchase Orders' terms, including the warranty provisions. When defect issues arose in 2018 and 2021, TWS GZ worked with Resideo to attempt to cure the potential breaches of warranty. Similarly, TWS USA facilitated selling the battery packs to Resideo, including through handling primary sales communications once production ramped up. These allegations sufficiently establish contractual privity, and thus, breach of warranty liability.

## C.  TWS mischaracterizes Resideo's "epidemic failure" allegations.

To be clear, Resideo did not allege a standalone breach of contract claim for the Purchase Orders' epidemic failure provisions. *Id.* ¶¶ 90–94. Instead, Resideo alleged that TWS breached the Purchase Orders between the parties, *including* the epidemic failure provisions. As a result, the epidemic-failure "claim" cannot be dismissed because no such claim exists. In any event, Resideo has adequately pled that the TWS entities breached the epidemic failure provisions. Resideo alleged that: (a) it notified the TWS entities of the widespread failures, *id.* ¶¶ 79; (b) the parties worked to diagnose the problem, *id.* ¶ 80; and (c) TWS failed to remediate the problem, *see, e.g.*, *id.* ¶ 84. And the Purchase Orders do not make TWS's liability for the resulting costs and damages contingent on requirements (a) through (c). If the products exhibit a "similar repetitive root cause," then the TWS entities are liable for all resulting damages. FAC Ex. A, at 4.

## D.  Resideo sufficiently alleged its negligent misrepresentation claim against the TWS entities.

Resideo met the Rule 9(b) pleading standard because it alleged that Honeywell specifically sought out and relied on TWS for its "unique or specialized expertise." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996); FAC ¶¶ 46, 47 (in 2017, "Honeywell chose TWS [GZ] because of its expertise"), 52 ("Honeywell relied on TWS [GZ] for its expertise"), 63 (in 2018, "[r]elying on TWS GZ's skill and expertise, Honeywell promptly edited the alarm panel's software and charging parameters"), 103, 109. This kind of reliance on specialized expertise gives rise to the "special relationship" needed to allege negligent misrepresentation, and is commonly found in cases involving professionals, including engineers. *Kimmell*, 675 N.E.2d at 454; *Ossining Union Free Sch. Dist. v. Anderson*, 539 N.E.2d 91, 95 (N.Y. 1989) (sufficiently pled claim against engineering consultant that knew its expertise was relied on); *Glanzer v. Shepard*, 135 N.E. 275, 277 (N.Y.

1922) (special relationship exists when relying on the seller's knowledge or expertise is the "end and aim of the transaction").

Resideo also pled reliance with sufficient detail. Honeywell chose TWS GZ in large part because Honeywell had never designed a lithium-ion battery, and because TWS GZ specifically claimed that it had the expertise to design a battery that would fit Honeywell's intended use. FAC ¶¶ 46–52. In 2018, when Honeywell detected a potential defect, it *again* relied on TWS GZ to identify the source of the issue and then provided detailed instructions about how to resolve it, including by providing detailed coding instructions. *Id.* ¶¶ 59–63. These allegations satisfy the Rule 9(b) standard. TWS's authority to the contrary is inapplicable, as this case involves highly technical products intended to fit highly specialized uses. *See, e.g.*, *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 303 (S.D.N.Y. 2022) (declining to find special relationship between class-action consumer and juice manufacturer because it was a "standard consumer product" in a situation where the plaintiff never interacted with the defendant).

Finally, the Court should not dismiss Resideo's negligent misrepresentation claim under the economic loss doctrine. TWS cannot have it both ways: either TWS GZ and TWS HK are bound by the Purchase Orders between the parties and thus protected by the economic loss doctrine, or TWS GZ and TWS HK are not in privity with Resideo, and thus subject to Resideo's negligent misrepresentation claim. *See, e.g.*, *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (the economic loss doctrine exists to "bar actions in tort when an action in contract is available"); *see also Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 136 (S.D.N.Y. 2019) (same). At this early stage, Resideo has viably pled both in the alternative, and dismissal is improper.

Respectfully submitted,

Dated: March 25, 2024

**GREENE ESPEL PLLP**

*/s/ Faris Rashid*

Faris Rashid, Reg. No. 0391508
Farah N. Famouri, Reg. No. 0403295
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
frashid@greeneespel.com
ffamouri@greeneespel.com
(612) 373-8352
(612) 373-8375
(Admitted pro hac vice)

**PILLINGER MILLER TARALLO, LLP**
Neil L. Sambursky, Esq.
1140 Franklin Avenue, Suite 214
Garden City, New York 11530
nsambursky@pmtlawfirm.com
(516) 408-5388
PMT File No. N-RESID-00123

***Attorneys for Ademco Inc. d/b/a Resideo***