UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADEMCO INC. d/b/a RESIDEO,<br><br>                       Plaintiff,<br><br>-against-<br><br>TWS TECHNOLOGY LTD et al.,<br><br>                       Defendants. | 23-cv-8383 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Ademco Inc. d/b/a Resideo sued Defendants TWS Technology (Guangzhou) Limited ("TWS Guangzhou"), TWS Technology Ltd. ("TWS Hong Kong"), and TWS Technology LLC ("TWS USA"). Defendants move to dismiss Resideo's amended complaint. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Resideo manufactures and sells home automation, security, and energy-management products. Am. Compl. ¶ 41, Dkt. 24. Resideo was part of Honeywell International until 2018. *Id.*

TWS Guangzhou is a company based in Guangzhou, China that designs and sells lithium-ion battery packs. ¶ 2. Resideo alleges (on information and belief) that TWS Hong Kong is a wholly owned subsidiary or affiliate of TWS Guangzhou based in Hong Kong. ¶ 3. And TWS USA is a wholly owned subsidiary of TWS Hong Kong based in the United States. ¶ 4.

In 2017, Honeywell issued a request for proposals for the design and manufacture of a battery pack. ¶ 42. Honeywell needed a battery pack that could be used as a backup energy source in security-alarm panels that it was manufacturing for a home-security company. ¶¶ 42, 44. Honeywell told potential suppliers what the battery pack would be used for and that it was looking for a supplier who could both design and manufacture the battery pack. ¶ 45. At that time, Honeywell had never developed an alarm panel using a lithium-ion battery, so it told potential suppliers that it would need to rely on the supplier's expertise. ¶ 46.

Honeywell chose TWS Guangzhou because of its relevant expertise. ¶ 47. Resideo alleges that TWS Guangzhou said it could design and manufacture a battery pack that would meet Honeywell's operational requirements and serve as a reliable backup battery in the final alarm-panel product. ¶ 48. Resideo claims that Honeywell relied on TWS Guangzhou and did not participate in designing the battery pack. ¶ 52.

Resideo says that during development, TWS USA coordinated shipping samples to Honeywell and at least two TWS USA employees communicated with Honeywell related to the purchase order and samples. ¶ 54.

After Honeywell received the battery packs from TWS Guangzhou, it tested them and observed a failure related to the Current Interruption Device (CID). ¶ 57. Honeywell told TWS Guangzhou about the issue, with TWS USA employees also participating in the communications. ¶ 59. TWS Guangzhou conducted testing and made recommendations to Honeywell to fix the problem, which Honeywell adopted. ¶¶ 62–63. Honeywell did not notice any issues at that point. ¶ 63. From November 2017 to October 2021, TWS Guangzhou and TWS Hong Kong fulfilled dozens of purchase orders for the battery packs, which Resideo says (on information and belief) were assembled by TWS Guangzhou. ¶ 66.

In October 2018, Resideo spun off from Honeywell and continued what was previously Honeywell's home-security business, assuming Honeywell's legal rights and obligations related to the battery packs. ¶ 64. Also in 2018, with the CID issue apparently resolved, Resideo produced thousands of alarms with TWS's battery pack. ¶ 68.

Between 2018 and 2020, Resideo purchased about 750,000 battery packs for millions of dollars. ¶ 69. All these purchases were made pursuant to purchase orders. ¶ 71; *see also* Dkt. 24-1. The purchase orders list TWS Hong Kong as the vendor. Dkt. 24-1 at 1. But TWS USA allegedly told Resideo to direct all questions and issues (except those related to product quality and engineering) to TWS USA employees, which Resideo did. ¶ 70.

Around July 2021, Resideo began receiving reports of widespread battery pack failures. ¶ 78. Resideo notified TWS Guangzhou and TWS USA, and Resideo shipped failed battery packs to TWS Guangzhou in mid-2021. ¶ 79. Resideo and TWS Guangzhou both concluded that the failure was related to the CIDs, the same issue that had occurred in 2018. ¶ 80. In 2021, TWS Guangzhou hired a third-party testing laboratory, which found that the failure was the result of overcharging and the packs' being used in high-heat environments. ¶ 81. Resideo says that TWS Guangzhou, TWS Hong Kong, and TWS USA knew how the battery packs were intended to be used and had failed to correct the issue. ¶¶ 82–83. Because of the CID issue, the battery packs needed to be fixed through a long, expensive process. ¶¶ 85–87.

Resideo brought claims against Defendants under state law for breach of contract, breaches of an express and an implied warranty, and negligent misrepresentation. ¶¶ 89–110.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In deciding a motion to dismiss, well-pleaded factual allegations are accepted as true, and all reasonable inferences are drawn in the non-movant's favor. *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). While detailed factual allegations are not necessary, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161,

167 (2d Cir. 2013)). "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993)).

## DISCUSSION

### I. Claims against TWS USA and TWS Guangzhou

Defendants mainly argue that Resideo has not adequately alleged alter-ego liability against TWS USA and TWS Guangzhou and thus the breach-of-contract and warranty claims should be dismissed. Dkt. 29 at 8–13. While Defendants might be right, the Court doesn't need to address the argument at this juncture.

The parties do not dispute that New York law governs the issues in this case other than alter-ego liability. The purchase orders that form the governing contracts in this case, an example of which is attached to the complaint, state that "the construction, interpretation, and performance hereof and all transactions hereunder will be governed by the laws of the State of New York, U.S.A. without regard to or application of its principles or laws regarding conflicts of laws." Dkt. 24-1 at § 33.2. Under New York law, "generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009). "An exception to this general rule exists when a non-signatory is found to have manifested an intent to be bound by the contract." *Id.* "A court can infer such intent to be bound where the subsidiary is an 'alter ego' of the parent." *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019). But a "court can also infer such intent [to be bound] where a non-signatory is in privity with the plaintiff or has assumed the obligations of the contract. Such an inference is based on the totality of a party's expressed words and deeds." *Id.* (cleaned up).

For example, in *Impulse Marketing Group v. National Small Business Alliance, Inc.*, 2007 WL 1701813 (S.D.N.Y. June 12, 2007), the court held that the plaintiff had adequately alleged that a non-signatory defendant had assumed the contract. There, the plaintiff alleged that the non-signatory "'micro-managed' performance under the Contract, acknowledged that it was the actual party in interest, and paid for Plaintiff's services." *Id.* at *6. Another court came to the same conclusion when the plaintiff alleged that the non-signatory defendant was a wholly owned subsidiary of the signatory, had provided plaintiff assurances during contract negotiations about resources it could offer, and had its general counsel participate in negotiating the contract's terms and conditions. *Jennings*, 367 F. Supp. 3d at 71–72; *see also Powerbox (USA), Inc. v. Honeywell Int'l, Inc.*, 2020 WL 6151491, at *4 (S.D.N.Y. Oct. 20, 2020) ("Powerbox has made numerous allegations that Honeywell, through its representatives, played an active role in the creation and negotiations of the contract. These allegations support a plausible inference that Honeywell intended to be bound by the contract."); *SHLD, LLC v. Hall*, 2016 WL 659109, at *8 (S.D.N.Y. Feb. 17, 2016) (holding that the non-signatory defendant "can be held liable for nonperformance on the contract because it manifested an intent to be bound" since defendant "share[s] ownership and management" with the contract's signatory, "those common owners used [defendant] to

negotiate" issues related to the contract, and defendant "took on obligations related to the" contract, "even if it was not a signatory to the final agreement"); *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 WL 4461769, at *5 (S.D.N.Y. July 21, 2015) (holding that non-signatory "manifested the intent to be bound by the contract because it participated in the negotiation and controlled the subsidiary during the contract negotiations for its own benefit").

Here too, Resideo has plausibly alleged that TWS USA and TWS Guangzhou manifested an intent to be bound by the purchase orders, despite not being signatories. For example, Resideo alleges that it worked with TWS USA and TWS Guangzhou during the development phase in 2017 and 2018, prior to Resideo's purchase of 750,000 battery packs between 2018 and 2020. TWS Guangzhou provided assurance about its relevant expertise, worked with Honeywell and Resideo on the design and manufacture of the battery packs, and corrected the CID issue when it was first identified. Am. Compl. ¶¶ 29, 47–52, 59–63. And TWS USA worked with Honeywell employees during the development phase of the contract, including by coordinating the shipment of product samples. ¶ 54. In fact, Resideo claims that "no Honeywell employee worked with a TWS Hong Kong employee, in any capacity, to facilitate the development or manufacture of the battery pack at issue." ¶ 56. Even after the purchase orders were placed with TWS Hong Kong as the signatory, Resideo says that it was TWS Guangzhou who performed under the contracts by testing the failed battery packs in 2021. ¶¶ 79–81.

On top of that, Resideo alleges a close corporate relationship among all the parties. TWS USA is a wholly owned subsidiary of TWS Hong Kong, and TWS Hong Kong is a wholly owned subsidiary or affiliate of TWS Guangzhou. ¶¶ 3–4. Resideo alleges on information and belief that the companies share employees, resources, finances, contracts, and manufacturing capabilities across entities. ¶ 20. Resideo also alleges (again on information and belief), that the companies share corporate decision-making processes or authority. ¶ 26.

According to Resideo's complaint, TWS Hong Kong was just a name on the contract, whereas TWS USA and TWS Guangzhou were the parties performing under the contract and assuming the contractual responsibilities at all stages of the parties' relationship. *See* Dkt. 30 at 18 ("Considering their words and actions, TWS GZ and TWS USA were the *real* contracting parties."). At this stage of the litigation, the Court is persuaded that Resideo's allegations demonstrate that TWS USA and TWS Guangzhou can be bound by the purchase orders (and thus sued under the purchase orders) even though they are not signatories.

Defendants also say that the Court lacks jurisdiction over TWS USA. But the purchase orders contain a forum-selection clause. *See* Dkt. 24-1 § 33.2 ("[T]he federal or state courts in New York, New York will have exclusive jurisdiction of any dispute."). Since Resideo can enforce the contracts against TWS USA at this stage, it can also enforce the forum-selection clause. *See HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *9 (S.D.N.Y. Mar. 10, 2021) ("Unless the forum selection clause limited its force explicitly to the named contractual parties, there would be no reason to treat it differently than all of the other contractual provisions binding the non-party."); *see also Aguas Lenders Recovery Grp. v., Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (holding that corporation that assumed the contractual obligations of its predecessor was

also bound by the forum-selection clause because "[w]e see no reason to treat forum selection provisions differently from other contractual obligations"). "[A]n enforceable forum selection clause amounts to consent to personal jurisdiction." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 342 (S.D.N.Y. 2020) (citation omitted). So when "an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *Id.* (cleaned up).

In arguing otherwise, Defendants say that "several recent cases in this District have held that forum selection clauses are not enforceable on due process grounds against non-signatory defendants even if the defendant is 'closely related' to the signatory." Dkt. 29 at 13. But the "closely related" doctrine cited in those cases is distinct from the "intent to be bound" doctrine applied here. And in the cases cited by Defendants, the plaintiffs did not allege that the non-signatories manifested an intent to be bound by the contract containing the forum-selection clause. *See Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) (noting that plaintiff had not alleged that defendant "affirmatively assumed the [contract's] duties"); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *9 (S.D.N.Y. Mar. 10, 2021) ("Plaintiff does not allege that, … [the non-signatories] intended to bind themselves personally to any of [the contract's] terms …."); *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 515 (S.D.N.Y. 2023) (holding that the court lacked jurisdiction when plaintiff had not "identified any connection between defendants and New York other than provisions in contracts [that contained the forum-selection clause] to which defendants are not parties"). Here, the complaint alleges that TWS USA and TWS Guangzhou assumed the obligations of the agreements (including the agreement's forum-selection clause) through their actions. So Resideo has made a prima facie showing of jurisdiction as to all Defendants.

Since Resideo has adequately alleged that TWS USA and TWS Guangzhou are bound by the purchase orders, Defendants' arguments for dismissal of the breach-of-contract and warranty claims fail. Of course, Resideo will need to prove that TWS USA and TWS Guangzhou really did manifest an intent to be bound by the purchase orders. If it cannot do so, Defendants can renew their arguments at summary judgment as to both jurisdiction and liability.

## II.   Breach of Contract

Resideo's breach-of-contract claim rests on two theories: (1) that Defendants breached the purchase orders by not providing merchantable batteries, and (2) that Defendants breached the "epidemic failure" provision of the purchase orders by not providing "a viable plan for correcting the issue" with the batteries. Am. Compl. ¶¶ 91, 93. Defendants argue that this second theory fails because Resideo does not allege how specifically Defendants breached the epidemic-failure provision. Dkt. 29 at 18. The Court disagrees.

The purchase orders state that after any failure with the battery packs is discovered and reported, TWS Hong Kong will "provide to Resideo a preliminary plan for problem diagnosis within one business day of such notification," and then the parties will "agree on a plan for customer notification, replacement scheduling and remediation, including identification of suspect

population, field removal, return and reinstallation, work in process ('WIP'), inventory replacement, and repair, or retrofitting, regardless of location or status of WIP completion." Dkt. 24-1 § 16.4. Resideo says that no "viable" remediation plan was offered after the problem had been diagnosed. Am. Compl. ¶ 93. So no agreement was reached as required by the contract. Instead, ADT (the customer who had purchased the battery packs from Resideo) "launched a massive, nationwide effort to identify and replace the TWS battery packs that failed in users' homes," that required "schedul[ing] an individual visit by a qualified serviceperson to replace the battery pack or arrang[ing] to have the defective battery shipped back to ADT and replaced with a new battery pack." ¶ 84.

Resideo has therefore adequately identified the contractual provision at issue and outlined Defendants' breach of that provision. At this stage, such allegations are sufficient to avoid dismissal.[1]

### III. Negligent Misrepresentation

Finally, Defendants say that Resideo's negligent-misrepresentation claim should be dismissed. Under New York law, negligent-misrepresentation claims require "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011). A negligent-misrepresentation claim must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. *Lin v. Can. Goose US, Inc.*, 640 F. Supp. 3d 349, 361 (S.D.N.Y. 2022).[2] Defendants argue that Resideo fails to satisfy Rule 9(b), that there was no special relationship between the parties, and that the claim is barred by the economic-loss rule. The Court agrees that dismissal is warranted.

Resideo does not allege at any point (in a conclusory fashion or otherwise) that TWS USA or TWS Hong Kong employees made misrepresentations related to their expertise or their ability to solve the CID issue. These representations were made by TWS Guangzhou only. Am. Compl. ¶¶ 47, 62. In fact, Resideo alleges upon information and belief that "no Honeywell employee worked with a TWS Hong Kong employee, in any capacity, to facilitate the development or manufacture of the battery pack at issue." ¶ 24.

As to TWS Guangzhou, the negligent-misrepresentation claim is inadequately pleaded. Resideo alleges that TWS Guangzhou "touts" its expertise, that sometime in 2017 "TWS

---

[1] Defendants also argue that the Court should dismiss Resideo's warranty claims because only TWS Hong Kong was the seller of the battery-packs. Dkt. 29 at 17. This argument raises the same factual issues discussed above regarding whether the "seller" in this context was TWS Hong Kong or all of the Defendants. So the motion to dismiss is denied on this basis as well.

[2] There is some disagreement among courts in this circuit as to whether Rule 9(b) applies to all negligent-misrepresentation claims or only to negligent-misrepresentation claims that sound in fraud. *See Riker v. Premier Cap., LLC*, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016) (collecting cases). Here, both parties agree that Rule 9(b) applies. *See* Dkt. 29 at 19; Dkt. 30 at 10.

Guangzhou confirmed to Honeywell that it could design and manufacture a battery pack that would meet Honeywell's operational requirements," and that in July 2018 "TWS Guangzhou made specific recommendations to Honeywell to fix the [CID] problem." ¶¶ 47–48, 62. These generalized allegations fall far short of Rule 9(b)'s requirement "that the plaintiff allege the time, place, speaker and sometimes even the content of the alleged misrepresentation." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005) (internal quotation marks omitted); *id.* at 583 (dismissing negligent-misrepresentation claim when "the allegations in [plaintiff's] complaint concerning the representations made to it by the moving defendants are not presented with sufficient specificity to establish a claim for purposes of Rule 9(b)"); *Riker v. Premier Cap., LLC*, 2016 WL 5334980, at *5–6 (S.D.N.Y. Sept. 22, 2016) (holding that Rule 9(b) standard was not met when plaintiff "does not identify the speakers" and "offers few supporting details to establish the 'where and when' of the statements"); *Burns v. Del. Charter Guarantee & Tr. Co.*, 805 F. Supp. 2d 12, 28 (S.D.N.Y. 2011). Resideo asserts that its allegations "satisfy the Rule 9(b) standard." Dkt. 30 at 20. But the only case Resideo cites in support of this argument is one where the court—without even applying the heightened Rule 9(b) pleading standard—dismissed the negligent-misrepresentation claim as inadequately alleged. *See id.* (citing *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 303 (S.D.N.Y. 2022)).

In addition, the Court doubts that the special-relationship requirement is met. "[T]he law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). The complaint outlines an arms-length business transaction (including a "bidding process" to find appropriate suppliers) between highly sophisticated, specialized companies. Am. Compl. ¶ 41–42, 45. And the complaint alleges that both Honeywell and Resideo did their own testing of the battery packs and were able to independently identify the CID issue. ¶¶ 57–59, 80. Resideo's allegations that Defendants had relevant expertise is not enough to meet the special-relationship requirement. *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 189 (2d Cir. 2004) (affirming dismissal of negligent-misrepresentation claim when plaintiff was "sophisticated," and "was not dissuaded from due diligence, and had the capacity to conduct it," even though the defendant "held itself out as an expert"); *cf. Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103–04 (2d Cir. 2001) (holding that special-relationship requirement was adequately pled when "defendants knew that plaintiffs sought information … to aid their investment decision and defendants supplied it for that purpose, while dissuading plaintiffs from conducting their own investigation").

Finally, the negligent-misrepresentation claim fails as against TWS Hong Kong under New York's economic-loss doctrine. "A plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available." *Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *13 (S.D.N.Y. May 5, 2023) (citation omitted); *see also Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000). Resideo argues that this tort claim has been pleaded "in the alternative," given

7

Defendants' argument that TWS Guangzhou and TWS USA are not parties to the contract. Dkt. 30 at 20. But this does not explain why the claim would be appropriate against TWS Hong Kong, who the parties agree is a party to the contract. So Resideo's negligent-misrepresentation claim against TWS Hong Kong fails for this reason too.

This dismissal is with prejudice. Defendants raised all these same arguments in an earlier motion to dismiss Resideo's complaint. *See* Dkt. 10 at 18–19. Resideo amended its complaint, but failed to add allegations that would address these legal deficiencies. The Court's practices make clear that "declining to amend [its] pleadings to timely respond to an argument in the motion to dismiss may constitute a waiver of [the plaintiff's] right to later use the amendment process to cure defects that have been made apparent by the briefing." Individual Pracs. in Civ. Cases ¶ 8(G)(ii); *see also Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 821 F.3d 349, 351–52 (2d Cir. 2016) (affirming denial of leave to amend when "the district court's rules explicitly state that if a party does not elect to amend within 21 days of a motion to dismiss no further opportunity to amend will ordinarily be granted" and plaintiff failed to follow those rules). Plus, Resideo has not even requested leave to amend.

## CONCLUSION

Defendants' motion to dismiss is granted with respect to Resideo's negligent-misrepresentation claim, but otherwise denied. The dismissal of the negligent-misrepresentation claim is with prejudice because Resideo failed to correct its pleading deficiencies in response to Defendants' first motion to dismiss and because Resideo does not request leave to amend.

The Clerk of Court is directed to terminate Dkt. 27.

SO ORDERED.

Dated: July 29, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge