

Faris Rashid
(612) 373-8375 Direct
frashid@greeneespel.com

TWS's objection is overruled, but Dr. White should be walled off from any information pertaining to Exponent's work with TWS. Of course, if evidence arises that White has improperly used information, then that may be grounds for disqualification or other sanctions. And of course, TWS will be able to raise thee issues in deposition and through cross-examination. Along with the signed NDA, this should address any concerns TWS may have.

February 21, 2025

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 66.

**VIA ECF**

SO ORDERED.

Hon. Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007
(212) 805-0238
SubramanianNYSDChambers@nysd.uscourts.gov

Arun Subramanian, U.S.D.J.
Date: March 10, 2025

> Re:     *Motion for Resideo's Expert to Review Confidential Documents - Ademco Inc. d/b/a Resideo v. TWS Technology et al.*, Court File No.: *23-cv-08383 (AS)*

Dear Judge Subramanian:

Pursuant to Rule 5 of the Court's Individual Practices in Civil Cases and the parties' Protective Order (Dkt. No. 58), Plaintiff Ademco Inc. d/b/a Resideo ("Resideo") respectfully submits this letter motion to resolve Defendants TWS Technology et al.'s ("TWS's") objection to Resideo's battery expert, Dr. Kevin White, under the Protective Order.

Resideo retained Dr. White, a Principal Scientist of Polymer Science and Materials Chemistry with Exponent, as its battery-technology expert. Because TWS did not produce most of its documents until days before Resideo's expert report deadline, and given the Protective Order's objection process, Dr. White provided his written opinions based solely on information in Resideo's possession.

To disclose Dr. White under the Protective Order and allow him to review documents produced by TWS designated as "Confidential" or "Attorneys' Eyes Only," Resideo must provide: (1) a Non-Disclosure Agreement signed by Dr. White, (2) Dr. White's resume, (3) a list of entities that Dr. White has consulted for during the last four years, along with a description of the subject matter, and (4) a list of cases in which Dr. White testified as an expert at trial or deposition in the last four years. (Dkt. No. 58 at 5-6.) After providing these disclosures, TWS has five business days to object. "If the Parties are unable to resolve any objection," Resideo "may apply to the Court to resolve the matter." (Dkt. No. 58 at 6.) The NDA, along with the Protective Order itself, expressly limit the use of confidential information to only "this litigation," and provide that any confidential information will be returned to the other party at the conclusion of the litigation.

On December 27, 2024, Resideo disclosed Dr. White under Fed. R. Civ. 26(a)(2). Mistaking Resideo's disclosure under the Federal Rules as a disclosure under the Protective Order, and before seeing any disclosures by Dr. White, TWS's counsel informed Resideo on December 31, 2024, that TWS intended to object to Dr. White "based on Exponent's prior dealings with

222 South Ninth Street, Suite 2200, Minneapolis, MN 55402-3362
612.373.0830 *tel*   612.373.0929 *fax*   www.greeneespel.com

February 21, 2025
Page 2

Defendants, Exponent's prior access to Defendants' confidential information, and contact between Exponent and Defendants regarding the subject matter of this case."

Though Resideo was still working to obtain Dr. White's disclosure information, counsel for the parties met for 30 minutes on January 8, 2025. Lead Trial Counsel Faris Rashid, along with attorneys Farah Famouri and Michelle Erickson, appeared for Resideo, and Lead Trial Counsel Alex Patchen and attorney Ari Jaffess appeared for TWS. At the conference, TWS again raised TWS's prior work with Exponent. In response, Resideo confirmed that Dr. White had not done any work for TWS and offered to set up an ethical wall at Exponent. TWS did not take the offer. Changing course, TWS then stated that it planned to object to Dr. White under the Protective Order based on Dr. White's potential bias.

On January 30, 2025, Resideo provided the signed NDA, Dr. White's resume, and identified the cases in which Dr. White had testified. However, Exponent prevents Dr. White from disclosing consulting clients due to work product and confidentiality limitations. Accordingly, Resideo provided the subject matters about which Dr. White has consulted, without identifying specific clients. And Resideo again confirmed that Dr. White had never previously consulted with any TWS entity. TWS responded on January 31, 2025, stating that because no client names were provided, "the disclosure does not begin the five-day [objection] period."

On February 4, 2025, Resideo attorneys Famouri and Erickson met with TWS Lead Trial Counsel Patchen and attorney Jaffess for about 30 minutes to confer on discovery topics, including Dr. White's disclosure. TWS again stated that it objected to Dr. White because of his potential bias, and that it viewed Resideo's disclosure under the Protective Order as incomplete. As a result, TWS still believed that it had not triggered the time limit to formally object, holding Resideo in limbo.

On February 20, 2025, Resideo's Lead Trial Counsel Rashid and attorney Famouri, and TWS's Lead Trial Counsel Patchen and attorney Gina Kim, conferred again for about 30 minutes. Resideo noted that the parties had discussed Dr. White many times and offered to reach a compromise in which TWS could gain assurance that Dr. White had not worked for a direct competitor. For the first time in any discussion, TWS asked if Dr. White had previously worked for Resideo or Honeywell, or for TWS competitors Corun and Lishen. In an email sent an hour and a half later, Resideo confirmed that Dr. White had done limited work for Resideo before this matter and had never worked for the other entities. Despite receiving the information it requested, TWS stated that the information was not adequate and that TWS was "continuing to stand on our objection."

The parties dispute first whether the objection process has been triggered under the Protective Order and, second, whether TWS's objection is valid.

First, Resideo substantially complied with the Protective Order and allowed TWS to challenge Dr. White. Indeed, as recently as February 20, 2025, TWS's counsel confirmed that they were "continuing to stand on our objection." The Court should reject any argument that the objection period has not been triggered. TWS cannot have it both ways. Resideo provided the information that TWS requested, and TWS has the information it needs to evaluate Dr. White.

February 21, 2025
Page 3

When reviewing a dispute over the release of confidential information to a third-party consultant governed by a protective order, the court "will consider the competing interests of the parties as to the dissemination and use of this sensitive information." *In re Am. Ex. Anti-Steering Rules Against Litig. (NO II)*, 10-CV-04496 (NGG) (RER), 2012 WL 13098456, at *2 (E.D. N.Y. Nov. 16, 2012) (citation omitted). These competing interests include: "1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the [materials], 2) the risk of inadvertent disclosure of proprietary information, 3) the hardship imposed by the restriction, 4) the timing of the remedy, and 5) the scope of the remedy." *Flores v. Stanford*, 18 Civ. 02468 (VB) (JCM), 2021 WL 4441614, at *4 (S.D. N.Y. Sept. 28, 2021) (citation omitted).

Resideo's interest in retaining an expert with appropriate experience and providing this expert with the information necessary for him to effectively provide litigation support outweighs TWS's unspecified concern that Dr. White could somehow use TWS's information—about an 8-year-old battery product—against it. Protective orders exist to guard against this risk and provide sanctions for any misuse of protected information. *See Flores*, 2021 WL 4441614, at *8.

Dr. White works for Exponent, a premier engineering and scientific consulting firm, and he does not have "control over a competitor's decisions to use" one battery over another. *See id.* at *9. And "absent any evidence" that Dr. White is "involved in competitive decision-making," TWS's argument "amounts to a fear that [the expert] will communicate [TWS's] proprietary information to the public or a competitor simply because [he] has the information," which is "behavior that would violate the Protective [Order.]" *Id.* at *10. This kind of fear "is too theoretical to warrant preclusion of that expert's receipt of relevant information." *Id.* (quotation omitted). What's more, the battery technology at issue is from 2017—hardly the kind of leading-edge technology that could pose any competitive risk.

Second, TWS's objection should be overruled. TWS can evaluate Dr. White for bias through his deposition, move to exclude him, and question him during cross-examination. Potential bias is not a valid reason to prevent Dr. White from viewing relevant documents. Dr. White has already signed the NDA, and this is enough. *See Flores*, 2021 WL 4441614, at *8. Further, TWS's broad-based objection may not be assuaged even if Resideo retains a different expert. The world of lithium-ion battery expertise is small, and preventing one expert from opining in this case solely because he has consulted for other battery companies would likely mean that all of them should be excluded.

With less than 31 days left in discovery, Resideo respectfully asks the Court to overrule TWS's objection, so that Dr. White may further assist Resideo, including by reviewing TWS's own expert report. If the Court does not grant this permission, Resideo requests a new expert deadline of March 21, 2025, so that it can determine whether to search for and retain another lithium-ion battery expert, with the hopes that TWS does not object again for the exact same reasons.

February 21, 2025
Page 4

Very truly yours,

Faris Rashid

FAR/daa
cc: All counsel of record via ECF